## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| LISA A. KENNICOTT, LISA A. GARCIA, and SUE C. PHELPS,  on behalf of themselves and a class of those similarly situated,<br><br>           Plaintiffs,<br><br>     v.<br><br>SANDIA CORPORATION d/b/a SANDIA NATIONAL LABORATORIES,<br><br>           Defendants. | CIVIL ACTION NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**(Trial by Jury Demanded)** |

Plaintiffs Lisa A. Kennicott, Lisa A. Garcia, and Sue C. Phelps ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

### SUMMARY OF CLAIMS

1.      Plaintiffs bring this action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the New Mexico Human Rights Act, N.M. Stat. Ann. 1978, § 28-1-1 *et seq*., and the New Mexico Fair Pay for Women Act, N.M. Stat. Ann. 1978 § 28-23 *et seq.*, based on Sandia National Laboratories' ("Sandia") continuing policy, pattern, and practice of sex discrimination against female employees, with respect to performance evaluations, pay, promotions, and other terms and conditions of employment. Sandia has implemented these policies and practices despite knowing that they have a longstanding disparate impact on female employees.  Sandia also retaliates against female employees who complain about this discrimination.

2.      Sandia National Laboratories ("Sandia") is a federally-funded research and development contractor operating under contract for the Department of Energy and managed by Sandia Corporation.  While the historic focus of Sandia's work has been on the development of

the United States' nuclear weapons systems, Sandia also performs research in several other fields, including computer science, engineering, biology, and mathematics—with a focus on national security.  Sandia's operating budget in 2015 was $2.8 billion.  Sandia is a major employer, with approximately 11,700 employees in 2015.  It has two main locations: Albuquerque, New Mexico, and Livermore, California.  Upon information and belief, over 99% of Sandia employees work at these two locations.

3.      As a result of Sandia's policies, patterns, and practices, female employees receive less compensation and are promoted less frequently than their male counterparts.  Sandia's company-wide policies and practices systematically violate female employees' rights and operate in a corporate culture infected with gender bias.  The disadvantage to female employees in performance evaluations, pay, and promotion is not isolated or exceptional, but rather is the regular and predictable result of Sandia's policies and practices and lack of proper accountability measures to ensure fairness.

4.      In addition to bringing this action on behalf of themselves, Plaintiffs also bring this action on behalf of a class of similarly situated current and former female employees employed by Sandia in the United States (the "Class"), in order to end Sandia's discriminatory policies and practices and to make the Class whole.

**THE PARTIES**

**Plaintiff Lisa A. Kennicott**

5.      Plaintiff Lisa A. Kennicott is a woman who has been employed by Sandia from 1999 to the present in Albuquerque, New Mexico.  Plaintiff Kennicott was also employed by Sandia from January 1995 to February 1998.

**Plaintiff Lisa A. Garcia**

6.      Plaintiff Lisa A. Garcia is a woman who has been employed by Sandia from July 1988 to the present in Albuquerque, New Mexico.

**Plaintiff Sue C. Phelps**

7.      Plaintiff Sue C. Phelps is a woman who was employed at Sandia from May 1989 until her retirement in April 2016 in Albuquerque, New Mexico.

**Defendant**

8.      Defendant Sandia Corporation ("Sandia"), a wholly-owned subsidiary of Lockheed Martin Corporation, is a corporation formed under the laws of the State of Delaware with its corporate headquarters at Kirtland Air Force Base, Albuquerque, New Mexico  87185-1382.  Sandia Corporation does business as Sandia National Laboratories.

9.      Upon information and belief, Sandia's headquarters is in the State of New Mexico, where it maintains control, oversight, and direction over the operation of its facilities, including its employment practices.

10.      During all relevant times, Sandia was Plaintiffs' employer within the meaning of all applicable statutes.

11.      At all times pertinent hereto, Sandia has employed more than five hundred people.

## JURISDICTION AND VENUE

12.      This Court has original subject matter jurisdiction over Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3), because they arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

13.      This Court has jurisdiction over the New Mexico Human Rights Act and New Mexico Fair Pay for Women Act claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed $5,000,000 in the aggregate.

14.     In addition, this Court has supplemental jurisdiction over the New Mexico Human Rights Act and New Mexico Fair Pay for Women Act claims because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e-5(f)(3), because Sandia maintains offices in this district, conducts business in this district, and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and because the alleged unlawful employment practices were committed here, and employment records relevant to those practices are maintained and administered here.

16.     The District of New Mexico has personal jurisdiction over Sandia because it maintains offices in this district, does business in New Mexico and in this district, and because many of the acts complained of and giving rise to the claims alleged herein occurred in New Mexico and thus this district.

