IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LISA A. KENNICOTT, LISA A. GARCIA,
and SUE C. PHELPS, on behalf of themselves
and a class of those similarly situated,

        Plaintiffs,

v.                                                    Case No. 1:17-cv-00188-JB-GJF

SANDIA CORPORATION d/b/a SANDIA
NATIONAL LABORATORIES,

        Defendant.

**RESPONSE TO PLAINTIFFS' SUPPLEMENTAL SUBMISSION
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS STATE LAW CLAIMS**

Plaintiffs have filed a Supplemental Submission in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss State Law Claims [Doc. No. 60] ("Pls.' Supp.") in which they argue that "additional jurisdictional facts" support the denial of Sandia's motion. (Pls.' Supp. at 8.) Plaintiffs' "facts," however, are riddled with misrepresentations and misunderstandings of the record. Moreover, by focusing on where policies have been "administered" from an HR-support standpoint, which proves nothing about where the relevant decision-making occurred, Plaintiffs' entire argument misses the point. In a case where Plaintiffs challenge compensation, performance review, and promotion decisions by their respective managers, the question is where those decisions were made, not where certain policies were "administered." And, with respect to the named Plaintiffs, those decisions were all made on Kirtland Air Force Base, a federal enclave. The Court should dismiss Plaintiffs' state law claims.

**I.**       **Plaintiffs misrepresent and misconstrue the evidence in the record.**

Even if the location where policies were "administered" was relevant, which it is not, the actual factual record would not support Plaintiffs' position because Plaintiffs' assertions of "fact"

2598651.1

contain a large number of inaccuracies. These range from flat misrepresentations of the record they submitted to the Court to misunderstandings of the testimonial and documentary evidence. Plaintiffs assert, for example, that "from 2017 to the present," Sandia's Compensation organization has been located "off base at IPOC." (Pls.' Supp. at 4.) This is false, as Exhibit A to Plaintiffs' Submission shows. The Compensation organization has always been located at Tech Area 1 including for every month of 2017. Tech Area 1 is inside KAFB. *See* Deposition of Yvonne Baros, relevant parts attached hereto as Ex. 1, at 222:11-16. There is no ambiguity in the spreadsheet that Plaintiffs submitted; Plaintiffs simply misrepresent the record with respect to the Compensation organization.

Another example is the assertion that "the Compensation group is responsible for overall administration of the performance evaluation policy, including *creation of the policy…*" (Pls.' Supp. at 5 (emphasis added).) Similarly, Plaintiffs assert that "[t]he Compensation group is responsible for *the creation* and overall administration of the promotions policy." (*Id.* at 6 (emphasis added).) Given that the Compensation organization has always been located on Kirtland Air Force Base, these allegations hurt rather than help Plaintiffs' argument. Moreover, the record that Plaintiffs cite on the Compensation group's alleged "creation" of the performance evaluation policy, ("Baros Dep. 53:4-9, 85:14-86:7, 208:12-16"), and "creation" of the promotions policy ("Baros Dep. 85:14-86:7, 221:1-6"), do not support their inaccurate claims. Nothing in the cited testimony establishes that the "Compensation group" *creates* Sandia's performance evaluation policy or its promotion policy. But, regardless, where the policies happened to be "created" or "administered" is not the relevant inquiry – the issue is where the challenged compensation, performance evaluation and promotion decisions were made.

There are other instances of Plaintiffs' misunderstanding or misconstruing the record that are less obvious than the misrepresentations identified above but just as incorrect. Plaintiffs assert, for example, that "from 2017 to the present, the larger HR & Communications division, to which all HR entities report and which is responsible for the administration and final approval of all HR policies, has been located off base at IPOC." (Pls.' Supp. at 4.) That is incorrect. The spreadsheet Plaintiffs submit, (Pls.' Ex. A), shows that there was not even a single "IPOC" entry for "3000 HR & Communication" for January, February, March, April, or May of 2017. (Pls.' Ex. A at 20-21 of 22). To the contrary, the location is consistently identified as "Tech Area 1" of Kirtland Air Force Base, *not* "off base at IPOC." The only reference to IPOC with respect to "3000 HR & Communication" is in one of three "3000 HR & Communication" entries in June of 2017, which pertained to a single director who was transitioning from the Communications center to another position outside of the HR & Communications division at that time. (*Id.* at 21 of 22); *see also* Declaration of Yvonne Baros, attached as Ex. 2. Even in June of 2017, the "ALD" of 3000 HR & Communication, which is the successor position to "Vice President," is identified as located in "Tech Area 1" of Kirtland Air Force Base, just like in every other month of 2017 (and every other year on the chart). (*Id.*) Put simply, Division 3000 HR & Communication remained on the federal enclave throughout 2017, and the record confirms that. Plaintiffs' contention that the "HR & Communications division" "has been located off base at IPOC" in 2017 is simply wrong.

