**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

LISA A. KENNICOTT, LISA A.
GARCIA, and SUE C. PHELPS, on behalf
of themselves and a class of those similarly
situated,

        Plaintiffs,

        v.

SANDIA CORPORATION d/b/a SANDIA
NATIONAL LABORATORIES,

        Defendant.

No. CIV 17-0188 JB/GJF

## STIPULATION AND ORDER CONCERNING PRODUCTION OF ELECTRONICALLY STORED INFORMATION

WHEREAS, counsel for Plaintiffs and Defendant (collectively, the "Parties," and each, a "Party") have met and conferred regarding discovery of electronically stored information ("ESI") of the Parties;

WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

WHEREAS, the Parties have entered into this Stipulation and [Proposed] Order Concerning Production of Electronically Stored Information ("Order") to facilitate the just, speedy, and inexpensive conduct of discovery involving ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

IT IS HEREBY ORDERED that:

1.    All Parties are bound by and subject to the terms of this Order.

2.    <u>Definitions</u>.

    a.    "Discovery Material" is defined as all products of discovery and all

information derived there from, including, but not limited to, documents, objects and things, deposition testimony, interrogatory/request for admission responses, and any copies, excerpts or summaries thereof, produced by any Party in the above-captioned matter.

      b.     Plaintiffs and Defendant, as well as their officers, directors, employees whom Plaintiffs and Defendant agree will be ESI custodians, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

      c.     "Plaintiffs" as used herein shall mean Plaintiffs Lisa Kennicott, Lisa Garcia, and Sue Phelps, and all putative class members, as well as any other individually named plaintiff in this case or in any case that is consolidated with this matter.

3.     <u>Cooperation</u>.  The Parties shall conduct discovery in a cooperative manner, including without limitation, by reasonably drafting discovery requests and responses in accordance with Fed R. Civ. P. 1 and 26(g)(1); and producing ESI in accordance with Fed R. Civ. P. 34; and by meeting and conferring in good faith on topics such as identification of custodians of relevant ESI, potentially relevant data sources, search methodologies, and such other issues as may arise during the course of discovery.

The Parties agree to abide by the terms of this Order in good faith and they agree to promptly alert all other Parties concerning any technical problems associated with complying with this Order.  To the extent compliance with this Order imposes an undue burden; the Parties shall promptly confer in an effort to resolve the issue.

4.     <u>Protective Order</u>.  All productions will be subject to the Protective Order in this matter.

5.     <u>Custodians</u>. The Parties shall meet and confer regarding individual custodians and search terms and memorialize in writing any agreements reached.  If the parties cannot reach agreement on such issues, either party may present the dispute to the Court for resolution.

6.     <u>Timeframe</u>.  If the Court grants Defendant Sandia Corporation's Motion to

Dismiss State Law Claims (Dkt. 14), the collection and production obligations of the Parties set forth in this Order apply to documents and ESI generated, received, or created on or after January 1, 2012, except as otherwise agreed among the Parties after meeting and conferring in good faith, or upon further order of the Court for good cause shown. If the Court denies the Motion to Dismiss State Law Claims, the Parties will meet and confer on the appropriate timeframe for the collection and production obligations set forth in this Order.

7. <u>Preservation of ESI</u>. The Parties acknowledge that they have an obligation under the Federal Rules of Civil Procedure and the common law to preserve discoverable information in the Party's possession, custody or control. Nothing in this ESI Protocol is intended to modify or expand that obligation. With respect to preservation of ESI, the Parties agree as follows:

Absent a showing of good cause by the requesting Party, the Parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the Parties shall take reasonable and proportional steps to preserve all discoverable ESI in their possession, custody or control.

a. All parties shall supplement their disclosures in accordance with Rule 26(e). However, the Parties expressly agree that after they identify ESI custodians, the agreed upon ESI sources relating to these custodians will be collected and reviewed one time. To the extent either Party contends that supplementation of any one of these custodians data is necessary (e.g., because they are trial witnesses), the Parties agree to meet and confer regarding the request.

b. Absent a showing of good cause by the requesting Party, the following categories of ESI need not be preserved:

      i. Deleted, slack, fragmented, or other data only accessible by forensics.

      ii. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the

       operating system.

   iii.  On-line access data such as temporary internet files, history, cache, cookies, and the like.

   iv.  Data in metadata fields that are frequently updated automatically, such as last-opened dates.

   v.  Back-up data that are substantially duplicative of data that are more accessible elsewhere.

   vi.  Server, system or network logs.

   vii.  Data remaining from systems no longer in use that is unintelligible on the systems in use.

   viii.  Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), *provided* that a copy of all such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

   ix.  Logs of calls made from cellular or land-line phones.

   x.  Data stored on photocopiers, scanners and fax machines.

   xi  Text messages.

