## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LISA A. KENNICOTT, LISA A. GARCIA,
and SUE C. PHELPS, on behalf of themselves
and a class of those similarly situated,

        Plaintiffs,

v.                                      Case No. 1:17-cv-00188-JB-GJF

SANDIA CORPORATION d/b/a SANDIA
NATIONAL LABORATORIES,

        Defendant.

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS CLAIMS

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 3

III.  LEGAL STANDARD ........................................................................................... 6

IV.  ARGUMENT ....................................................................................................... 9

    A.  Plaintiffs' New Class Claims Are Not Plausible Because They Are Inconsistent With Plaintiffs' Original Allegations And Plaintiffs' Individual Factual Allegations. ................................................................. 9

    B.  Plaintiffs' Newly Created Class Claims Are Nothing More Than A Challenge To Managerial Discretion And Cannot Plausibly Satisfy The Class Action Requirements of Rule 23. .............................................. 12

        1.  Plaintiffs' class claims should be dismissed because they have not plausibly pled the existence of Rule 23(a) commonality. ........................ 12

        2.  Plaintiffs cannot satisfy the requirements of Rule 23(b)(2) or (b)(3). ...................................................................................... 16

    C.  Plaintiffs' Disparate Impact Claim Fails Because Plaintiffs Do Not Identify A Specific Policy Or Practice That They Contend Has Had A Disparate Impact. ................................................................................ 20

V.  CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................6, 7

*Augustin v. Jablonsky*,
  No. 99CV3126, 2001 WL 770839 (E.D.N.Y. Mar. 8, 2001) .................................17

*Barabin v. Aramark Corp.*,
  210 F.R.D. 152 (E.D. Pa. 2002), *aff'd*, No. 02-8057, 2003 WL 355417
  (3d Cir. Jan. 24, 2003) ....................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................7

*Bell v. Lockheed Martin Corp.*,
  No. CIV. 08-6292 RBK/AMD, 2011 WL 6256978 (D.N.J. Dec. 14, 2011) ...........................13

*Bolden v. Walsh Constr. Co.*,
  688 F.3d 893 (7th Cir. 2012) ................................................................13

*Byrd v. City of Philadelphia*,
  No 12-4520, 2013 WL 5728669 (E.D. Pa. Oct. 22, 2013) ....................................20

*Camacho v. Advocate Health Care*,
  No. 11-5795, 2011 WL 5903471 (N.D. Ill. Nov. 22, 2011) ..................................20

*Casias v. Dist. Mgmt. Corp., Inc.*,
  No. 11-00874, 2014 WL 12710236 (D.N.M. Mar. 31, 2014) .................................17

*Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*,
  765 F.3d 1205 (10th Cir. 2014) ................................................................8

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ........................................................................17

*Cooper v. Fed. Reserve Bank of Richmond*,
  467 U.S. 867 (1984) ........................................................................18

*Dukes v. Wal-Mart Stores, Inc.*,
  No. 10-03005, Dkt. 59 (N.D. Cal. Aug. 2, 2013) ..................................13

*EEOC v. Honda of Am., Mfg., Inc.*,
  No. 06-233, 2007 WL 1541364 (S.D. Ohio May 23, 2007) ..................................21

*Gen. Tel. Co. of SW. v. Falcon*,
    457 U.S. 147 (1982)..................................................................................................7

*Gschwind v. Heiden*,
    692 F.3d 844 (7th Cir. 2012) .................................................................................13

*Hightower v. Wells Fargo Bank, N.A.*,
    No. 17-04119, 2018 WL 1518616 (E.D. Pa. Mar. 28, 2018) ..................................7

*Raytheon Co. v. Hernandez*,
    540 U.S. 44 (2003)..................................................................................................3

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977)..............................................................................................18

*Irvine v. Am. Nat. Bank & Trust Co. of Chicago*,
    Nos. 84-417, 84-3159, 1991 WL 134182 (N.D. Ill., July 12, 1991).....................21

*Jones v. Nat'l Council of Young Men's Christian Ass'ns of the United States of
    Am.*, 34 F. Supp. 3d 896, 906 (N.D. Ill. 2014).......................................................13

*Kant v. Columbia University*,
    No. 08 CIV. 7476, 2010 WL 807442 (S.D.N.Y. Mar. 9, 2010) ..............................9

*Lee v. ITT Corp.*,
    275 F.R.D. 318 (W.D. Wash. 2011) .......................................................................17

*Monreal v. Potter*,
    367 F.3d 1224 (10th Cir. 2004) .............................................................................19

*Moore v. Publicis Grp. SA*,
    No. 11-1279, 2014 WL 11199094 (S.D.N.Y. May 15, 2014) .................................19

*Mothersell v. City of Syracuse*,
    289 F.R.D. 389 (N.D.N.Y. 2013) ...........................................................................17

*Muller v. Culbertson*,
    No. CV 09-500, 2010 WL 11523533 (D.N.M. Apr. 27, 2010) ...............................9

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ...............................................................................7

*Ross v. Lockheed Martin Corp.*,
    267 F. Supp. 3d 174 (D.D.C. 2017).................................................................12, 14

*Smith v. City of Jackson*,
    544 U.S. 228 (2005)..............................................................................................20

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ................................................................13

*Stubbs v. McDonald's Corp.*,
   224 F.R.D. 668 (D. Kan. 2004) ..............................................................13

*Thompkins v. Mercy Philadelphia Hosp.*,
   No. 10-2188, 2010 WL 3719099 (E.D. Pa. Sept. 20, 2010) ....................................21

*United Ass'n of Black Landscapers v. City of Milwaukee*,
   916 F.2d 1261 (7th Cir. 1990) ..............................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................ *passim*

*Wards Cove Packing Co. v. Atonio*,
   490 U.S. 642 (1989).......................................................................3, 20