17.     Plaintiffs have exhausted their administrative remedies and complied with all statutory prerequisites to their Title VII and New Mexico Human Rights Act claims.  Plaintiff Lisa A. Kennicott filed a charge of gender discrimination with the EEOC and New Mexico Human Rights Bureau on December 17, 2014 and an amended charge of gender discrimination on April 13, 2016, alleging gender discrimination and retaliation individually and on behalf of all similarly situated female employees employed by Sandia.  The original and amended charges are attached as Exhibits A and B (and incorporated herein).  On February 2, 2017, Plaintiff Kennicott requested a right to sue from the EEOC.  The original complaint in this action has thus been filed within ninety days of the Notice of Right to Sue.

18.     Plaintiff Lisa A. Garcia filed a charge of gender discrimination individually and on behalf of all similarly situated female employees employed by Sandia on April 29, 2016 with

-4-

the EEOC and New Mexico Human Rights Bureau.  Her original and amended charges of gender discrimination are attached as Exhibits C, D, and E (and incorporated herein).  On February 2, 2017, Plaintiff Garcia requested a right to sue from the EEOC.  The original complaint in this action has thus been filed within ninety days of the Notice of Right to Sue.

19.     Plaintiff Sue C. Phelps filed a charge of gender discrimination individually and on behalf of all similarly situated female employees employed by Sandia on April 25, 2016 with the EEOC and New Mexico Human Rights Bureau.  Her charge of gender discrimination is attached as Exhibit F (and incorporated herein).  By notice dated November 8, 2016 and post-marked November 9, 2016, the EEOC issued a Notice of Right to Sue, which Ms. Phelps received on November 10, 2016.  *See* Exhibit G.  The original complaint in this action has thus been filed within ninety days of the Notice of Right to Sue.

## **FACTUAL ALLEGATIONS**

20.     Sandia maintains uniform employment, compensation, performance review, and promotion policies throughout the United States.  Sandia also cultivates and promotes a common corporate culture.  These policies and this culture originate in Sandia headquarters in the State of New Mexico, and are disseminated to its offices in the rest of the country.

21.     Sandia's laboratories and offices throughout the U.S. use a common organizational structure, organizing employees by common job titles.

22.     While Sandia does not publish diversity figures, it has been reported in the popular press that women make up only 32 percent of Sandia employees.[1]

23.     Sandia discriminates against female employees in (1) performance evaluations; (2) compensation; and (3) promotions.

---

[1] *See* Kevin Robinson-Avila, *Hruby breaks glass ceiling at Sandia National Labs*, Albuquerque Journal, June 22, 2015, *available at* https://www.abqjournal.com/602365/jill-hruby-will-head-sandia-labs.html (last visited Dec. 14, 2016).

1332464.21

**Performance Evaluations**

24.     Sandia uses common, unvalidated, unreliable, and discriminatory procedures for evaluating employee performance that systematically undervalue female employees relative to their similarly situated male peers.  This has been true throughout the class period.

25.     Sandia uses a companywide "stack ranking" system for evaluating employee performance, which requires supervisors to rank employees from worst to best using a performance rating from 1 through 5, with 1 being worst, and 5 being best.  Only a certain percentage of employees in a defined peer group may be assigned certain ranks—for example, only a certain percentage of employees may receive a 5.

26.     This process is an invalid performance measurement system, as it sets arbitrary cutoffs among performers with similar performance.  The stack ranking process forces a distribution of performance ratings outcomes (from 1 through 5) regardless of whether there are meaningful performance differences between individual employees within a particular peer group.

27.     Worse still, an employee's rank is not based on valid and reliable performance measures.  Sandia instructs managers to evaluate employees, in part, based on four "personality" or "behavior" factors: Strategic Thinking, Adapting to Meet Demands, Teaming with Others, and Modeling Personal Accountability.  These criteria are invalid and unreliable and disadvantage women.  Supervisors were instructed to use the four unreliable qualitative assessments of employees' performance (that is, Strategic Thinking, Adapting to Meet Demands, Teaming with Others, and Modeling Personal Accountability) in assigning the employees in their review group a recommended ranking from worst to best (1 through 5).

28.     Employees have been organized into peer groups to be rated against one another in so-called "Centers," which are collections of several managers' employees.  Supervisors attend these meetings and present the merits of their own employees as compared to the other

supervisors' employees.  Because of the lack of reliable metrics, an employee could end up with a poor rating within a "Center," regardless of her actual performance record and the rank her supervisor originally recommended.

29.     This forced ranking process takes place annually, and performance review scores are used for compensation and promotion decisions.