Finally, Plaintiffs assert that the "Talent Acquisition organization" was "tasked with setting and approving starting salaries for all new employees." (Pls.' Supp. at 3.) Yvonne Barros, however, testified only that the Talent Acquisition group facilitates the process by working with "the compensation department and the *hiring manager* to set an appropriate salary [for a new hire] based on experience and market." (*See* Ex. B to Pls.' Supp., 216:4-217:3 (emphasis added).)

Given that Plaintiffs are attempting to defeat a Rule 12(b)(6) motion to dismiss with testimonial and documentary evidence, the fact that so many of their assertions about that evidence is inaccurate and misleading weighs heavily against the Court changing its inclination, expressed at the hearing on the motion, to grant the motion to dismiss. (*See* Tr. of June 12, 2017 Hr'g 6:11-12 ("I would be inclined to grant this motion to dismiss.").)

**II.     The challenged decisions relating to Plaintiffs were made on the federal enclave.**

In addition to the evidentiary problems described above, Plaintiffs' Supplemental Submission fails to address the key questions: Who made the compensation, performance evaluation and promotion decisions Plaintiffs purport to challenge and where were those decisions made? Plaintiffs do not and cannot argue that the decisions relating to their respective employments were made off base. So, instead, Plaintiffs repeatedly assert that Sandia's policies were "administered" off Kirtland Air Force Base. (*See* Pls.' Supp. at 1-8.) Whether HR provided administrative support of certain policies off base is irrelevant, however, because it does not inform where the decisions Plaintiffs challenge were made.

The parties agree on the standard that determines whether the federal enclave doctrine applies in this case: "For federal enclave jurisdiction to apply, in employment discrimination cases, the adverse decision must have been made on federal territory, because the locus of decision-making is where such a tort arises." *Camargo v. Gino Morena Enters., L.L.C.*, 2010 WL 3516186, at * 2 (W.D. Tex., Sept. 2, 2010); (*see also* Pls.' Supp. at 2.) To decide what "decisions" are at issue, the parties and the Court must look to what Plaintiffs[1] are alleging in this case. Plaintiffs' allegations include:

---

[1] As Sandia noted earlier, the fact that Plaintiffs have made this allegation does not mean that it is true. Indeed, Sandia denies it.

- "Despite contributing equally or surpassing her male peers, Ms. Kennicott has not received a top review score of 5 during the class period." (Compl. ¶ 52).

- "In the fall of 2013, Ms. Kennicott expressed interest in a technical opportunity. Ms. Kennicott's experience and skills matched the needs of the advertised position, but she was advised that a less qualified male colleague had already been selected prior to publication of the job posting." (*Id.* ¶ 54.)

- "In June 2014, Ms. Kennicott applied for a technical leadership opportunity. During her interview for the position, a male manager informed her that he did not want to select her for the job because of her pending EEO complaint and advised her to be less intense 'on these women issues.'" (*Id.* ¶ 56.)

- "After she raised concerns of gender discrimination—Ms. Kennicott received a score of 3 on a 1 to 5 scale. In his oral delivery of her review, her manager, who had earlier told her to be 'softer' in her speech, engaged in additional gender-based critiques of her communication and teamwork skills, noting that she had a reputation of being 'difficult.'" (*Id.* ¶ 58.)

- "In 2015, Ms. Kennicott's manager continued to retaliate against her for having raised a gender discrimination complaint by forcing her to maintain a workload in excess of her male peers and at great cost to her personal health." (*Id.* ¶ 59.)

- "While Ms. Garcia has received review scores of 4, she has never received a top review score of 5. Comments within her reviews have revealed a culture of sexism at Sandia. She has been told both that she can 'never compete' with the 'younger men's education,' and she can 'never compete' with 'older men's experience.' In essence, she has been told that she cannot 'compete' with any of her male colleagues." (*Id.* ¶ 68.)

- "Gender-based stereotypes abound at Sandia. While Ms. Garcia's male colleagues are offered projects that involve travel, Ms. Garcia is generally not offered these opportunities, despite her expressed interest." (*Id.* ¶ 69.)