  8.  <u>Deduplication</u>.  The Parties shall make reasonable efforts to deduplicate ESI.  ESI shall be deduplicated horizontally across custodians and vertically within a custodian's ESI.  ESI will be considered duplicative if it has the same content including metadata.  For example, duplicates would include copies of the same electronic file saved on the local hard drives and/or network shared drives of multiple custodians, even if different instances of the file reflect different dates created.

  9.  <u>Email Threading</u>.  In order to reduce the volume of entirely duplicative content

within email threads, the Parties shall take reasonable steps to utilize "email thread suppression." As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. For purposes of this paragraph, only email messages in which the parent document, senders and recipients, and all attachments are exactly the same will be considered duplicates. An email thread for which a party claims a privilege may be logged in a single entry provided that such entry identifies all senders and recipients appearing at any point in the thread.

      10.    <u>Production Format For ESI</u>.

          a.    <u>General Provisions</u>. Production will be made by copies rather than inspection. Documents will be produced as they are kept in the ordinary course of business. The production and privilege log will not track the category of the request absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

          b.    <u>Bates Numbering</u>. Unless the Parties agree to a different format, documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tif file should be assigned a unique name matching the Bates number of the corresponding image. The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder. All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tif image. These .tif images should be provided in a

separate folder and the number of TIFF files per folder should be limited to 1,000 files. Files will be named according to the Bates number of the corresponding *.tif image. In addition, wherever possible, each *.tif image will have its assigned Bates number electronically "burned" onto the image. The Bates number will:

    i    be consistent across the production;

    ii    contain no special characters; and

    iii    be numerically sequential within a given document.

    c.    <u>Document Text</u>. All unredacted documents should be provided with complete document-level extracted text files. In the event a document contains text which is to be redacted, OCR text files should be provided for any un-redacted portions of the documents. Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents (to the extent text can be extracted from the hard copy scanned documents). The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files. These TXT files may either be provided in a separate folder or included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files.

    d.    <u>Parent-Child Relationships</u>. For email collections, the parent-child relationships (the association between emails and attachments) should be preserved. Email attachments should be consecutively produced with the parent email record.

    e.    <u>Non-redacted Word Processing Files</u>. All word processing files, including without limitation Sandia Word files, that do not require redactions, will be produced as *.tif images showing track changes and comments. A UNC file path must be included in the ESI load file.

    f.    <u>Non-redacted Spreadsheet Files</u>. Spreadsheet files, including without limitation Sandia Excel files, that do not require redactions will be produced as native files

showing comments and similar data. A UNC file path must be included in the ESI load file. Additionally a bates-stamped *.tif placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file.

g. <u>Presentation Files</u>. Presentation, files, including without limitation Sandia PowerPoint files, will be produced as native files showing comments, hidden slides, speakers' notes, and similar data and as *.tif images. A UNC file path must be included in the ESI load file.

h. <u>Social Media</u>. ESI from social media websites (e.g., LinkedIn, Facebook, Twitter) may be produced by capturing responsive information through "screen shots" or "screen captures" and converting same into *.tif images along with corresponding extracted text or OCR unless the Parties agree to perform bulk exports of accounts, such as by exporting out a profile from LinkedIn or downloading a copy of an individual's Facebook data or archive.

i. <u>Media Files</u>. Media and audio-visual files, including without limitation, videos and audio files, will be produced as native files. A UNC file path must be included in the ESI load file. Additionally, a bates-stamped *.tif placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file. Photos will be produced as *.tif images.

j. <u>Database Records</u>. To the extent that any Party produces information that is stored in a database or database management system, such information will be produced by querying the database for discoverable information and generating a report or a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party. To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production. The producing Party will provide information about the database to facilitate that discussion, including the fields, data types, and rules contained within the database. The

producing Party will also provide upon request, insofar as it exists and is helpful to a discussion of responsive data, information regarding:

      i.      The reporting capabilities and enhanced reporting capabilities of the database;

      ii.      The size of the database and its content;

      iii.      The query language that may be used to search the database;

      iv.      The database's physical schema, including the software and hardware on which it is stored and administered;

      v.      The database's logical schema, including its tables, structures, attributes, fields, relationships, joins, and views, and including any entity relationship model

      vi.      Any available data dictionary describing the content of the data fields;

      vii.      Any available system catalog containing metadata associated with the database.