*Welch v. Eli Lilly & Co.*,
   No. 06-0641, 2009 WL 734711 (S.D. Ind. Mar. 18, 2009) ...................................21

*Zuniga v. Bernalillo County*,
   319 F.R.D. 640 (D.N.M. 2016)........................................................15, 16, 17, 19

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..........................................................................6, 7

Fed. R. Civ. P. 23 ...................................................................... *passim*

## I.   __INTRODUCTION__

Plaintiffs Lisa A. Kennicott, Lisa A. Garcia, Sue C. Phelps, and Judi Doolittle[1] ("Plaintiffs") filed their original Class Action Complaint ("Complaint") (Dkt. 1) more than 18 months ago, on February 7, 2017, seeking to bring a class action on behalf of themselves and all female employees employed by Defendant Sandia Corporation ("Sandia") at any time from February 20, 2014 to present.  In the original Complaint, Plaintiffs alleged that Sandia intentionally implemented a biased performance rating system that resulted in lower pay and fewer promotions for women.  (Compl. ¶¶ 24-32 (Dkt. 1).)  After more than a year of discovery, Plaintiffs filed their First Amended Class Action Complaint ("Amended Complaint") (Dkt. 146), abandoning their challenge to the performance rating system.  Despite obviously determining that their core claim lacked merit (*i.e.*, women are not disadvantaged in performance ratings), Plaintiffs continue to pursue compensation and promotion class claims in their Amended Complaint.  Far from pleading new fact-based claims, Plaintiffs' Amended Complaint is rife with generic and conclusory allegations and mere recitations of the legal standard for class certification.  These allegations do not plausibly give rise to a claim that satisfies the requirements of Federal Rule of Civil Procedure 23, and Plaintiffs' class claims should be dismissed for several reasons.

*First*, the Court should dismiss Plaintiffs' class claims because they are inconsistent with Plaintiffs' original claim that a biased performance rating system allegedly led to lower pay and fewer promotions for women.  When Plaintiffs' original and amended complaints are compared, the artificial and implausible nature of their new claims is apparent.  Having abandoned their original claim, Plaintiffs attempt to articulate new alleged policies and practices that they now contend are the real cause of alleged discrimination in pay and promotion.  These new allegations

---

[1]   Judi Doolittle was first joined as a named Plaintiff in the First Amended Class Action Complaint (Dkt. 146).

are inherently inconsistent with Plaintiffs' original claims, demonstrating that rather than plausible class claims, Plaintiffs plead theories of last resort.  Moreover, when Plaintiffs' general allegations are compared against their individual claims, it is clear that Plaintiffs' own claims are not based on the policies and practices they now challenge.  Thus, Plaintiffs plainly fail—despite extensive discovery—to identify any factual contention that plausibly suggests a common policy, practice or scheme to discriminate against women in pay and promotions.

*Second*, the Court should dismiss Plaintiffs' class action claims because it is clear from the face of the Amended Complaint that Plaintiffs will not be able to satisfy the commonality requirement under Rule 23(a).  As the Supreme Court has held, to satisfy Rule 23(a)'s commonality requirement, it is not sufficient to allege just any common question.  "What matters is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  There is no such question here.  Plaintiffs' newly created class allegations demonstrate that they are challenging managerial discretion.  Plaintiffs' own individual allegations further prove this point, as they are each challenging individualized decisions by different managers at different points in time.  So, in fact, Plaintiffs challenge the exact sort of decisions and managerial discretion that the Supreme Court has already held cannot meet the commonality requirement and, therefore, is inappropriate for class treatment.  *See id.* at 355.

*Third*, even if Plaintiffs could overcome their clear failure to allege a plausible common question, based on the nature of the claims asserted, they cannot satisfy the requirements of Rule 23(b)(2) or (b)(3), which they also must do to have their claims certified as a class action.  Because Plaintiffs seek monetary relief, including backpay and other monetary damages, they cannot satisfy

Rule 23(b)(2), and because individual questions regarding each class member's substantive claims and entitlement to monetary relief would predominate over any arguably common questions, they cannot satisfy Rule 23(b)(3).

*Finally*, Plaintiffs' Second Claim for Relief, "Disparate Impact Discrimination," should be dismissed because Plaintiffs fail to meet basic pleading requirements.  Specifically, Plaintiffs are "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any [disparate impact]."  *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 656 (1989), *superseded by statute on other grounds,* Civil Rights Act of 1991, Pub L. No. 102- 166, 105 Stat. 1074, *as recognized in Raytheon Co. v. Hernandez,* 540 U.S. 44, 52 (2003).  They have identified none, instead relying on generic allegations that unidentified policies have had a disparate impact.  This does not suffice.

Accordingly, Plaintiffs' Amended Complaint fails to plausibly allege the existence of a viable class action, and their class claims should be dismissed.

## II.     <u>BACKGROUND</u>

Plaintiffs filed this action on February 7, 2017.  (*See* Compl., Dkt. 1.)  Their complaint devoted the majority of its factual allegations to a discussion of Sandia's performance rating system, which Plaintiffs alleged was both discriminatory in and of itself, and the cause of discriminatory compensation and promotion decisions.  (*See* Compl. ¶¶ 24-32.)  Specifically, Plaintiffs contended that the "stack ranking" system set arbitrary cutoffs among performers with similar performance, because it forced a distribution of performance ranking outcomes regardless of whether there were meaningful differences in performance between employees.  (*Id.* ¶¶ 25-26.) They further alleged that four "personality" or "behavior factors" were "invalid and unreliable and disadvantage women."  (*Id.* ¶ 27.)  Plaintiffs also took aim at the comparative rating of employees by multiple supervisors within the same "Centers," which Plaintiffs alleged could result in

  
employees ending up with a poor rating regardless of their actual performance.  (*Id.* ¶ 28.) According to Plaintiffs, Sandia's performance rating system resulted in female employees being systemically underrated compared to their male peers, because "female employees receive, on average, lower rankings despite equal or better performance."  (*Id.* ¶ 30.)