30.     In this system, female employees are systematically undervalued compared to their male peers because female employees receive, on average, lower rankings despite equal or better performance.  Upon information and belief, female employees are particularly adversely impacted by "Center" meetings, where the vast majority of attending managers are men.  The proportion of men in management roles only increases at higher levels of the organization.

31.     Predictably, performance management systems that include unreliable and invalid criteria create inaccurate and biased outcomes, especially when they operate within a culture of bias towards women, as is true at Sandia.

32.     Upon information and belief, Sandia's stack ranking system has had an adverse impact upon female employees.

**Compensation**

33.     Sandia employs common, unvalidated, unreliable, and discriminatory procedures for determining employees' compensation that disparately impact female employees.

34.     Gender inequity in compensation compounds over time because every annual compensation decision, such as the amount of salary increase, is affected by an employee's current salary and salary band.

35.     Class Members' compensation includes two components: salary and bonus.  After each review period, Class Members are eligible for a merit increase to their base salary and a bonus.  Whether, and how much, an employee receives in any of these categories is determined by her performance rating and job title.  Because women have been systematically disadvantaged

by the stack ranking performance evaluation process, their outcomes in terms of raises and bonuses have suffered compared to their male peers.

36.     Sandia's uniform employment practices of salary setting and performance evaluation cause a disparate impact on female employees' compensation at Sandia.

**Promotions**

37.     Sandia also employs common, unvalidated, unreliable, and discriminatory procedures for selecting employees for promotion.  Because promotions are tied to the performance review process, female employees are adversely impacted in promotions as well. Promotions are not determined by objective, valid, and/or reliable performance measures.

38.     In order to be eligible for promotion at Sandia, an employee must be at the higher end of a salary band for his or her job title.  Because women earn less than similarly situated men, men are placed more highly in the salary band and are therefore more likely to eligible for promotion based on this factor.

39.     Additionally, to be eligible for promotion, employees must also have demonstrated "leadership," an unreliable, poorly defined, and tainted criterion, especially because women often do not receive leadership opportunities in light of a culture of gender bias.

40.     Overall, upon information and belief, Sandia promotes an overwhelmingly disproportionate number of men, and passes over equally or more qualified women.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs Kennicott, Garcia, and Phelps bring this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) seeking liability-phase injunctive and declaratory relief on behalf of a nationwide Class of all female employees employed by Sandia in the United States at any time from February 20, 2014 through the resolution of this action for claims under Title VII and the New Mexico Human Rights Act.  Plaintiffs also bring this class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) seeking backpay, monetary

damages, and other make-whole relief on behalf of a nationwide Class of all female employees employed by Sandia in the United States at any time from February 20, 2014 through the resolution of this action for claims under Title VII and the New Mexico Human Rights Act, and for the period from December 17, 2008 through resolution of this action for claims under the New Mexico Fair Pay for Women Act.  Plaintiffs reserve the right to amend the definition of the Class based on discovery or legal developments.

42.     Plaintiffs are members of the Class they seek to represent.

43.     The members of the Class identified herein are so numerous that joinder of all members is impracticable.  Sandia had a headcount of approximately 11,700 employees in 2015.  Although Plaintiffs do not know the precise number of female employees at Sandia nationwide, the number is far greater than can be feasibly addressed through joinder.

44.     There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members.  Common questions include:

a.      whether Sandia's policies and practices discriminate against female employees;

b.      whether Sandia's policies and practices violate Title VII and/or the New Mexico Human Rights Act and/or the New Mexico Fair Pay for Women Act;

c.      whether Sandia's performance evaluation system discriminates against female employees;

d.      whether Sandia's compensation system discriminates against female employees;

e.      whether Sandia's promotion system discriminates against female employees;

f.      whether Sandia has failed to implement policies and procedures to prevent retaliation against employees who challenge gender discrimination in the workplace, has failed

-9-

to address complaints of gender discrimination in the workplace, and has failed to conduct proper investigations of the same; and

g.      whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the Class are warranted.

45.      Plaintiffs' claims are typical of the claims of the Class they seek to represent.

46.      Plaintiffs will fairly and adequately represent and protect the interests of the Class they seek to represent.

47.      Plaintiffs have retained counsel competent and experienced in complex class actions and employment discrimination litigation.

48.      Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Sandia has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class they seek to represent.  The Class Members are entitled to injunctive relief to end Sandia's common, uniform, unfair, and discriminatory policies and practices.

49.      Class certification is also appropriate as to the Class pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class Members have been damaged and are entitled to recovery as a result of Sandia's common, unfair, and discriminatory policies and practices.  Sandia has computerized laboratory data, payroll data, and personnel data that will make calculation of damages for specific Class Members relatively simple.  The propriety and amount of punitive damages are based on Sandia's common conduct, making these issues common to the Class.