- "Ms. Phelps's less qualified and less experienced male colleagues rose through the ranks much faster than she did. They were offered greater leadership opportunities, and in approximately 2009, one of the peers Ms. Phelps mentored was promoted over her. In the years that followed, male colleagues and supervisors excluded Ms. Phelps from meetings, and supervisors specifically asked her to perform, in their words, 'low visibility' work, and Ms. Phelps was never promoted to the Distinguished level." (*Id.* ¶ 73.)

It is undisputed that each of the named plaintiffs worked or works on the Kirtland Air Force Base and any decisions they are challenging occurred there.

### III. To The Extent Plaintiffs Continue To Claim That They Challenge Corporate Policies Created at Kirtland Air Force Base As Set Forth In Their Complaint, Nothing In The Factual Record Should Alter This Court's Dismissal of The New Mexico State Law Claim.

Sandia's Rule 30(b)(6) witness, Yvonne Baros, testified about who was responsible for the policies and making the final approval decisions with respect to those policies. In sum, the record establishes that the Vice President of Human Resources had final approval over the compensation, performance evaluation, and promotions policies. (Ex. B to Pls.' Supp. (Baros Dep.) 104:4 – 106:3.) The record also establishes that from 2012 through June of 2017—the entire time addressed in Plaintiffs' Supplemental Submission—that the Vice President of Human Resources was located in Tech Area 1 at Kirtland Air Force Base, which is an undisputed federal enclave. (*See* Ex. A to Pls.' Supp.) Those are the facts that matter, and they demonstrate that dismissal of the Plaintiffs' state law claims is warranted.

Plaintiffs completely ignore the testimony about the Vice President of Human Resources' policy decision-making to focus on so-called policy "administration" in various parts of Sandia. Plaintiffs do not attempt to define "administration" (and such a definition could not include approval of the policies in any event, for the reasons described above), but Yvonne Baros did address that issue in her testimony:

> Q. When you've used the term administer
> before, not that terribly long ago, you said that
> compensation administers the compensation policy,
> for example. So what do you mean by "administer"?
>
> A. They're the ones that are responsible for
> crafting and the policy and overseeing when
> there's questions and answers, they're that first
> line to interpret that policy.

(Ex. B to Pls.' Supp. (Baros Dep.) 220:18-25.) Ms. Baros was addressing the meaning of the word "administer" in the specific context of a question about Sandia's compensation policy.

Answering questions about a policy is not equivalent to creating a policy nor is it equivalent to decision-making under that policy. Indeed, Ms. Baros testified that in terms of approving corporate policies, those decisions were made by the Vice President of Human Resources. Similarly, overseeing questions and answers about the policies, and "interpreting" the policies issued by the Vice President of Human Resources are not responsibilities or acts that are relevant to the fundamental decision-making question at issue. Thus, to the extent Plaintiffs continue to assert that somehow they are challenging the corporate policies themselves, there is nothing in the record that should change this Court's decision to dismiss Plaintiffs New Mexico State Claims based on the federal enclave doctrine.

## Conclusion

Plaintiffs attempt to misrepresent the record and confuse the issues, but Plaintiffs have not and cannot dispute that the decisions they challenge were made on Kirtland Air Force Base, a federal enclave. Plaintiffs' state law claims are therefore barred for the reasons set forth in Defendants' Motion to Dismiss. The Court should grant the motion.

Respectfully submitted,

| RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A. | MORGAN, LEWIS & BOCKIUS LLP |
|---|---|
| By  /s/ Jeffrey L. Lowry  <br>   Scott D. Gordon<br>   Theresa W. Parrish<br>   Jeffrey L. Lowry<br>   Stephanie L. Latimer<br>Post Office Box 1888<br>Albuquerque, New Mexico  87103<br>Telephone:  (505) 765-5900<br>Facsimile:  (505) 768-7395<br>sgordon@rodey.com / tparrish@rodey.com<br>jlowry@rodey.com / slatimer@rodey.com<br><br>*Attorneys for Defendant Sandia Corporation* | By  /s/ Michael S. Burkhardt  <br>   Grace E. Speights<br>   Michael S. Burkhardt<br>   Krissy A. Katzenstein<br>1111 Pennsylvania Avenue, NW<br>Washington, DC  20004-2541<br>Telephone:  (202) 739-3000<br>Facsimile:  (202) 739-3001<br>grace.speights@morganlewis.com<br>michael.burkhardt@morganlewis.com<br>krissy.katzenstein@morganlewis.com<br><br>*Attorneys for Defendant Sandia Corporation* |

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of November, 2017, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means.

Rodey, Dickason, Sloan, Akin & Robb, P.A.

By *  /s/ Jeffrey L. Lowry*
    Jeffrey L. Lowry