      k.      <u>Embedded Files</u>.  Embedded files are produced as independent document records.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded. Embedded signatures and logos need not be produced as separate files.

      l.      <u>Time Zone</u>.  Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Universal Coordinated Time (UTC) to the extent possible.  The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file.  Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced

as part of the document text in accordance with Concordance and Summation formats, below.

  m. <u>Load File Formats</u>.  ESI will be produced in standard Concordance load file format (.dat file) and an image file that is in .OPT format. The .dat file shall not include the extracted text or OCR text for any file; instead the .dat file will contain a field with a link to the folder path where extracted text file or the OCR text file is stored.

  n. <u>Metadata to be Produced</u>.  Metadata to be produced: The following metadata fields should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.  All requests should be read to include a request for all metadata associated with all documents responsive to the request.  For electronic documents collected through non-forensic means, the metadata fields provided will be the same as those provided for hardcopy documents. The Parties agree to confer in good faith regarding a receiving Party's reasonable request to obtain additional metadata for a specific document(s) collected through non-forensic means.

| **FIELD NAME** | **DESCRIPTION** | **CATEGORY** |
| --- | --- | --- |
| **BEGDOC** | Starting bates | Hardcopy, edoc, email **and** attachment |
| **ENDDOC** | Ending bates | Hardcopy, edoc, email **and** attachment |
| **BEGATTACH** | Starting bates for attachment | Hardcopy, edoc, email **and** attachment |
| **ENDATTACH** | Ending bates for attachment | Hardcopy, edoc, email **and** attachment |
| **Extracted Text/Ocr Text File Path** | Link to TXT file in each production | All documents for which extracted text or OCR text is provided |
| **CUSTODIAN** | Custodial **or** non-custodial source(s) from which the **document** was collected | Hardcopy (if coded), edoc, email **and** attachment (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| ALL CUSTODIANS | Custodial source(s) from which document was collected but subsequently suppressed as a duplicate during processing. | Edoc, email **and** attachment (populated through processing) |
| FAMILYIDOR ATTACHID | Family (Range of bates related **documents** (i.e email & attachment) - this field will be populated for **all** records in the family.) | Hard copy, edoc, emails **and** attachments (populated through processing) |
| PRPERTIES OR RCRDTYPE | Record type – will be either "email," "attachment," "edoc," **or** "hardcopy." | |
| FROM | Email Author | Emails (populated through processing) |
| TO | Recipient | Emails (populated through processing) |
| CC | CC field - In the event of emails | Emails (populated through processing) |
| BCC | Bcc field - in the event of emails | Emails (populated through processing) |
| SUBJECT | Subject | Emails (populated through processing) |
| DOCTITLE | **Document** Title/name of the original native file as it existed at the time of collection. | Hardcopy (if coded), edoc **or** attachment (populated through processing) |
| DOCDATE | **Document** Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email **and** Attachments |
| DATESENT | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |
| TIMESENT | Time sent, format 00:00:00 AM/PM | Emails (populated through processing) |
| DATERECEIVED | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **TIMERECEIVED** | Time sent, format 00:00:00 AM/PM | Emails (populated through processing) |
| **DATERECEIVED** | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |
| **TIMERECEIVED** | Time sent, format 00:00:00 AM/PM | Emails (populated through processing) |
| **DATESVD** | Date last saved/modified, format MM/DD/YYYY | Edoc **or** attachment (populated through processing) |
| **TIMESVD** | Time saved, format 00:00:00 AM/PM | (populated through processing) |
| **PAGECOUNT** | **Document** page count | Edoc **or** attachment (populated through processing) |
| **ATTILE** | File name/attachment name | Electronic files **and/or** attachments (populated through processing) |
| **APPLICAT** | Application used to open the file (Word, Powerpoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files **and/or** emails, attachments (populated through processing) |
| **DOCLINK or NATIVEFILE** | Active link reflecting current filepath back to the native file | Electronic files **and/or** emails, attachments (populated through processing <u>**and only provided if receiving native files**</u>.) |
| **FILEEXTEN** | In the event of attachments **or** emails, this will enable us to search by **document** type. Sample contents: *PST*, *MSG*, *PDF*, *DOC*, *PPT*, *HTM*, etc. | Electronic files **and/or** emails, attachments (populated through processing) |
| **FILESIZE** | Numerical file size, in bytes, of any natively-produced documents. | Electronic files and/or edocs (populated through processing). |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| AUTHOR | In the event of attachments, this field contains the 'author' of the **document** | For Hard Copy **documents** (if coded) **or** electronic files **and/or** attachments (populated through processing) |
| HASH | MD5 Hash value for de-dupe | Electronic files **and/or** attachments (populated through processing) |
| CONVERSATION INDEX | Value that indicates the relative position of a message within a conversation thread. | Emails (populated through processing) |
| HEADER | Contains **all** the routing information from the header section of an email message | Emails (populated through processing) |