Plaintiffs' original complaint also predicated their compensation claim on the allegation that Sandia's performance rating system resulted in lower levels of compensation for female employees: "Because women have been systematically disadvantaged by the stack ranking performance evaluation process, their outcomes in terms of raises and bonuses have suffered compared to their male peers."  (*Id.* ¶ 35.)  Likewise, Plaintiffs' original promotion claim was grounded in their allegation that the performance rating system was discriminatory, alleging that "[b]ecause promotions are tied to the performance review process, female employees are adversely impacted in promotions as well."  (*Id.* ¶ 37.)  In short, Plaintiffs alleged that discriminatory "performance review scores [were] used for compensation and promotion decisions" to the detriment of women.  (*Id.* ¶ 29.)

After extensive discovery,[2] including the production of performance rating data for all male and female employees, Plaintiffs filed the Amended Complaint, abandoning all references to a discriminatory performance rating system.  Plaintiffs now concede that female employees are not disadvantaged with respect to performance ratings, and in many places merely replace their original allegations (that the performance rating system caused inaccurate and biased outcomes for

---

[2]     Sandia has produced over 45,000 pages of documents in response to 41 separate requests for the production of documents, including, *inter alia*, all internal complaints of gender discrimination relating to performance, compensation, and promotions as well as their underlying files.  Plaintiffs have also taken the depositions of three separate Rule 30(b)(6) witnesses for Sandia, including that of Tiffany Pegues, Sandia's designated corporate witness for performance evaluations, compensation, and promotions.

women) with new allegations that directly contradict the original ones.  (*Compare, e.g.,* Compl. ¶ 30 (alleging "female employees receive, on average, *lower* [performance] rankings") (emphasis added), *with* Am. Compl. ¶ 30 (alleging "female employees continue to perform, on average, *better than* their male counterparts, but are still underpaid relative to male employees in the same job title, job level and performance rating") (emphasis added).)  Other allegations regarding the performance rating system are simply deleted.  (*See, e.g.*, Compl. ¶ 31 (alleging "performance management systems that include unreliable and invalid criteria create inaccurate and biased outcomes, especially when they operate within a culture of bias towards women, as is true at Sandia"); *id.* ¶ 32 ("Sandia's stack ranking system has had an adverse impact upon female employees."); *id.* 44(c) ("Common questions include: . . . whether Sandia's performance evaluation system discriminates against female employees.").)

In their place, Plaintiffs offer a variety of factually unsupported allegations regarding Sandia's compensation and promotion systems in an attempt to replace their now disproved original class claim.  They assert that:

- *Hiring managers* "pay women less than men who are hired into the same job title and job level with similar or less relevant experience and education."  (Am. Compl. ¶ 32.)

- "*Managers* enter recommendations for merit increases and bonuses into the Compensation Tool, based on the prescribed guidelines and budgets" and "give[] male employees larger merit increases and bonuses than similarly-situated female employees, notwithstanding equal or better performance by the women."  (*Id.* ¶¶ 33-34 (emphasis added).)

- "Sandia assigns women lower salary at hire, placing them in a lower level compared to men with similar prior relevant experience and education."  (*Id.* ¶ 36.)

- "Employees cannot apply for a level promotion.  Instead, *an employee's manager* must nominate him or her for promotion . . . Ultimately, the Divisional Vice President has final say over who is promoted.  Thus, all promotions at Sandia are determined by a small cadre of senior managers applying uniform criteria."  (*Id.* ¶ 38 (emphasis added).)

- "Sandia allows its *hiring managers* to pre-select employees for [] positions based on uniform criteria before the job is ever posted, with men overwhelmingly selected for the most important and prestigious projects." (*Id.* ¶ 39 (emphasis added).)

With the evidence showing that female employees receive equal or better performance ratings as compared to their male counterparts, Plaintiffs simply abandoned their original class claim and replaced it with newly manufactured allegations that, as discussed below, cannot give rise to a viable class action. This wholesale change to the factual predicate underlying Plaintiffs' claims is an impermissible effort by Plaintiffs to maintain class claims (and continue to obtain broad lab-wide discovery) where none exist.[3]

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) mandates dismissal of a complaint where, as here, the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[3]   In another example of Plaintiffs' efforts to plead their way to discovery to which they are not entitled, Plaintiffs added the allegation:

> Sandia's corporate culture of bias is reflected in the formal complaints of gender discrimination brought by class members—including sexual harassment, pregnancy discrimination, hostile work environment, retaliation, and unequal treatment in pay and promotions—during the class period. These individual complaints of gender discrimination are not referenced here for the purpose of pleading individual claims of harassment, pregnancy discrimination, or hostile work environment; rather, these complaints evidence a culture of gender bias at Sandia.

(Am. Compl. ¶ 3.) Quite clearly, this relates to the ongoing discovery dispute between the parties regarding whether Plaintiffs are entitled to internal complaints of sexual harassment, pregnancy discrimination, hostile work environment, and retaliation. Despite adding the conclusory language that was missing from the original complaint, Plaintiffs add no factual allegations or claims that any Plaintiff faced sexual harassment, pregnancy discrimination, or a hostile work environment. The only retaliation claim asserted is on behalf of Plaintiff Kennicott individually. None of the other Plaintiffs (including the newly added Plaintiff) assert a retaliation claim. (*See* Am. Compl. at 23, Third Claim for Relief.)