-10-

## CLAIMS OF NAMED PLAINTIFFS

**Plaintiff Lisa A. Kennicott**

50.     Plaintiff Kennicott was hired by Sandia in 1995 as a Member of Technical Staff. She worked at that title until 1998, when she left for other employment.  In 1999, Sandia re-hired Plaintiff Kennicott as a Senior Member of Technical Staff.  In 2005, she was promoted to the title of Principal Member of Technical Staff, a standard title she has functionally held to the present within the Advanced Instrumentation Systems, Flight & Instrumentation Systems, Equipment Engineering, and Transporter Systems Development organizations of Sandia.

51.     Ms. Kennicott earned a master's degree in computer science from the University of New Mexico in 1991 and also holds a master's degree from Harvard University.

52.     During the Class period, Ms. Kennicott has been subject to Sandia's company performance review process and has received reviews that have not adequately recognized her contributions, negatively affecting her compensation and opportunity for promotion.  Despite contributing equally or surpassing her male peers, Ms. Kennicott has not received a top review score of 5 during the class period.  Unlike her male colleagues who have advanced from the title of Principal level to the Distinguished level at a steady rate, Ms. Kennicott has held the same job title for more than 12 years.

53.     Each year as part of the performance review process, Ms. Kennicott received either a chart indicating her salary relative to employees of the same salary band, or a "compa ratio" figure, indicating the same information.  In a majority of years during the class period, Ms. Kennicott's salary was consistently below average, despite positive performance evaluations. After her promotion to the Principal level in 2005, it took Ms. Kennicott nearly a decade to rise to even the average salary within her salary band.

54.     In the fall of 2013, Ms. Kennicott expressed interest in a technical opportunity. Ms. Kennicott's experience and skills matched the needs of the advertised position, but she was

advised that a less qualified male colleague had already been selected prior to publication of the job posting.

55.     Recognizing that she and other women were not offered leadership positions and opportunities to work on high-profile projects at the same rate as their male colleagues, in March 2014, Ms. Kennicott raised concerns about the treatment of women at Sandia to the director of Ms. Kennicott's Center (a collection of several managers' employees), a male.  The director told her he commenced an internal Equal Employment Opportunity ("EEO") investigation.

56.     In June 2014, Ms. Kennicott applied for a technical leadership opportunity. During her interview for the position, a male manager informed her that he did not want to select her for the job because of her pending EEO complaint and advised her to be less intense "on these women issues."  Ms. Kennicott was not fairly considered for the position in retaliation for raising concerns of gender discrimination.

57.     Additionally, soon after Ms. Kennicott raised her gender discrimination complaint, her manager, a male, retaliated against her by expressing concerns about unspecified negative "behaviors."  Meanwhile, despite the fact that she was undergoing cancer treatment for which she was on a doctor-specified works-hours restriction, her manager increased Ms. Kennicott's workload substantially above that of her peers.  During August 2014, to keep up with her extreme workload and trying to mitigate the risk of further retaliation regarding her work, Ms. Kennicott refrained from taking a needed cancer medication for several months, putting her life at risk.  Her manager did not to reduce her workload despite repeated requests.

58.     Whereas Ms. Kennicott earned a second-highest review score in 2010, 2011, 2012, and 2013 (a 4 on a 1 to 5 scale), in 2014—after she raised concerns of gender discrimination—Ms. Kennicott received a score of 3 on a 1 to 5 scale.  In his oral delivery of her review, her manager, who had earlier told her to be "softer" in her speech, engaged in additional gender-based critiques of her communication and teamwork skills, noting that she had a

reputation of being "difficult."  Ms. Kennicott then refuted his comments with correspondence from her colleagues praising her communication and teamwork skills.  Nevertheless, her manager—in coordination with the male manager who did not offer her the leadership opportunity because of the discrimination complaint—justified Ms. Kennicott's performance review score by fabricating an assignment he claimed that she did not complete.  When she met with two co-workers, two managers, and an HR professional to discuss the fabricated assignment, she successfully refuted its existence.  After the meeting, the HR professional handed her a list of further gender-based critiques: she should be less of a "driver in meetings," exhibit better "teaming behavior," and stop exhibiting "victim behaviors."  Additionally, the HR professional told her that ultimately her "problem" was that she is an "alpha female."

59.     In 2015, Ms. Kennicott's manager continued to retaliate against her for having raised a gender discrimination complaint by forcing her to maintain a workload in excess of her male peers and at great cost to her personal health.  Despite several requests for medical accommodations, including requests in October 2014, January 2015, and February 2015—and the fact that in December 2014 Sandia's medical department placed her on a 48-hour workweek restriction—Ms. Kennicott regularly worked 60 or more hours per week until March 2015. During that time period, she also on several occasions worked in excess of 14 hours per day. Once again, in January 2015, Ms. Kennicott received a performance review score of 3.