11. <u>Production Format for Hard Copy Documents</u>. Hard copy documents will be scanned and processed as .tif images with OCR. To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production.

12. <u>Encryption</u>. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

13. <u>Costs</u>. The Parties that the burdens placed on it during this litigation, including during discovery, must be proportional to the litigation itself, including the nature of the claims and the amount in controversy. See Fed. R. Civ. P. 1 and Fed. R. Civ P. 26(b)(2)(C). Accordingly, both Parties reserve the right to seek shifting or sharing of certain discovery costs, including vendor and attorney fees, in appropriate circumstances. See Fed. R. Civ P. 26(b)(2)(B), (C).

14. <u>No Waiver of Rights</u>. This Order shall not enlarge or affect the proper scope of

discovery in this litigation, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation.  Nothing in this Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by federal rule, the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable and valid.  Additionally, nothing in this Order shall be deemed to waive or limit either Party's right to object to the production of certain ESI, pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), on the ground that the sources are not reasonably accessible because of undue burden or cost.

15. <u>Fed. R. Evidence 502(d) Order</u>.  Pursuant to Federal Rule of Evidence 502(d), the Court orders that a producing Party's attorney-client privilege and work product protection is not waived by disclosure of the materials to the opposing side if the disclosure is unintentional.  A producing party which seeks the return of documents under this section may request the return of documents which should have been withheld on the basis of the attorney-client and/or work product protection.  Upon receipt of such a request for return, the party to whom the documents were produced must segregate the documents and return them or seek, within thirty (30) days, a determination by the Court regarding whether the documents must be returned.  This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evidence 502(d).

Dated:  August 24, 2017

| **LIEFF, CABRASER, HEIMAN & BERNSTEIN, LLP** | **MORGAN, LEWIS & BOCKIUS LLP** |
|---|---|
| By: */s/ Kelly M. Dermody*<br>Kelly M. Dermody | By: */s/ Grace E. Speights*<br>Grace E. Speights |
| Kelly M. Dermody (N.M. Fed. Bar No. 17-18)<br>Anne B. Shaver (N.M. Fed. Bar No. 17-22)<br>Lin Y. Chan (N.M. Fed. Bar No. 17-17) | Grace E. Speights<br>Michael S. Burkhardt<br>Krissy A. Katzenstein<br>**MORGAN, LEWIS & BOCKIUS LLP** |

Michael Levin-Gesundheit (N.M. Fed. Bar No. 17-20)
Tiseme Zegeye (N.M. Fed. Bar No. 17-69)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: ashaver@lchb.com
E-Mail: lchan@lchb.com
E-Mail: mlevin@lchb.com
E-Mail: tzegeye@lchb.com

Adam T. Klein*
Elizabeth V. Stork*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (212) 977-4005
E-Mail: atk@outtengolden.com
E-Mail: estork@outtengolden.com

David Lopez*
**OUTTEN & GOLDEN LLP**
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
E-Mail: pdl@outtengolden.com

*Attorneys for Plaintiffs and the proposed Class*

* attorney associated with member of D.N.M. Federal Bar

1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
grace.speights@morganlewis.com
michael.burkhardt@morganlewis.com
krissy.katzenstein@morganlewis.com

Scott D. Gordon
Theresa W. Parrish
Jeffrey L. Lowry
Stephanie L. Latimer
**RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.**
Post Office Box 1888
Albuquerque, New Mexico 87103
Telephone: (505) 765-5900
Facsimile: (505) 768-7395
sgordon@rodey.com / tparrish@rodey.com
jlowry@rodey.com / slatimer@rodey.com

*Attorneys for Defendant*

IT IS SO ORDERED.

_____
UNITED STATES DISTRIC JUDGE

# CERTIFICATE OF SERVICE

      I hereby certify that on August 24, 2017, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means.

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: */s/ Tiseme G. Zegeye*
     Tiseme G. Zegeye

1361477.3