"Threadbare recitals of the elements of [the] cause of action supported by mere conclusory statements do not suffice." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Allegations that are "'merely consistent with' a defendant's liability, [] 'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Nor can a plaintiff rely on a "the-defendant-unlawfully-harmed-me accusation" or "a formulaic recitation of the elements of a cause of action." *Id.* at 663, 678 (quoting *Twombly*, 550 U.S. at 555). Conclusory and threadbare assertions "are not entitled to the assumption of truth," and the court need only accept as true any remaining factual allegations and determine whether those factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 664. The Tenth Circuit has interpreted the plausibility standard as referring "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).[4]

---

[4]  In the alternative, Rule 23(d) also provides the Court with the means to strike the class allegations now and prevent wasteful discovery. Fed. R. Civ. P. 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."). The Supreme Court has recognized that a court may determine at the *pleading stage* whether a plaintiff can satisfy Rule 23's class certification requirements. *See Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Hightower v. Wells Fargo Bank, N.A.*, No. 17-04119, 2018 WL 1518616 (E.D. Pa. Mar. 28, 2018) (striking class allegations where complaint allegations showed that plaintiffs' claims were not certifiable under Rule 23 and the Supreme Court's *Wal-Mart* decision); *Barabin v. Aramark Corp.*, 210 F.R.D. 152, 162 (E.D. Pa. 2002), *aff'd*, No. 02-8057, 2003 WL 355417 (3d Cir. Jan. 24, 2003) (affirming decision to strike class allegations where it was evident from the complaint that plaintiff could not satisfy Rule 23)  Whether analyzed as a Rule 23(d)(1)(D) motion to strike or a Rule 12(b)(6) motion to dismiss, the same standard applies.

A "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart*, 564 U.S. at 348 (citation omitted); *Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1213 (10th Cir. 2014). "To justify departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart*, 564 U.S. at 348 (internal citations and quotations omitted).   At the pleading stage, Plaintiffs must put forward allegations that plausibly satisfy Rule 23(a) and (b).   Rule 23(a) contains four requirements— numerosity, commonality, typicality and adequacy.   Fed. R. Civ. P. 23(a).   In addition to plausibly pleading each element of Rule 23(a), Plaintiffs also must demonstrate that they satisfy one of Rule 23(b)'s three prongs.[5]   Therefore, Plaintiffs must satisfy either Rule 23(b)(2) or (b)(3).   Rule 23(b)(2) demands proof that the defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."   *Id.* at 23(b)(2).   Rule 23(b)(3) requires Plaintiff to prove that common questions of law and fact "predominate over any questions affecting only individual members of the class" and that a class action is the superior method for adjudicating the controversy.   *Id.* at 23(b)(3).   Here, Plaintiffs have an obligation to allege facts that plausibly support class claims and justify continued burdensome class discovery.   They have failed to meet this burden, instead reverting to conclusory allegations of alleged harm.   This does not suffice.

---

[5]   Rule 23(b)(1) is not applicable here.   *See, e.g.*, *Wal-Mart*, 564 U.S. at 361 at n. 11 (explaining that Rule 23(b)(1) is typically used in limited fund questions or where a judgment might establish incompatible standards of conduct for the defendant).

IV.     <u>ARGUMENT</u>

    A.     **Plaintiffs' New Class Claims Are Not Plausible Because They Are Inconsistent With Plaintiffs' Original Allegations And Plaintiffs' Individual Factual Allegations.**

In the Amended Complaint, Plaintiffs abandon the core basis of their class claims of discrimination in pay and promotions—that the performance rating system was biased and led to lower ratings and, therefore, lower pay and fewer promotions for women. (*See* Compl. ¶¶ 52, 66, 68, 73, 78.) Instead, Plaintiffs acknowledge that women were not disadvantaged in ratings and simply insert generic and conclusory allegations that Sandia allegedly has discriminatory compensation and promotion policies and practices. *See supra* Section II. When assessing the plausibility of a claim, a court may consider contradictions between the amended pleading and the earlier pleading and rely on "judicial experience" and "common sense" to conclude that the pleading fails to state a viable claim. *Muller v. Culbertson*, No. CV 09-500, 2010 WL 11523533, at *6 (D.N.M. Apr. 27, 2010), report and recommendation adopted, No. CV 09-0500, 2010 WL 11523534 (D.N.M. May 28, 2010), *aff'd*, 408 F. App'x 194 (10th Cir. 2011) (citing *Kant v. Columbia University*, No. 08 CIV. 7476, 2010 WL 807442, at *7 (S.D.N.Y. Mar. 9, 2010) (slip copy) ("Courts are free to consider direct contradictions between earlier pleadings and a proposed amended pleading in determining whether to grant leave to amend."). Here, Plaintiffs assert new allegations that are inconsistent with both their original class allegations and their own individual allegations, demonstrating that they are not plausible.

Having abandoned their original claim, Plaintiffs revert to vague and conclusory assertions about alleged discriminatory policies and practices that they now claim, for the first time, are the real cause of alleged discrimination in compensation and promotion. However, when Plaintiffs' original and amended complaints are compared, the artificial and implausible nature of their new

claims is apparent.  For instance, where before, "female employees [were] systemically undervalued compared to their male peers because female employees receive, on average, lower rankings despite equal or better performance," now Plaintiffs claim that, "female employees continue to perform, on average, better than their male counterparts." (*Compare* Compl. ¶ 30 *with* Am. Compl. ¶ 30.)  And before, "[w]hether, and how much, an employee receives [as a merit increase and bonus was] determined by her performance rating and job title." (Compl. ¶ 35.)  Now Plaintiffs contend that, "Sandia assigns merit increases and bonuses within centrally-prescribed ranges based on uniform criteria that fail to credit performances and disadvantage women." (Am. Compl. ¶ 34.)  Similarly, Plaintiffs originally alleged that "promotions are tied to the performance review process, [and] female employees are adversely impacted in promotions." (Compl. ¶ 37.)  Now Plaintiffs make the conclusory assertion that "Sandia also employs common, unvalidated, unreliable, and discriminatory procedures for selecting employees for level promotions." (Am. Compl. ¶ 37.)  With no evidence to support their original performance rating theory as the cause of alleged lower pay and fewer promotions, Plaintiffs have resorted to contradictory and implausible assertions that Sandia discriminates against women through its alleged pay and promotion policies and practices.