60.     Ms. Kennicott's performance review scores of 3 in 2014 and 2015 disqualified her from being eligible for promotion to the Distinguished level.

61.     To escape retaliation and career stagnation, Ms. Kennicott moved to different organizations of Sandia in September 2015 (Engineering Equipment) and September 2016 (Secure Transportation Systems), maintaining the same Principal level title with each move. With each move, Ms. Kennicott's potential to excel in her position and achieve promotion to the Distinguished level has diminished.  And with each move, Ms. Kennicott has continued to

1332464.21

observe a culture of bias.  For example, in her last position, Ms. Kennicott, a computer engineer at the Principal level, was assigned to report to a male Technologist—a subordinate position.  In her current position, she has observed a male manager describe efforts to "rough up" women in job interviews to ensure that "they can take it here."

62.    As a result of Sandia's performance evaluation, compensation, and promotion process, Ms. Kennicott has been paid less than comparable male coworkers in the same position. She has also been denied a promotion that she was eligible and qualified for, while equally or less qualified men were promoted above her.

63.    As a result of Sandia's retaliation against Ms. Kennicott for raising a gender discrimination complaint, Ms. Kennicott suffered harm, including reduced pay and promotion opportunity.

**Plaintiff Lisa A. Garcia**

64.    Plaintiff Garcia was hired by Sandia in July 1988 as a custodian.  She rose through the ranks of the mailroom, payment processing department, and administrative section of the Radiation Protection department.  In 1997, she began working as a Health Physics Technologist in Dosimetry within Radiation Protection.  However, for her first year working as a Technologist, Plaintiff Garcia, unlike her male colleagues, was required to hold the lower-paying administrative title of Management Assistant.  Then, in 1998, she was given the formal title of Health Physics Technologist in Dosimetry within Radiation Protection.  In 1999, she was promoted to Senior Health Physics Technologist in Dosimetry within Radiation Protection.  In 2000, she made a lateral move to the title of Electromechanical Senior Technologist in Secure Transportation.  This was not a promotion.  Then, in 2005, she made another lateral move to the title of Electronics Senior Technologist in Satellites.  Again, this was not a promotion.  In 2008, she was promoted for the first time in 9 years to the title of Principal Technologist in Satellites,

and then in 2009, she made a lateral move to the title of Principal Technologist in Telemetry. She has held the title of Principal Technologist from 2008 to the present.

65.     Ms. Garcia earned a bachelor's degree in business from the College of Santa Fe in 2001.  Additionally, in 2003, she earned a Certificate in Electronics from what was then known as the Technical Vocational Institute of New Mexico.

66.     During the Class period, Ms. Garcia has been subject to Sandia's performance review process and has received reviews that have not fully recognized her contributions, which have negatively affected her compensation.

67.     Ms. Garcia was paid less than men with significantly less seniority and experience in her Technologist roles.  For example, in 2002, Ms. Garcia learned that she was earning less than a male Technologist with less seniority and experience.

68.     While Ms. Garcia has received review scores of 4, she has never received a top review score of 5.  Comments within her reviews have revealed a culture of sexism at Sandia. She has been told both that she can "never compete" with the "younger men's education," and she can "never compete" with "older men's experience."  In essence, she has been told that she cannot "compete" with any of her male colleagues.  In light of this environment of bias and her failure to receive review scores of 5 despite strong contributions, Ms. Garcia, unlike similarly situated male colleagues, has not been promoted to Distinguished Technologist or Member of Technical Staff.

69.     Gender-based stereotypes abound at Sandia.  While Ms. Garcia's male colleagues are offered projects that involve travel, Ms. Garcia is generally not offered these opportunities, despite her expressed interest.  Sandia's exclusion of Ms. Garcia from travel opportunities has limited her ability to demonstrate "leadership" and achieve promotion.  Ms. Garcia has also been told to "clean this lab like you would your kitchen," and when she uses power tools in the

ordinary course of her job, she is asked if she knows how to use them, despite her years of experience.

70.     As a result of Sandia's performance evaluation, compensation, and promotion process, Ms. Garcia has been paid less than comparable male coworkers in the same position and has not received promotions for which she was eligible and qualified.