In addition, the four named Plaintiffs do not even assert that they were each harmed by the newly alleged policies and practices.  First, Plaintiffs now allege that (1) hiring managers "pay women less than men who are hired into the same job title and job level with similar or less relevant experience and education" (Am. Compl. ¶ 32), and (2) managers award male employees "larger merit increases and bonuses than similarly-situated female employees" (*id.* ¶¶ 33-34).  Yet, only two of the four named Plaintiffs even complain about their pay at hire, merit increases, and bonuses, and none identify any male employee who was paid more at hire or received larger merit

increases and bonuses.  (*See id.* ¶ 52 (Plaintiff Kennicott asserting merely that her salary was "below average"); *id.* ¶¶ 67, 69 (Plaintiff Garcia contending that in 2002—14 years after her hire— she earned less than a male Technologist); *id.* ¶¶ 74, 77 (Plaintiff Phelps alleging that between 2013 and 2016—24 years after her hire—"her 'compa-ratio' demonstrated that she was paid less than her similarly situated colleagues"); *id.* ¶ 81 (Plaintiff Doolittle challenging in conclusory fashion her pay at hire, merit increases, and bonuses).)  And, in fact, where Plaintiffs provide more than generic assertions that they were paid less than men, these allegations demonstrate that Plaintiffs claims are disconnected from their new class allegations.  For example, Plaintiff Phelps challenges the fact that she did not receive an increase in her base salary when she was promoted in 1997.  (*Id.* ¶ 77.)  She also takes issue with the fact that her base salary was not adjusted when she earned a Ph.D. in 2005.  (*Id.*)  Neither of those claims are in any way connected to the newly manufactured class claims.

Second, Plaintiffs' individual promotion allegations are likewise disconnected from the new class allegations.  Plaintiffs now purport to premise class claims on theories that (1) women are placed in lower level jobs at the time of hire (*id.* ¶ 36), (2) a "cadre" of senior managers make promotion decisions (*id.* ¶ 38), and (3) hiring managers "preselect" employees for open positions (*id.* ¶ 38).  Only one of the four named Plaintiffs takes issue with her placement at hire.  (*See id.* ¶ 81.)  None of the named Plaintiffs alleges that she was denied a promotion by some "cadre" of senior managers.  Quite to the contrary, they identify their direct managers or hiring managers as responsible for the promotion decisions they challenge.  (*See id.* ¶ 56 (Plaintiff Kennicott alleging that a hiring manager denied her a position because she raised an EEO complaint); *id.* ¶ 71 (Plaintiff Garcia alleging that a hiring manager discouraged her from applying for a position); *id.* ¶ 76 (Plaintiff Phelps alleging that her managers excluded her from meetings and gave her "low

visibility" work, which precluded her from being promoted); *id.* ¶ 82 (Plaintiff Doolittle alleging that she asked her managers what she needed to do to be promoted and her requests were ignored).) Nor do any of the named Plaintiffs contend that hiring managers uniformly "pre-selected" male candidates for promotions.  In fact, Plaintiffs plead that they were promoted, refuting any notion of a uniform practice of "pre-selection" adverse to women.  (*See id.* ¶ 50 (Plaintiff Kennicott pleading that she was promoted from Senior to Principal); *id.* ¶ 67 (Plaintiff Garcia pleading that she was promoted at least twice); *id.* ¶ 74 (Plaintiff Phelps pleading that she was promoted at least twice); *id.* ¶ 79 (Plaintiff Doolittle pleading that she promoted twice).)  Where not even the named Plaintiffs share the purported new class claims, it is not plausible that Plaintiffs can represent a class of all female employees.

**B.  Plaintiffs' Newly Created Class Claims Are Nothing More Than A Challenge To Managerial Discretion And Cannot Plausibly Satisfy The Class Action Requirements of Rule 23.**

**1.  Plaintiffs' class claims should be dismissed because they have not plausibly pled the existence of Rule 23(a) commonality.**

Although Plaintiffs attempt to articulate "common sounding" claims in the Amended Complaint, that is insufficient under the law.  In *Wal-Mart*, the Supreme Court "changed the landscape that a district court must navigate when considering whether a putative class action satisfies Rule 23(a)'s commonality requirement."  *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174 (D.D.C. 2017).  The Court cautioned that Rule 23(a)'s commonality requirement is "easy to misread" because, at first glance, any competently crafted complaint raises common questions. *Wal-Mart*, 564 U.S. at 349.  However, it is not enough to articulate just *any* common question of law or fact.  *Id.* at 349-51.  Rather, the Court explained that to satisfy Rule 23(a):

> [Plaintiffs'] claims must depend upon *a common contention*—for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is *capable of classwide*

*resolution*—which means that determination of its truth or falsity will *resolve an issue that is central to the validity of each one of the claims in one stroke*.

*Id.* at 350 (emphasis added) (footnote omitted); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("It is not every common question that will suffice.").

The Supreme Court further explained that "the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury," does not suffice. *Wal-Mart*, 564 U.S. at 350. This is because "the crux of the inquiry [in a Title VII case] is the reason for a particular employment decision." *Id.* at 352 (quotation omitted). Therefore, commonality demands not merely the assertion of a common claim (*i.e.*, a violation of Title VII) but also the identification of a question that links the reasons for all of the challenged employment decisions and "produce[s] a *common answer* to the crucial question *why* was I disfavored." *Id.* (emphasis added). As the Supreme Court observed,

> Left to their own devices most managers in any corporation—and surely most managers in a corporation that forbids sex discrimination—would select sex-neutral, performance-based criteria for hiring and promotion that produce no actionable disparity at all. Others may choose to reward various attributes that produce disparate impact—such as scores on general aptitude tests or educational achievements. And still other managers may be guilty of intentional discrimination that produces a sex-based disparity. In such a company, demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's. A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions."