**Plaintiff Sue C. Phelps**

71.     Plaintiff Phelps was hired by Sandia in May 1989 as a Member of Technical Staff, Scientific Computing.  In 1997, she was promoted to Senior Member of Technical Staff, Scientific Computing.  She did not receive another promotion for more than 15 years, despite making significant contributions to her job and earning a Ph.D. degree in the meantime.  In 2000, Ms. Phelps made a lateral move to the title of Senior Member of Technical Staff, High Performance Computing Research; in 2005, she made a lateral move to the title of Senior Member of Technical Staff within the division of Defense Systems and department of Missile Defense; and in 2011, Ms. Phelps made a lateral move to the title of Senior Member of Technical Staff within the division of Defense Systems and department of Phenomenology & Sensor Sciences.  None of these lateral moves were promotions.  In 2013, she was finally promoted to Principal Member of Technical Staff, remaining in the division of Defense Systems and department of Phenomenology & Sensor Sciences.  Ms. Phelps retired in April 2016.

72.     Ms. Phelps received a B.S. in Mathematics from Purdue University in 1972, a master's in computer science from the University of Illinois, Champaign-Urbana in 1989, and a Ph.D. in computer science from the New Mexico Institute of Mining and Technology in 2005.

73.     Ms. Phelps's less qualified and less experienced male colleagues rose through the ranks much faster than she did.  They were offered greater leadership opportunities, and in approximately 2009, one of the peers Ms. Phelps mentored was promoted over her.  In the years that followed, male colleagues and supervisors excluded Ms. Phelps from meetings, and

supervisors specifically asked her to perform, in their words, "low visibility" work, and Ms. Phelps was never promoted to the Distinguished level.

74.     Upon receiving her performance reviews, Ms. Phelps observed from 2013 to 2016 that her "compa ratio" demonstrated that she was paid less than her similarly situated male colleagues.  Such disparities fit into a trend.  Unlike her male colleagues, when Ms. Phelps was promoted to the Senior level in 1997, she did not receive any increase in her base salary.  Then, in approximately 2002, Ms. Phelps asked her colleague why her salary at the time was significantly lower than that of others at her skill level, and her colleague explained that the reason was likely that Ms. Phelps's earlier years' salaries at Sandia were lower than those of her colleagues.  Earning a Ph.D. did not remedy the problem.  When Ms. Phelps obtained her degree in 2005, she did not receive a salary increase in recognition of her accomplishment; instead, she received a one-time award of only $500.  Because annual salary increases at Sandia are a percentage of base salary, Ms. Phelps was thus at a persistent disadvantage due to her low starting salary in her first two positions at Sandia.  Additionally, because employees must be at the higher end of their job title's salary band before promotion, Ms. Phelps was also at a persistent disadvantage in terms of her opportunity for promotion to the Distinguished level.

75.     As a result of Sandia's performance evaluation, compensation, and promotion process, Ms. Phelps was paid less than comparable male coworkers in the same positions, and did not receive promotions for which she was eligible and qualified.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

**Intentional Discrimination**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended by the Lilly Ledbetter Fair Pay Act of 2009)**
**(On Behalf of Plaintiffs and the Class)**

76.     Plaintiffs incorporate the preceding paragraphs as alleged above.

1332464.21

77.     This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent.  Plaintiffs Kennicott, Garcia, and Phelps have filed timely charges with the EEOC on behalf of themselves and the Class Members.

78.     Sandia has engaged in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against its female employees.  Sandia has intentionally discriminated against Plaintiffs and the Class in violation of Title VII by, among other things:

     a.     Utilizing a biased performance rating system;

     b.     Utilizing a biased compensation system;

     c.     Utilizing a biased promotion system; and

     d.     Failing to take reasonable and adequate steps to prevent and correct the use of unreliable, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment.

79.     These company-wide policies are intended to and do have the effect of:

     a.     Denying Plaintiffs and Class Members business opportunities because of their gender;

     b.     Compensating them less because of their gender;

     c.     Failing to promote them because of their gender;

     d.     Evaluating their performance more negatively because of their gender; and

     e.     Providing them with inferior terms and conditions of employment as a result of discriminatory performance measures that systematically disadvantaged them because of their gender.

80.     The discriminatory acts that constitute Sandia's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

81.     As a direct result of Sandia's discriminatory policies and/or practices as described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

82.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 42 U.S.C. § 2000e *et seq.*

83.     Plaintiffs request relief as hereinafter described.

## SECOND CLAIM FOR RELIEF

**Disparate Impact Discrimination**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Lilly Ledbetter Fair Pay Act of 2009)**
**(On Behalf of Plaintiffs and the Class)**

84.     Plaintiffs incorporate the preceding paragraphs as alleged above.

85.     This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent.  Plaintiffs Kennicott, Garcia, and Phelps have filed timely charges with the EEOC on behalf of themselves and the Class Members.