*Wal-Mart*, 564 U.S. at 355-56 (internal citations omitted).[6] In short, "[i]f *Wal-Mart* teaches anything, it is that plaintiffs can maintain . . . an employment discrimination lawsuit as a class

---

[6]  Since *Wal-Mart*, other courts have similarly held that challenges to managerial discretion are not a "common contention" for purposes of Rule 23(a) commonality. *See, e.g., Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 898 (7th Cir. 2012) ("*Wal-Mart* tells us that local discretion cannot support a company-wide class no matter how cleverly lawyers may try to repackage local variability as uniformity."); *Gschwind v. Heiden*, 692 F.3d 844, 848 (7th Cir. 2012) ("[A]n employer's policy of granting its supervisors discretion to make personnel decisions can't be the subject of a class action against the employer by employees complaining of

action only if they can identify a company-wide 'common contention' regarding the reasons that

each member of the class has suffered an injury." *Ross*, 267 F. Supp. 3d at 197 (citing *Wal-Mart*,

564 U.S. at 350).

In this case, Plaintiffs' new allegations boil down to a general assertion that Sandia (like

every employer) has compensation and promotion policies and practices, and that—based upon

differences in manager-by-manager application—they are discriminatory.   In short, Plaintiffs

challenge the business decisions of managers.  For example, Plaintiffs allege that the starting pay

decisions of *hiring managers* are discriminatory.  (Am. Compl. ¶ 32.)  They argue that the merit

increase and bonus recommendations of *direct managers* lead to discriminatory merit increases

and bonuses.  (*Id.* ¶¶ 33-34.)  They contend that "an *employee's manager* must nominate him or

her for a promotion" and assert that ultimately promotion decisions negatively impact women.  (*Id.*

¶ 38 (emphasis added).)  Plaintiffs also allege that *hiring managers* "pre-select" male employees

for open positions.  (*Id.* ¶ 39.)  Plaintiffs identify no facially discriminatory policy or practice that

---

discrimination by the supervisors."); *Jones v. Nat'l Council of Young Men's Christian Ass'ns of the United States of Am.*, 34 F. Supp. 3d 896, 906 (N.D. Ill. 2014) ("The fact that there was some structure to the evaluation, compensation, and promotion process does not change the fact that the structure reinforced the discretionary nature of the decisionmaking in this area."); *Bell v. Lockheed Martin Corp.*, No. CIV. 08-6292 RBK/AMD, 2011 WL 6256978 (D.N.J. Dec. 14, 2011) (rejecting argument that guidelines around starting salary, merit increases, promotional increases and job postings gave rise to commonality because plaintiffs' claims depended on the discretion of individual managers in each of Lockheed's facilities); *see also, Dukes v. Wal-Mart Stores, Inc.*, No. 10-03005, Dkt. 59 (N.D. Cal. Aug. 2, 2013) ("In Plaintiffs' view, managers, who were left without meaningful guidance in applying the impossibly vague criteria, fell back on their own stereotyped views of women in making pay and promotion decisions.  That is a perfectly logical theory, but [this is a challenge to the] practice of delegating discretion to local managers, which the Supreme Court specifically held was not a specific employment practice supplying a common question sufficient to certify a class."); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 675 (D. Kan. 2004) (striking class promotion claim because it "necessarily will involve countless different supervisors, positions, qualifications, and experience" and "[a]llegations of decentralized, individualized decision-making are fatal to Plaintiff's ability to set forth a common claim of promotion discrimination") (citations omitted).

-- 14 --

would connect these decisions so Plaintiffs' new class allegations can be nothing more than a challenge to managerial discretion and decisions.

Plaintiffs' individual factual allegations further bear this out.  Plaintiffs repeatedly assert that their managers engaged in conduct with which they disagreed.  For example:

- Plaintiff Kennicott alleges that a manager denied her a position because of her pending EEO complaint, telling her she needed "to be less intense 'on these women issues.'"  (*Id.* ¶ 56.)

- Plaintiff Kennicott contends that her manager gave her discriminatory performance ratings in 2014 and 2015, which "disqualified her from being eligible for promotion to the Distinguished level."  (*Id.* ¶¶ 58, 60.)

- Plaintiff Garcia argues that she was effectively told by her manager that she could not "compete" with her male colleagues and, as a result, was not promoted.  (*Id.* ¶ 70.)

- Plaintiff Garcia also alleges that a hiring manager told her not to apply for an open position because he had "pre-selected" a male employee for the position.  (*Id.* ¶ 71.)

- Plaintiff Phelps asserts that male colleagues and supervisors excluded her from meetings and "supervisors specifically asked her to perform, in their words, 'low visibility' work," which precluded her from being promoted.  (*Id.* ¶ 76.)

- Plaintiff Phelps also challenges her managers' decisions not to give her pay increases when she was promoted in 1997 and when she earned a Ph.D. in 2005.  (*Id.* ¶ 77.)

- Plaintiff Doolittle asserts that hiring managers have repeatedly denied her positions that were given to men with no greater qualifications.  (*Id.* ¶ 82.)

- Plaintiff Doolittle also alleges that she has asked her supervisors for information regarding what she needs to do to be promoted and they have ignored her requests.  (*Id.*)

As these allegations demonstrate, Plaintiffs all challenge specific conduct by their different individual managers at different points in time, none of which are connected to each other, much less a common question that could support class certification.