86.     Sandia's reliance on illegitimate and unvalidated systems and criteria to evaluate employee performance, set compensation, select individuals for promotion, and determine other terms and conditions of employment, have an adverse impact on female employees in violation of Title VII and are not, and cannot be, justified by business necessity.  Even if such system and/or policies could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

87.     Sandia has maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.

88.     As a direct result of Sandia's discriminatory policies and/or practices as described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

1332464.21

89.     The foregoing policies, patterns, and/or practices have an unlawful disparate impact on women in violation of 42 U.S.C. § 2000e *et seq.*

90.     Plaintiffs request relief as hereinafter described.

### THIRD CLAIM FOR RELIEF

**Intentional Discrimination**
**(New Mexico Human Rights Act, N.M. Stat. Ann. 1978, § 28-1-1 *et seq.*)**
**(On Behalf of Plaintiffs and the Class)**

91.     Plaintiffs incorporate the preceding paragraphs as alleged above.

92.     This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent.  Plaintiffs Kennicott, Garcia, and Phelps have filed timely charges with the New Mexico Human Rights Bureau on behalf of themselves and the Class Members.

93.     Sandia has engaged in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against its female employees.  Sandia has intentionally discriminated against Plaintiffs and the Class in violation of the New Mexico Human Rights Act by, among other things:

      a.     Utilizing a biased performance rating system;

      b.     Utilizing a biased compensation system;

      c.     Utilizing a biased promotion system; and

      d.     Failing to take reasonable and adequate steps to prevent and correct the use of unreliable, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment.

94.     These company-wide policies are intended to and do have the effect of:

      a.     Denying Plaintiffs and Class Members business opportunities because of their gender;

      b.     Compensating them less because of their gender;

      c.     Failing to promote them because of their gender;

d.      Evaluating their performance more negatively because of their gender; and

e.      Providing them with inferior terms and conditions of employment as a result of discriminatory performance measures that systematically disadvantaged them because of their gender.

95.     The discriminatory acts that constitute Sandia's pattern and/or practice of discrimination have been based in and emanated from within the State of New Mexico, and have occurred both within and outside the liability period in this case.  The discriminatory policies, patterns, and practices have had a discriminatory impact on the female employees of Sandia nationwide.

96.     As a direct result of Sandia's discriminatory policies and/or practices as described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

97.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by the New Mexico Human Rights Act, N.M. Stat. Ann. 1978, § 28-1-1 *et seq.*

98.     Plaintiffs request relief as hereinafter described.

### FOURTH CLAIM FOR RELIEF

**Disparate Impact Discrimination**
**(New Mexico Human Rights Act, N.M. Stat. Ann. 1978, § 28-1-1 *et seq.*)**
**(On Behalf of Plaintiffs and the Class)**

99.     Plaintiffs incorporate the preceding paragraphs as alleged above.

100.    This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent.  Plaintiffs Kennicott, Garcia, and Phelps have filed timely charges with the New Mexico Human Rights Bureau on behalf of themselves and the Class Members.

101.    Sandia's reliance on illegitimate and unvalidated systems and criteria to evaluate employee performance, set compensation, and select individuals for promotion, and determine

other terms and conditions of employment, have an adverse impact on female employees in violation of the New Mexico Human Rights Act and are not, and cannot be, justified by a bona fide occupational qualification. Even if such systems and/or policies could be justified by a bona fide occupational qualification, less discriminatory alternatives exist and would equally serve any alleged necessity.

102.    Sandia has maintained these discriminatory policies, patterns, and/or practices arising in and/or emanating from within the State of New Mexico, both within and outside the liability period in this case. The discriminatory policies, patterns, and practices have had a discriminatory impact on the female employees of Sandia nationwide.

103.    As a direct result of Sandia's discriminatory policies and/or practices as described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

104.    The foregoing policies, patterns, and/or practices have an unlawful disparate impact on women in violation of the N.M. Stat. Ann. 1978, § 28-1-1 *et seq*.

105.    Plaintiffs request relief as hereinafter described.

**FIFTH CLAIM FOR RELIEF**
**(New Mexico Fair Pay for Women Act,  N.M. Stat. Ann. 1978 § 28-23 *et seq*,)**
**(On Behalf of Plaintiffs and the Class)**

106.    Plaintiffs incorporate the preceding paragraphs as alleged above.

107.    This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent.

108.    Sandia has discriminated against employees on the basis of sex by paying wages to female employees at a rate less than the rate paid to male employees for work of equal skill, effort, and responsibility.

109.    This disparity in pay cannot be justified by a seniority system, merit system, or system that measures earnings by quantity or quality of production.

-22-

110.     As a result of Sandia's conduct described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost compensation and benefits tied to compensation.

111.     Sandia's practice of paying women less than men for equivalent work violates N.M. Stat. Ann. 1978 § 28-23 *et seq*.