*Zuniga v. Bernalillo County,* 319 F.R.D. 640 (D.N.M. 2016) (Browning, J.) is directly on point.  In that case, this Court denied class certification to a putative class of female employees alleging discrimination in hiring, promotion, and compensation, holding that the plaintiffs failed

to satisfy Rule 23(a)'s commonality requirement, among others. *Zuniga*, 319 F.R.D. at 645.  In discussing commonality, the Court observed that "Plaintiffs assert that Bernalillo County's centralized policies and procedures lead to discrimination against female employees and job applicants for compensation and hiring decisions, even though these employment decisions were within individual department managers' discretion."  *Id.* at 688.  This Court observed that, even when "centralized policies and procedures lead[] to [alleged] discrimination against female employees and job applicants for compensation and hiring decisions," the commonality requirement is not met where "Plaintiffs' claims are based on individual managers' discretion[.]" *Id.* at 688.  In other words, where a defendant has "consistent basic policies and practices governing relations [with] its employees" and "the employment practices and policies apply to all class members and their male comparators," it is insufficient for Plaintiffs to merely "assert that these common policies and procedures allow gender discrimination to occur against . . . female employees[.]"  *Id.*  This is because even when "policies are vulnerable to individual managers' gender bias, they fail to establish that the proposed class members are 'victim[s] of one discrimination practice.'"  *Id.*  (quoting *Wal-Mart* 564 U.S. at 348).  This is true of Plaintiffs' new class allegations, and therefore, these allegations are insufficient to state a plausible common claim under Rule 23(a).

### 2. **Plaintiffs cannot satisfy the requirements of Rule 23(b)(2) or (b)(3).**

Even if Plaintiffs could somehow satisfy Rule 23(a), because Plaintiffs seek monetary awards of backpay and other monetary damages, they cannot satisfy Rule 23(b)(2).  Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final *injunctive relief* or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2) (emphasis added).  In *Wal-Mart*, the Supreme Court unanimously held that "claims for *individualized* relief (like the backpay

at issue here) do not satisfy [Rule 23(b)(2)]." 564 U.S. at 360.  Thus, it is settled law that claims

for individualized monetary relief, such as backpay, cannot be certified under Rule 23(b)(2).  S*ee*

*id.* at 361 (Rule 23(b)(2) "does not authorize class certification when each class member would be

entitled to an individualized award of monetary damages"); *Casias v. Dist. Mgmt. Corp., Inc.*, No.

11-00874, 2014 WL 12710236, at *20 (D.N.M. Mar. 31, 2014) ("The Supreme Court of the United

States has held that the language "on grounds that apply generally to the class" means, "at a

minimum, [that] claims for *individualized* relief (like . . . backpay . . .) do not satisfy the Rule.");

*Mothersell v. City of Syracuse*, 289 F.R.D. 389, 401 (N.D.N.Y. 2013) (no Rule 23(b)(2)

certification "[b]ecause the amended complaint seeks compensatory and punitive damages as well

as injunctive and declaratory relief"); *Lee v. ITT Corp.*, 275 F.R.D. 318, 325 (W.D. Wash. 2011)

("individualized awards of monetary damages in the form of backpay and retroactive

compensation for benefits" unavailable under Rule 23(b)(2)).[7]

  Plaintiffs also cannot meet the demanding standard under Rule 23(b)(3) where a court must

find "that the questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3)'s

predominance requirement is more demanding than Rule 23(a)'s commonality requirement.  *See*

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); *Zuniga*, 319 F.R.D. at 692 (noting predominance

"is much stricter than the rule 23(a)(1) commonality requirement").  Accordingly, even if Plaintiffs

could satisfy Rule 23(a) commonality, they fall short of meeting Rule 23(b)(3)'s more demanding

---

[7] Even before *Wal-Mart*, a Rule 23(b)(2) class could not seek compensatory and punitive damages. *See, e.g.*, *Augustin v. Jablonsky*, No. 99CV3126, 2001 WL 770839, at *9 (E.D.N.Y. Mar. 8, 2001) (no Rule 23(b)(2) certification because the "non-incidental nature of the compensatory and punitive damages sought by Plaintiffs demonstrates that their money damages claims predominate over their claims for declaratory and injunctive relief").

requirement because it is evident from the face of the Amended Complaint that individualized questions necessarily will predominate.

To adjudicate this case, the fact finder must inquire—for each class member—into "the reason for [the] particular employment decision" at issue and the bases for any resulting damages. *Wal-Mart*, 564 U. S. at 352 (citing *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984)).   These inquiries are specific to the relevant decision-maker, the type of employment decision challenged, the circumstances surrounding the decision, and how the decision affected the relevant class member.  By way of example, resolution of just the named Plaintiffs' claims will require discovery and analysis into why Plaintiff Kennicott was allegedly denied a job opportunity in June 2014; why Plaintiff Kennicott received performance ratings of 3 in 2014 and 2015; why Plaintiff Garcia was allegedly discouraged from applying for job positions that would have aided her in achieving a Distinguished level promotion; why Plaintiff Garcia was allegedly earning less than a male Technologist with less seniority and experience in 2002; why Plaintiff Phelps allegedly did not receive an increase in base salary when she was promoted in 1997; why Plaintiff Phelps allegedly did not receive a salary increase in recognition of her receipt of a Ph.D.; and why Plaintiff Doolittle was allegedly placed in an entry-level position and paid less than male employees performing similar work despite her experience in her field, among many others.

Further, due process entitles the defendant to a liability determination as to *each* class member.  *See, e.g.*, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360-62 (1977) (noting right of employer to show lawful reasons for treatment of individual employees); *Wal-Mart*, 564 U.S. at 367 ("Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge enlarge or modify any substantive right,' a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims.") (internal citations omitted)).  Thus,

Sandia is allowed to present individualized defenses to each alleged instance of discrimination to show that the manager exercised discretion in a legitimate, non-discriminatory manner.  Such defenses are particular to each manager and class member.  As such, proceeding as a class action would do little more than connect otherwise disconnected claims that do not share common evidence, decision-makers, or even theories.  Such claims are best brought as separate actions.