112.     Plaintiffs request relief as hereinafter described.

## SIXTH CLAIM FOR RELIEF

**Retaliation**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.)**
**(On Behalf of Plaintiff Kennicott Individually)**

113.     Plaintiff Kennicott incorporates the preceding paragraphs as alleged above.

114.     This claim is brought by Plaintiff Kennicott.  Plaintiff Kennicott has timely filed a charge with the EEOC alleging retaliation claims and has thus exhausted her administrative remedies.

115.     Plaintiff Kennicott engaged in protected activities, including making internal complaints of unlawful discrimination and filing charges with the EEOC and New Mexico Human Rights Bureau complaining of Sandia's discriminatory policies and practices.

116.     Sandia took adverse actions against Plaintiff Kennicott with the purpose of retaliating against her because of her participation in protected activities, and Plaintiff Kennicott suffered damages as a result of that conduct.

117.     Plaintiff Kennicott requests relief as hereinafter described.

## SEVENTH CLAIM FOR RELIEF

**Retaliation**
**(New Mexico Human Rights Act, N.M. Stat. Ann. 1978, § 28-1-1 *et seq*.)**
**(On Behalf of Plaintiff Kennicott Individually)**

118.     Plaintiff Kennicott incorporates the preceding paragraphs as alleged above.

1332464.21

119.    This claim is brought by Plaintiff Kennicott individually.  Plaintiff Kennicott has timely filed a charge with the New Mexico Human Rights Bureau alleging retaliation claims and has thus exhausted her administrative remedies.

120.    Plaintiff Kennicott engaged in protected activities, including making internal complaints of unlawful discrimination and filing charges with the EEOC and New Mexico Human Rights Bureau complaining of Sandia's discriminatory policies and practices.

121.    Sandia took adverse actions against Plaintiff Kennicott with the purpose of retaliating against her because of her participation in protected activities during the liability period in the State of New Mexico, and Plaintiff Kennicott suffered damages in the State of New Mexico as a result of that conduct.

122.    Plaintiff Kennicott requests relief as hereinafter described.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for relief as follows:

a.    Certification of the case as a class action on behalf of the proposed Class;

b.    Designation of Representative Plaintiffs Kennicott, Garcia, and Phelps as representatives of the Class;

c.    Designation of Representative Plaintiffs' counsel of record as Class Counsel for the Class;

d.    A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. § 2000e *et seq.*; the New Mexico Human Rights Act, N.M. Stat. Ann. 1978, § 28-1-1 *et seq.*; and the New Mexico Fair Pay for Women Act, N.M. Stat. Ann. 1978 § 28-23 *et seq.*

e.    A preliminary and permanent injunction against Sandia and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with

them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiffs or the Class because of their gender or participation in this lawsuit;

   f.  An order that Sandia institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of gender, and that it eradicate the effects of its past and present unlawful employment practices;

   g.  An order requiring Sandia to develop and institute accurate and validated standards for evaluating performance, determining pay, and making promotion decisions;

   h.  An order appointing a monitor to ensure that Sandia complies with the injunction provisions of any decree that the Court orders;

   i.  An order retaining jurisdiction over this action to ensure that Sandia complies with such a decree;

   j.  An order restoring Class Members to their rightful positions at Sandia (*i.e.*, reinstatement), or in lieu of reinstatements, an order for front pay benefits;

   k.  Back pay (including interest and benefits) for the Representative Plaintiffs and Class Members;

   l.  All damages sustained as a result of Sandia's conduct, including damages for emotional distress, according to proof;

   m.  Exemplary and punitive damages in an amount commensurate with Sandia's ability to pay and to deter future conduct;

   n.  Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

   o.  Pre-judgment and post-judgment interest, as provided by law; and

   p.  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

1332464.21

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Respectfully submitted,

Dated: February 7, 2017

By: _____

Kelly M. Dermody (N.M. Fed. Bar No. 17-18)
Lin Y. Chan (N.M. Fed. Bar No. 17-17)
Anne B. Shaver (N.M. Fed. Bar No. 17-22)
Michael Levin-Gesundheit (N.M. Fed. Bar No. 17-20)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: lchan@lchb.com
E-Mail: ashaver@lchb.com
E-Mail: mlevin@lchb.com

Adam T. Klein*
Elizabeth V. Stork*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Facsimile:   (212) 977-4005
E-Mail: atk@outtengolden.com
E-Mail: estork@outtengolden.com

David Lopez*
**OUTTEN & GOLDEN LLP**
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, D.C. 20001
Telephone:  (202) 847-4400
Facsimile:   (202) 847-4410
E-Mail: pdl@outtengolden.com
*Attorneys for Plaintiffs and the proposed Class*
*\*application for admission forthcoming*

1332464.21