As was true in *Zuniga*, "[t]he Plaintiffs' gender discrimination claims involve decisions made by numerous different managers and involve different circumstances for each individual employees.  Each individual decision that resulted in alleged discrimination therefore involves individual questions of law or fact and fail to demonstrate the predominance of common questions of law or fact."  319 F.R.D. at 693; *see also Monreal v. Potter*, 367 F.3d 1224, 1237 (10th Cir. 2004) (holding district court did not err in refusing to certify class where "[t]he myriad discriminatory acts that Plaintiffs allege (e.g. failure to promote, failure to train, unequal pay, disrespectful treatment, etc.) each require independent legal analysis, and similarly challenge the predominance requirement of Rule 23(b)(3) if not also the commonality requirement of Rule 23(a)."); *Moore v. Publicis Grp. SA*, No. 11-1279, 2014 WL 11199094, at *8 (S.D.N.Y. May 15, 2014) (denying certification in gender discrimination case because "[n]ot only will there need to be individual investigation into liability issues, but there will also need to be individualized calculation of damages—compensatory, punitive, back pay, and front pay—based on the circumstances of each class member's case" and "these issues would predominate over any common issues").  Under such circumstances, Rule 23(b)(3) predominance cannot be satisfied on the face of the Amended Complaint and Plaintiffs' class claims should be dismissed.

**C.**     **Plaintiffs' Disparate Impact Claim Fails Because Plaintiffs Do Not Identify A Specific Policy Or Practice That They Contend Has Had A Disparate Impact.**

When pleading a disparate impact claim "it is not enough to simply allege that there is a disparate impact on workers or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson,* 544 U.S. 228, 241 (2005).  Instead, Plaintiffs are "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any [disparate impact]." *Wards Cove Packing Co.,* 490 U.S. at  656.

Here, Plaintiffs' disparate impact claim fails because they do not identify a specific employment policy or practice that they contend has had a disparate impact.  Instead, despite already having taken significant discovery, they point to the precise sort of generalized policies that cannot give rise to a plausible claim, arguing:

> Sandia's reliance on illegitimate and unvalidated systems and criteria to set compensation, select individuals for promotions, and determine other terms and conditions of employment, have an adverse impact on female employees in violation of Title VII and are not and cannot be justified by business necessity.

(Am. Compl. ¶ 95, Second Claim for Relief; *see id.* ¶ 25 ("While compensation and promotion decisions at Sandia are supposedly based on performance, in reality managers rely on other mandatory and uniform criteria that divorce pay and promotion from performance, causing a disparate impact on women."); *id.* ¶ 35 ("Sandia's uniform employment practices of salary setting cause a disparate impact.").)

These allegations are insufficient as a matter of law.  *United Ass'n of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1264 (7th Cir. 1990) (dismissing plaintiffs' disparate impact claim because plaintiffs failed to identify any specific promotional practice that allegedly caused the racial disparity); *Byrd v. City of Philadelphia*, No 12-4520, 2013 WL 5728669 (E.D. Pa. Oct. 22, 2013) (dismissing disparate impact claim where plaintiff failed to identify facially neutral policy); *Camacho v. Advocate Health Care*, No. 11-5795, 2011 WL 5903471, at *2 (N.D. Ill. Nov.

22, 2011) (dismissing disparate impact claim based on allegation that "Defendant maintained practices and policies which discriminated against and had a disparate impact against Plaintiff and other female employees"); *Thompkins v. Mercy Philadelphia Hosp.*, No. 10-2188, 2010 WL 3719099 (E.D. Pa. Sept. 20, 2010) (dismissing plaintiff's disparate impact claim where she alleged intentionally discriminatory conduct, not the existence of a facially neutral policy); *Welch v. Eli Lilly & Co.*, No. 06-0641, 2009 WL 734711, at *8 (S.D. Ind. Mar. 18, 2009) ("Lumping all of Lilly's personnel decisions affecting virtually all Lilly employees into a single 'PM Process' does not isolate the specific employment practice that is allegedly responsible for the adverse impacts expressed in the Plaintiffs' Second Amended Complaint.  Plaintiffs' allegations thus fail to give Lilly fair notice of the Plaintiffs' disparate impact claims."); *EEOC v. Honda of Am., Mfg., Inc.*, No. 06-233, 2007 WL 1541364, at *5 (S.D. Ohio May 23, 2007) ("[A] plaintiff must still identify, at the pleading stage, a specific facially neutral policy or practice that resulted in disparate impact."); *Irvine v. Am. Nat. Bank & Trust Co. of Chicago*, Nos. 84-417, 84-3159, 1991 WL 134182, at *6 (N.D. Ill., July 12, 1991) (holding that plaintiff who alleged only that defendant systematically compensated females at a lower rate than men had "wholly failed to identify" a neutral policy to support a disparate impact claim).

Because Plaintiffs' fail to state a viable disparate impact claim, Count II of the Amended Complaint should be dismissed.

## V.   **CONCLUSION**

For the foregoing reasons, Sandia respectfully requests that the Court grant its motion to dismiss Plaintiffs' class claims.

Respectfully submitted,


RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: *Electronically Approved*
    Scott D. Gordon
    Theresa W. Parrish
    Jeffrey L. Lowry
    Paola Jaime Saenz
Post Office Box 1888
Albuquerque, New Mexico  87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
sgordon@rodey.com / tparrish@rodey.com
jlowry@rodey.com / pjaimesaenz@rodey.com

*Attorneys for Defendant Sandia Corporation*


MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Krissy A. Katzenstein*
    Grace E. Speights
    Michael S. Burkhardt
    Krissy A. Katzenstein
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
Telephone:  (202) 739-3000
Facsimile:  (202) 739-3001
grace.speights@morganlewis.com
michael.burkhardt@morganlewis.com
krissy.katzenstein@morganlewis.com

*Attorneys for Defendant Sandia Corporation*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of August 2018, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means.

MORGAN, LEWIS & BOCKIUS LLP

By _/s/ Krissy A. Katzenstein_____
    Krissy A. Katzenstein