# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

LISA A. KENNICOTT, LISA A.
GARCIA, SUE C. PHELPS, and JUDI
DOOLITTLE, on behalf of themselves and
a class of those similarly situated,

                Plaintiffs,

      v.

SANDIA CORPORATION d/b/a SANDIA
NATIONAL LABORATORIES,

              Defendant.

Case No. 1:17-cv-00188 JB/GJF

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS CLAIMS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND .......................................................................................................... 2

III.    LEGAL STANDARD.................................................................................................... 5

IV.     ARGUMENT ................................................................................................................ 6

       A.      Plaintiffs' Claim for Disparate Treatment Discrimination Must Survive
                Sandia's Motion Because Sandia Failed to Raise Any Argument
                Regarding Disparate Treatment. ...................................................................... 6

       B.      Plaintiffs' Refinement of Pleadings Is Expressly Permitted And Does Not
                Render Pleadings "Implausible." ...................................................................... 7

       C.      Plaintiffs Have Identified Specific Practices That Have A Disparate
                Impact. ............................................................................................................. 8

       D.      Sandia's Rule 23 Class Certification Arguments Are Premature. ...................... 12

              1.      Sandia's Rule 23 Arguments Are Premature. .......................................... 13

              2.      At Class Certification, Plaintiffs Can Satisfy the Requirements of
                        Rule 23. ................................................................................................ 14

                    a.      Plaintiffs Can Satisfy Rule 23(a)'s Commonality
                                Requirement. ................................................................................. 15

                    b.      Plaintiffs May Seek Injunctive Relief Under 23(b)(2),
                                While Also Seeking Damages Under 23(b)(3). ........................... 17

                    c.      Sandia Misstates the Law on Adjudication of Affirmative
                                Defenses Under 23(b)(3) for Disparate Impact Claims. .............. 20

V.      CONCLUSION........................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

### CASES

*Adams-Chevalier v. Spurlock*,
  No. 16-2691, 2017 WL 5665149 (D. Colo. Sep. 25, 2017).................................... 13

*Anderson Living Trust v. WPX Energy Prod., LLC*,
  No. 12-40, 2016 WL 5376325 (D.N.M. Aug. 27, 2016) (Browning, J.) .................... 6, 13, 14

*Augustin v. Jablonsky*,
  No. 99-3126, 2001 WL 770839 (E.D.N.Y. Mar. 8, 2001).................................... 20

*Barghout v. Bayer Heathcare Pharm.*,
  No. 11-1576, 2012 WL 1113973 (D.N.J. Mar. 30, 2012) ............................................ 10, 16

*Barret v. H&R Block, Inc.*,
  652 F. Supp. 2d 104 (D. Mass. 2009) ...................................................................... 9

*Barrett v. Forest Labs, Inc.*,
  39 F. Supp. 3d 407 (S.D.N.Y. 2014)....................................................................... 10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................................ 5, 6

*Bell v. Lockheed Martin Corp.*,
  No. 8-6292, 2011 WL 6256978 (D.N.J. Dec. 14, 2011).................................... 17

*Bolden v. Walsh Constr. Co.*,
  688 F.3d 893 (7th Cir. 2012) ................................................................................ 16

*Bryson v. Gonzales*,
  534 F.3d 1282 (10th Cir. 2008) ............................................................................ 6

*Byrd v. City of Phila.*,
  No. 12-4520, 2013 WL 5728669 (E.D. Pa. Oct. 22, 2013) ................................ 11

*Camacho v. Advocate Health Care*,
  No. 11-5795, 2011 WL 5903471 (N.D. Ill. Nov. 22, 2011) ................................ 11

*Casias v. Distribution Management Corp.*,
  No. 11-874, 2014 WL 12710236, at *17 (D.N.M. Mar. 31, 2014)...................... 19

*Chen-Oster v. Goldman Sachs & Co.*,
  325 F.R.D. 55 (S.D.N.Y. 2018) ........................................................... 15, 18, 20, 21

*Chen-Oster v. Goldman, Sachs & Co.*,
  877 F. Supp. 2d 113 (S.D.N.Y. 2012)................................................................... 9, 14, 15

*Davis v. City of Dallas*,
  No. 08-1123, 2010 WL 300348 (N.D. Tex. Jan. 25, 2010) ................................ 10

*Dukes v. Wal-Mart Stores, Inc.* (*Dukes II*),
  964 F. Supp. 2d 1115 (N.D. Cal. 2013) ................................................................ 17

-ii-

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Easterling v. State Dep't of Corr.*,
   278 F.R.D. 41 (D. Conn. 2011) ................................................................. 19, 20

*EEOC v. Honda of Am., Mfg., Inc.*,
   No. 06-233, 2007 WL 1541364 (S.D. Ohio May 23, 2007) ................................. 11

*EEOC v. Scrub, Inc.*,
   No. 09-4228, 2009 WL 3458530 (N.D. Ill. Oct. 26, 2009) ............................ 10, 16

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) ........................................................ 9, 15, 18, 22

*Francis v. Mead Johnson & Co.*,
   No. 10-701, 2010 WL 3733023 (D. Colo. Sep. 16, 2010) ................................... 13

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
   No. 12-2432, 2013 WL 5448078 (D. Colo. Sep. 27, 2013) ................................. 14

*Gschwind v. Heidin*,
   692 F.3d 844 (7th Cir. 2012) ................................................................. 17

*Gulino v. Bd. of Educ.*,
   555 F. App'x 37 (2d Cir. 2014) .............................................................. 18

*Gulino v. Bd. of Educ.*,
   No. 96-8414, 2013 WL 4647190 ............................................................. 22

*H&R Block*,
   652 F. Supp. 2d at 109 ...................................................................... 10

*Harjo v. City of Albuquerque*,
   No. 16-1113, 2018 WL 3621025 (D.N.M. July 28, 2018) (Browning, J.) ............... 7

*Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*,
   849 F.3d 355 (7th Cir. 2017) ................................................................. 7

*Jones v. National Council of YMCA*,
   34 F. Supp. 3d 896 (N.D. Ill. 2014) ....................................................... 17

*Lane v. Page*,
   727 F. Supp. 2d 1214 (D.N.M. 2010) (Browning, J.) ..................................... 6

*Lee v. ITT Corp.*,
   275 F.R.D. 318 (W.D. Wash. 2011) ........................................................ 20

*McReynolds v. Merrill Lynch*,
   672 F.3d 482 (7th Cir. 2012) ............................................................... 15

*Monreal v. Potter*,
   367 F.3d 1224 (10th Cir. 2004) ............................................................ 21

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Moore v. Publicis Grp. SA*,
   No. 11-1279, 2014 WL 11199094 (S.D.N.Y. May 15, 2014) .............................................. 21

*Mothersell v. City of Syracuse*,
   289 F.R.D. 389, 400 (N.D.N.Y. 2013).................................................................................. 20

*Moussouris v. Microsoft Corp.*,
   No. 15-1483, 2016 WL 6037978 (W.D. Wash. Oct. 14, 2016).............................................. 9

*Muller v. Culbertson*,
   No. 09-500, 2010 WL 11523533 (D.N.M. Apr. 27, 2010), *adopted*, 2010 WL
   11523534 (D.N.M. May 28, 2010) (Browning, J.), *aff'd*, 408 F. App'x 194
   (10th Cir. 2011)....................................................................................................................... 8

*Robinson v. Metro-North Comm. R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001).................................................................................................. 21

*Ross v. Lockheed Martin Corp.*,
   267 F. Supp. 3d 174 (D.D.C. 2017) ...................................................................................... 17

*Scott v. Family Dollar Stores, Inc.*,
   No. 08-540, 2016 WL 9665158 (W.D.N.C. June 24, 2016)........................................... 19, 22

*Stubbs v. McDonald's Corp.*,
   224 F.R.D. 668 (D. Kan. 2004).............................................................................................. 17

*Sutton v. Utah State Sch. for the Deaf & Blind*,
   173 F.3d 1226 (10th Cir. 1999) .............................................................................................. 5

*Tabor v. Hilti, Inc.*,
   703 F.3d 1206 (10th Cir. 2013) ............................................................................................. 15

*Thompkins v. Mercy Phila. Hosp.*,
   No. 10-2188, 2010 WL 3719099 (E.D. Pa. Sept. 20, 2010) .................................................. 12

*United States, Vulcan Soc'y v. City of N.Y.*,
   276 F.R.D. 22 (E.D.N.Y. 2011) ............................................................................................. 19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)......................................................................................................... passim

*Welch v. Eli Lilly & Co.*,
   No. 06 -0641, 2009 WL 734711 (S.D. Ind. Mar. 18, 2009) ................................................. 12

*Wolfson v. Nutt*,
   No. 08-3190, 2009 WL 2210096 (D. Kan. July 24, 2009) ..................................................... 7

*Wornicki v. Brockerpriceopinion.com, Inc.*,
   No. 13-3258, 2015 WL 1403814 (D. Colo. Mar. 23, 2015) ................................................. 13

*Zuniga v. Bernalillo*,
   319 F.R.D. 640 (D.N.M. 2016)............................................................................................... 16

## I.    <u>INTRODUCTION</u>

Eighteen months ago, Plaintiffs filed a Complaint alleging two forms of gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII")—disparate treatment (*i.e.*, intentional) discrimination, and disparate impact discrimination. *See* Compl. ¶¶ 76-90 (First and Second Claims for Relief), ECF No. 1.  Sandia moved to dismiss Plaintiffs' state law causes of action but did not move to dismiss Plaintiffs' Title VII claims.  *See* Mot. to Dismiss State Law Claims, ECF No. 14.  Now, a year and a half after Plaintiffs filed this lawsuit, Sandia moves to dismiss Plaintiffs' claim for disparate impact discrimination, as alleged in the First Amended Complaint ("FAC").  Plaintiffs' class claim for disparate treatment discrimination remains unchallenged.

While Plaintiffs have updated their allegations to reflect information gleaned in discovery as the Federal Rules of Civil Procedure ("Rules") contemplate, the core of Plaintiffs' disparate impact challenge to Sandia's compensation and promotion policies remains the same.  Although Sandia argues that this claim fails Rule 12(b)(6)'s plausibility standard, the claim that uniform company policies have an adverse impact on women is plausible now, just as it was eighteen months ago.  Sandia also raises multiple arguments rooted in the requirements of Rule 23, but these arguments are premature at the motion to dismiss stage, as discovery is ongoing, and Plaintiffs have not yet moved to certify a class.  Unsurprisingly, the bulk of Sandia's authorities address a class certification motion on a full discovery record rather than a motion to dismiss. Sandia has not provided a valid reason to short circuit this case and prevent Plaintiffs from litigating to class certification.  At the class certification stage, Plaintiffs will bear the burden of satisfying the requirements of Rule 23.  But at this time, Sandia's motion to dismiss Plaintiffs' class claim for disparate impact discrimination should be denied.

II.     <u>BACKGROUND</u>

Consistent with the Court's Scheduling Order, ECF No. 138, to which Sandia stipulated, Plaintiffs amended their Complaint on July 5, 2018.  FAC, ECF No. 146.  The FAC reflects information Plaintiffs learned through discovery: Sandia's uniform compensation and promotion policies cause a disparate impact on women, *notwithstanding* equal or better performance review scores of female employees.  Specifically, the FAC alleges that

> Sandia discriminates against female employees in compensation and promotions. While compensation and promotion decisions at Sandia are supposedly based on performance, in reality managers rely on other mandatory and uniform criteria that divorce pay and promotion from performance, causing a disparate impact on women.

FAC ¶ 25, ECF No. 146; *see also id.*, ¶¶ 34, 40.  With respect to compensation, Plaintiffs identify two uniform compensation policies that they allege cause a disparate impact on women: 1) salary-setting at hire based on uniform criteria that pay female employees less than comparable men; and 2) assigning merit increases and bonuses through a computerized "Compensation Tool" based on uniform criteria that ignore performance.  FAC ¶¶ 32, 34.  Plaintiffs also identify two uniform promotion policies that they allege cause a disparate impact on women: 1) level-setting at hire based on uniform criteria that result in lower-rank placements for women; and 2) a closed, "tap-on-the-shoulder" promotion process, whereby employees cannot apply for a promotion.  FAC ¶¶ 36, 38.  These allegations are set forth with specificity in the FAC as follows:

| *Compensation* | *Promotions* |
|---|---|
| "When an employee is hired at Sandia, his or her salary is set by the Compensation Department and the Hiring Manager pursuant to centrally determined guidelines and ranges. Initial salary is supposed to reflect the employee's relevant work experience, education, and what current Sandia employees performing similar work are paid. However, at time of hire, Sandia pays | "At hire, employees at Sandia are placed into a level: Member, Senior, Principal, Distinguished, or Special Appointment. An employee's level at hire is supposed to be determined by the job that the employee is hired into. However, in practice, Sandia assigns women lower salary at hire, placing them in a lower level compared to men with similar prior relevant work experience and |

- 2 -

| *Compensation* | *Promotions* |
|---|---|
| women less than men who are hired into the same job title and job level with similar or less relevant experience and education. Gender inequity in compensation compounds over time because every annual compensation decision, such as the amount of salary increase and bonus, is affected by an employee's current salary."  FAC ¶ 32.<br><br>"After each performance review period, employees are eligible for a merit increase to their base salary and a bonus. The Compensation Department distributes annual guidelines, procedures, and budgets for merit increases and bonuses to the Vice President of each Division. The Vice Presidents distribute this information to their respective Center leaders. Managers enter recommendations for merit increases and bonuses into the Compensation Tool, based on the prescribed guidelines and budgets. Those recommendations are then sent to the Compensation Department for auditing, and finally to the Vice President of each Division for approval."  FAC ¶ 33.<br><br>"Sandia assigns merit increases and bonuses within centrally-prescribed ranges based on uniform criteria that fail to credit performance and disadvantage women. Sandia thus gives male employees larger merit increases and bonuses than similarly-situated female employees, notwithstanding equal or better performance by the women." FAC ¶ 34. | education."  FAC ¶ 36.<br><br>"Employees cannot apply for a level promotion. Instead, an employee's manager must nominate him or her for a promotion. The promotion must then be affirmatively approved by the employee's Group Senior Manager, Center Director, and Division Vice President. Each individual who must approve the promotion, from the direct manager through the Vice President, applies the same list of criteria, which Sandia publishes each year in a manager promotion guide. Ultimately, the Divisional Vice President has final say over who is promoted. Thus, all promotions at Sandia are determined by a small cadre of senior managers applying uniform criteria."  FAC ¶ 38 |

Because both the compensation and promotion processes were challenged in the original Complaint, *see* Compl. ¶¶ 33-40, ECF No. 1., Plaintiffs have not "abandoned their original claim."  Def.'s Mot. to Dismiss Pls.' Class Claims ("Mot.") at 1, ECF No. 155.  Instead, Plaintiffs have sharpened their claims based on their review of the statistical evidence to isolate

- 3 -

the practices identified above as the cause of Sandia's gender gap in pay and promotions. Because discovery did not substantiate the allegation that Sandia's performance review process itself causes a disparate impact on women, Plaintiffs have decided not to pursue this theory.

The named Plaintiffs' individual allegations reflect that they experienced the discriminatory effects of these specific practices as outlined below with citations to specific paragraphs in the FAC:

*Lisa Kennicott:*

- "In a majority of years during the class period, Ms. Kennicott's salary was consistently below average, despite positive performance evaluations. After her promotion to the Principal level in 2005, it took Ms. Kennicott nearly a decade to rise to even the average salary within her salary band." FAC ¶ 52.

- "Ms. Kennicott was subject to Sandia's company promotion process and was denied a promotion to the Distinguished level. Unlike her male colleagues who advanced from the title of Principal level to the Distinguished level at a steady rate, Ms. Kennicott held the same job title for more than 12 years." *Id*. ¶ 53.

- "In the fall of 2013, Ms. Kennicott expressed interest in a technical opportunity. Ms. Kennicott's experience and skills matched the needs of the advertised position, but she was advised that a less qualified male colleague had been pre-selected prior to publication of the job posting." *Id*. ¶ 54.

*Lisa Garcia:*

- "Ms. Garcia was paid less than men with significantly less seniority and experience in her Technologist roles. For example, in 2002, Ms. Garcia learned that she was earning less than a male Technologist with less seniority and experience." *Id*. ¶ 69.

- "On multiple occasions, she wanted to apply for a position that she was qualified for and interested in, but the job posting was narrowly tailored for a pre-selected male colleague. Indeed, on one such occasion, Ms. Garcia called the hiring manager to express her interest, but the manager confirmed that a male had been pre-selected for the position and told her not to apply." *Id*. ¶ 71.

*Sue Phelps:*

- "Ms. Phelps's less qualified and less experienced male colleagues rose through the ranks much faster than she did. They were offered greater leadership opportunities, and in approximately 2009, one of the peers Ms. Phelps mentored was promoted over her. In the years that followed, male colleagues and supervisors excluded Ms. Phelps from meetings, and supervisors specifically asked her to perform, in their words, "low

- 4 -

visibility" work, and Ms. Phelps was never promoted to the Distinguished level." *Id.*
¶ 76.

- "Ms. Phelps observed from 2013 to 2016 that her "compa ratio" demonstrated that she was paid less than her similarly situated male colleagues. . . . Because annual salary increases at Sandia are a percentage of base salary, Ms. Phelps was thus at a persistent disadvantage due to her low starting salary in her first two positions at Sandia.  Additionally, because employees must be at the higher end of their job title's salary band before promotion, Ms. Phelps was also at a persistent disadvantage in terms of her opportunity for promotion to the Distinguished level." *Id.* ¶ 77.

*Judi Doolittle:*

- "Regardless [of her qualifications], upon hire, Sandia placed her in an entry-level position, and paid her less than men performing the same level and quality of work. She has lagged behind her male peers in terms of pay and promotions ever since.  In addition, she has received lower annual merit salary increases and bonuses than her male peers, despite equal or better performance." *Id.* ¶ 81.

- "Ms. Doolittle has repeatedly applied for and been denied positions that were given to men with no greater qualifications who were pre-selected for the openings.  In fact, Ms. Doolittle has been told not to even bother applying for positions because a male colleague had already been selected.  In addition, Ms. Doolittle has repeatedly asked her supervisors for information regarding what she needs to do to be promoted to Distinguished, and her requests have been ignored." *Id.* ¶ 82.

Notably, Sandia's motion does not challenge Plaintiffs' class claim for intentional

discrimination.  *See* Compl. ¶¶ 3, 76-83; FAC ¶¶ 3, 85-92.

## III.   LEGAL STANDARD

Under Rule 8(a), plaintiffs need only provide "a short and plain statement of the claim

showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the

. . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555

(2007) (internal quotation marks omitted).  "The court's function on a Rule 12(b)(6) motion is

not to weigh potential evidence that the parties might present at trial, but to assess whether the

plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."

*Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting

*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

- 5 -

"A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations." *Lane v. Page*, 727 F. Supp. 2d 1214, 1226 (D.N.M. 2010) (Browning, J.). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citation omitted). This means that the plaintiff must allege enough factual matter, taken as true, to make her "claim to relief . . . plausible on its face." *Id*. at 570. "This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). Plaintiffs' FAC readily satisfies these standards.[1]

## IV.   ARGUMENT

### A.   Plaintiffs' Claim for Disparate Treatment Discrimination Must Survive Sandia's Motion Because Sandia Failed to Raise Any Argument Regarding Disparate Treatment.

At the outset, Plaintiffs note that, even if the Court were persuaded to dismiss Plaintiffs' claim for disparate impact discrimination, Plaintiffs' claim for disparate treatment discrimination would survive. While Sandia styled its motion as one "To Dismiss Plaintiffs' Class Claims," Sandia's motion is entirely directed at Plaintiffs' class claim for disparate impact discrimination. *See* Mot. at 9-20. Sandia ignores that Plaintiffs also bring a class claim for discrimination under a disparate treatment theory. *See id.*; FAC ¶¶ 85-92 (First Claim for Relief). This claim and the allegations supporting it have remained unchanged since the filing of the original Complaint, and

---

[1] Sandia moves in the alternative to strike Plaintiffs' class allegations under Rule 23(d). Mot. at 7, n.4. As explained in Part IV.D.1, below, motions to strike class allegations at the pleading stage are generally disfavored as premature. *See, e.g.*, *Anderson Living Trust v. WPX Energy Prod., LLC*, No. 12-40, 2016 WL 5376325, at *11 (D.N.M. Aug. 27, 2016) (Browning, J.) ("Ultimately, the Plaintiffs will bear the burden of demonstrating that questions of law or fact common to class members predominate over any questions affecting individual members. The Court can better address these questions after the Plaintiffs flesh out the details of the claim and their class, and introduce the proposed evidence . . . .").

Sandia's motion cannot have any impact.  *Compare* FAC ¶¶ 3, 85-92, *with* Compl., ECF No. 1, ¶¶ 3, 76-83.

### B.      Plaintiffs' Refinement of Pleadings Is Expressly Permitted And Does Not Render Pleadings "Implausible."

Under the permissive rules of notice pleading, Plaintiffs are permitted to amend their pleadings to conform to the evidence obtained in discovery, and that is exactly what they have done here.  Plaintiffs have amended their Complaint to reflect that, through discovery, Plaintiffs became aware that Sandia's uniform compensation and promotion policies cause a disparate impact on women, *notwithstanding* women's equal or better performance.  *See* FAC ¶¶ 25, 35, 40.  But more importantly, the Federal Rules of Civil Procedure explicitly allow inconsistency in pleadings, and courts take a permissive view of amendments to pleadings to allow cases to evolve.  *See Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 366 (7th Cir. 2017) ("Parties' legal theories frequently evolve both before and during litigation.  The Federal Rules of Civil Procedure—which allow alternative and even inconsistent pleadings and take a permissive view of amendments—are drafted flexibly so parties may tailor their theories as they conduct discovery and learn more about the case."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").[2]

As new evidence is uncovered during discovery, a party's theories often mature.  As a result, Sandia does not identify a single case where a court has granted a motion to dismiss for failure to meet the Rule 12(b)(6) plausibility standard due to inconsistencies in pleadings.  Mot. at 9-12.  *Muller v. Culbertson*, which is the one case upon which Sandia relies, is entirely

---

[2] *See also Harjo v. City of Albuquerque*, No. 16-1113, 2018 WL 3621025, at *36 (D.N.M. July 28, 2018) (Browning, J.) ("Under Rule 8(d)(2), a party is permitted to set forth inconsistent statements either alternatively or hypothetically within a single count or defense.") (*quoting Wright and Miller*, § 1283, at 724); *Wolfson v. Nutt*, No. 08-3190, 2009 WL 2210096, at *3 (D. Kan. July 24, 2009) ("A party may discover information that would lead him to plead additional and inconsistent claims in the alternative. Fed. R. Civ. P. 8(d)(3) allows a party to state inconsistent claims.").

unavailing.  No. 09-500, 2010 WL 11523533, at *6 (D.N.M. Apr. 27, 2010), *adopted*, 2010 WL 11523534 (D.N.M. May 28, 2010) (Browning, J.), *aff'd*, 408 F. App'x 194 (10th Cir. 2011).  In *Muller*, the magistrate judge recommended that the plaintiff's motion for leave to amend the complaint be denied as futile and in bad faith where the plaintiff, in order to respond to the defendant's motion to dismiss, sought to add facts already known at the time of the filing of the original complaint, and the new facts "directly contradict[ed]" previous filings—and even contradicted assertions in the proposed amended complaint.  *Muller,* 2010 WL 11523533, at *6.  The court found that the "Plaintiff [was] trying to articulate a legal conclusion . . . couched as factual allegations in a bald, and apparently bad faith, effort to state a Title VII claim where he has none."  *Id*. (citing *Kant v. Columbia Univ.*, No. 08-7576, 2010 WL 807442, at *7 (S.D.N.Y. March 9, 2010)).  Here, Plaintiffs' factual allegations in the FAC are consistent with the facts in the original Complaint, and Plaintiffs were unaware at the time of the filing of the original Complaint that Sandia's uniform compensation and promotion policies cause a disparate impact on women, *notwithstanding* equal or better performance by women.  Rather, as explained above, this fact was obtained through discovery.  Sandia's argument that Plaintiffs' amended claim of disparate impact discrimination is implausible because it is inconsistent with Plaintiffs' original allegations is unpersuasive.

      **C.**      <u>**Plaintiffs Have Identified Specific Practices That Have A Disparate Impact.**</u>

As set forth above, Plaintiffs identified two uniform compensation practices that they allege cause a disparate impact on women: 1) salary-setting at hire based on uniform criteria that pay female employees less than comparable men; and 2) assigning merit increases and bonuses through a computerized "Compensation Tool" based on uniform criteria that ignore employee performance.  FAC ¶¶ 32, 34.  Plaintiffs also identified two uniform promotion policies that they allege cause a disparate impact on women: 1) level-setting at hire based on uniform criteria that result in lower-rank placements for women; and 2) a closed, "tap-on-the-shoulder" promotion

process, whereby employees cannot apply for a promotion.  FAC ¶¶ 36, 38.  Despite Plaintiffs'

clear pleading, Sandia argues that Plaintiffs' claim for disparate impact discrimination fails

because "they do not identify a specific employment policy or practice that they contend has a

disparate impact" but instead point only to "generalized policies."  Mot. at 20.

Nevertheless, the types of policies described in the FAC are routinely the subject of Title

VII class action disparate impact challenges, even after *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

338 (2011).  *See, e.g.*, *Moussouris v. Microsoft Corp.*, No. 15-1483, 2016 WL 6037978, at \*4, 5

(W.D. Wash. Oct. 14, 2016) (rejecting argument that plaintiffs merely "allege[d] a 'laundry list

criticizing myriad aspects of' Microsoft's performance, compensation, and promotion evaluation

practices" and holding that "Plaintiffs sufficiently identify a challenged employment practice"

and "declin[ing] to dismiss Plaintiffs' disparate impact claims on that basis"); *Ellis v. Costco

Wholesale Corp.*, 285 F.R.D. 492, 545-46 (N.D. Cal. 2012) (certifying class of female employees

challenging a promotion system that lacked written criteria for promotion or guidelines for

managers on selection); *Chen-Oster v. Goldman, Sachs & Co*., 877 F. Supp. 2d 113, 118

(S.D.N.Y. 2012) (denying motion to strike class allegations challenging performance, pay, and

promotion systems because the plaintiffs identified "specific employment practices . . . that tie

all of Plaintiffs' claims together") (citing *Dukes*, 564 U.S. at 357) (internal quotations and

alterations omitted).  As demonstrated in these cases, the pleading standard Sandia urges this

Court to apply is simply not the law.

Additionally, many courts have rejected the argument Sandia advances here.  *Barrett v.

H&R Block, Inc.* is illustrative.  652 F. Supp. 2d 104 (D. Mass. 2009).  In *H&R Block*, the

plaintiffs brought a disparate impact challenge to the defendants' credit pricing system, which

determined financing rates based on a combination of objective criteria of creditworthiness and

unrelated, subjective components, causing individuals with identical or similar credit scores to

pay different amounts for loans.  *Id*. at 107-108.  Citing to *Wards Cove*, 490 U.S. 642 (1989), as

- 9 -

Sandia does in its Motion, the defendants argued that the plaintiffs' general allegations fell short of the required "particularized identification of specific practices that allegedly result in a disparate impact." *H&R Block*, 652 F. Supp. 2d at 109.  The court rejected this argument, finding both that the plaintiffs had adequately identified the practice at issue and that identification of the credit pricing system satisfied the standards set forth in *Wards Cove*.  *Id.* (citing *Twombly*, 550 U.S. at 555).  Further examples are legion.  *See, e.g., Barrett v. Forest Labs, Inc.*, 39 F. Supp. 3d 407, 446 (S.D.N.Y. 2014) (finding the allegation that the defendant's policy of limiting job-sharing to the lowest position "articulated a facially-neutral employment policy—the first requirement of a disparate impact claim"); *Barghout v. Bayer Healthcare Pharm.*, No. 11-1576, 2012 WL 1113973, at *1, 10 (D.N.J. Mar. 30, 2012) (rejecting *Iqbal/Twombly* challenge to disparate impact claim and citing to allegations in the complaint that the defendants had failed to establish or follow procedures to eliminate bias in promotion and compensation decisions, but relied instead upon subjective criteria that allowed overwhelmingly male management to discriminate against women in pay, promotions, and performance review); *Davis v. City of Dallas*, No. 08-1123, 2010 WL 300348, *9 (N.D. Tex. Jan. 25, 2010) ("[T]he Court finds Davis has adequately ple[]d a claim for disparate impact.  Davis' pleadings provide the City adequate notice of all the elements of a prima facie case of disparate impact discrimination.  Specifically, in her pleadings, Davis identifies the City's performance review system and its required bell curve application as a facially-neutral policy causing a disparate impact on African-Americans."); *EEOC v. Scrub, Inc.*, No. 09-4228, 2009 WL 3458530, at *1, 2 (N.D. Ill. Oct. 26, 2009) (noting that "*Iqbal* and *Twombly* did not repudiate general notice-pleading," and holding that pleading requirements were satisfied where "[t]he EEOC identifies Scrub's practice of subjective luring as a facially-neutral practice that has a disparate impact of African Americans").

- 10 -

Plaintiffs have satisfied their pleading requirements, especially in light of the incomplete discovery record.  Despite the fact that Sandia has attacked the pleadings, Sandia inaptly relies on several cases decided at the merits phase—that is, upon a full factual record.  *See, e.g.*, *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (addressing recovery for disparate impact claims under the Age Discrimination in Employment Act ("ADEA") at the summary judgment stage);[3] *United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261 (7th Cir. 1990) (affirming summary judgment); *Irvine v. Am. Nat'l Bank & Trust Co.*, No. 84 Civ. 417, 1991 WL 134182 (N.D. Ill. July 12, 1991) (denying summary judgment).  Although summary judgment cases can be informative at the pleading stage in describing legal standards, they cannot answer the question of whether a plaintiff satisfied a particular pleading requirement without the benefit of discovery.

The additional cases Sandia cites are inapplicable for two reasons.  *First*, unlike here, in many cases, the plaintiffs failed to identify *any* policy alleged to cause the disparate impact.  *See, e.g.*, *Camacho v. Advocate Health Care*, No. 11-5795, 2011 WL 5903471, at *2 (N.D. Ill. Nov. 22, 2011) (granting motion to dismiss where the complaint failed to identify a specific employment practice, allege causation, and give the defendants fair notice of the claim)); *EEOC v. Honda of Am., Mfg., Inc.*, No. 06-233, 2007 WL 1541364, at *5 (S.D. Ohio May 23, 2007) (dismissing disparate impact claims where the plaintiff "failed to identify any specific facially neutral policy or practice that resulted in disparate impact").  *Second*, in other cases, the plaintiffs had not brought disparate impact claims at all, but instead brought disparate *treatment* claims labeled as disparate impact claims.  *See, e.g.*, *Byrd v. City of Phila.*, No. 12-4520, 2013 WL 5728669, at *3 (E.D. Pa. Oct. 22, 2013) ("[I]t is unclear from the Complaint whether [plaintiffs]

---

[3] Furthermore, *Smith* is unhelpful to resolving this matter for the additional reason that "the scope of disparate impact liability under ADEA is narrower than under Title VII," and thus the evidentiary burden the plaintiffs faced in *Smith* was greater than Plaintiffs face here.  544 U.S. at 240.

are alleging disparate impact or disparate treatment. . . . [I]n their opposition to Defendants'
Motion to Dismiss with regard to Count II, Plaintiffs repeatedly argue that Defendants have
established an *intentional* practice and policy of discrimination. Accordingly, it appears that
Plaintiffs are asserting disparate treatment claims in both Count I and Count II."); *Thompkins v.
Mercy Phila. Hosp.*, No. 10-2188, 2010 WL 3719099, at *4 (E.D. Pa. Sept. 20, 2010) ("[T]he
court notes that although Thompkins cites to the disparate impact provision of Title VII in Count
II, her complaint is filled with disparate treatment allegations. Thompkins also uses the terms
disparate impact and disparate treatment interchangeably in response to the defendants' motion
to dismiss."); *Welch v. Eli Lilly & Co.*, No. 06-0641, 2009 WL 734711, at *9 (S.D. Ind. Mar. 18,
2009) ("[T]he allegations of Plaintiffs' Second Amended Complaint raise disparate treatment
claims, not disparate impact claims.").

Plaintiffs' identification and description of the two uniform compensation and two
uniform promotion practices are sufficient to state a claim for disparate impact discrimination.

### D. Sandia's Rule 23 Class Certification Arguments Are Premature.

Plaintiffs have not yet sought class certification. Therefore, it is premature to consider
Sandia's arguments challenging Plaintiffs' claim for disparate impact discrimination as
unsusceptible to class treatment. Sandia improperly attempts to import the class certification
standards of Rule 23 into the motion to dismiss stage of this litigation. Discovery is ongoing,
and based on the pleadings alone, the Court does not have the benefit of fully-briefed legal
theories and a crystallized class definition presented in a motion for class certification along with
supporting evidence, including expert reports, deposition testimony, and company documents.
Furthermore, Sandia's attacks on Plaintiffs' ability to satisfy the commonality requirement of
Rule 23(a)(2) and specific requirements of subsections (b)(2) and (b)(3), while also premature,
misapprehend and misconstrue these legal requirements. Therefore, Sandia's attempt to dismiss
Plaintiffs' class claim for disparate impact discrimination on Rule 23 grounds fails.

- 12 -

### 1.    Sandia's Rule 23 Arguments Are Premature.

Sandia's motion to dismiss Plaintiffs' class claim for disparate impact discrimination is, in essence, an opposition to a motion for class certification filed when there is no motion for class certification pending.  Pre-class certification discovery is ongoing and, indeed, Sandia has delayed in producing documents essential to a complete understanding of the application of Sandia's employment policies.  *See, e.g.*, Joint Status Report No. 13, ECF No. 154, at 2-3 (documenting Sandia's withholding of 2018 policy documents, failure to respond to questions regarding its HR database, and delay in producing electronically-stored information (*i.e.*, internal email correspondence and other computer files)).  Once the class certification record is complete, Plaintiffs will move for class certification based on that evidence.  Until then, however, Sandia's arguments are premature.  *See, e.g., Francis v. Mead Johnson & Co.*, No. 10-701, 2010 WL 3733023, at *2 (D. Colo. Sep. 16, 2010) ("To pronounce finally . . . the non-existence of a class or set of subclasses, when their existence may depend on information wholly within defendant's ken, seems precipitate and contrary to the pragmatic spirit of Rule 23." (quoting *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972))).

"[C]ourts in this district have held motions to strike class allegations to a high standard of proof."  *Wornicki v. Brockerpriceopinion.com, Inc.*, No. 13-3258, 2015 WL 1403814, at *4 (D. Colo. Mar. 23, 2015).  *See also Adams-Chevalier v. Spurlock*, No. 16-2691, 2017 WL 5665149, at *7 (D. Colo. Sep. 25, 2017) (denying motion "to preemptively dismiss the class allegations," despite concerns about "the current class definition" and "rather conclusory class assertions," because "[t]he issues as to class certification have not been properly developed or briefed").  Indeed, this Court has held that dismissal of class claims prior to a motion for class certification is reserved for situations where it is clear that "it will be *impossible* to certify a class regardless of the facts that the Plaintiffs may prove."  *Anderson Living Tr.*, No. 12-40, 2016 WL 5376325, at *8 (D.N.M. Aug. 27, 2016) (Browning, J.) (emphasis added).

- 13 -

In *Anderson Living Trust*, this Court recognized that preemptive motions to dismiss class allegations are particularly disfavored where the plaintiffs "need to introduce expert testimony on [their] claim," *id.*, and that is exactly the situation here. Plaintiffs anticipate that, at class certification, as is customary in Title VII class actions,[4] Plaintiffs will rely on expert opinion from, at minimum, a labor economist to demonstrate the link between Sandia's compensation and promotion policies and adverse impacts on women. As detailed above in Part II, the FAC identifies specific, uniform aspects of Sandia's compensation and promotion policies that Plaintiffs allege have a disparate impact on women. Should Plaintiffs' evidence marshaled in discovery and presented at class certification show that that these allegations may be proven—or disproven—on a class basis, then class certification will be appropriate. These are questions, however, that cannot be answered at this time, and therefore Sandia's premature motion to dismiss Plaintiffs' disparate impact class allegations should be denied.

2.   **At Class Certification, Plaintiffs Can Satisfy the Requirements of Rule 23.**

Sandia specifically attacks Plaintiffs' ability to satisfy the requirements of Rule 23 subsections (a), (b)(2), and (b)(3), while failing to address (c)(4), which provides another avenue to certification. As discussed above, these attacks are premature. Further, at the motion to dismiss stage, "the Tenth Circuit would require only that the named Plaintiffs 'prove that the allegations of their complaint,' accepted as true, 'satisfy Rule 23(a)'s requirements.'" *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-2432, 2013 WL 5448078, at *3 (D. Colo. Sep. 27, 2013) (quoting *DG ex. rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010)). Therefore, Sandia's arguments regarding Plaintiffs' ability to satisfy the other requirements of Rule 23 are not well-taken. Regardless, Sandia has misconstrued the demands of Rule 23

---

[4] *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 75 (S.D.N.Y. 2018) (holding that the plaintiffs had offered "significant proof" of gender discrimination in the expert report of their economist, which "analyzed the impact of gender on evaluation, compensation and promotion . . . and found statistically significant gender disparities").

- 14 -

subsections (a), (b)(2), and (b)(3).  As explained below, Sandia has not shown that Plaintiffs'

disparate impact class claim fails any one of these three requirements.

  **a.**  <u>**Plaintiffs Can Satisfy Rule 23(a)'s Commonality Requirement.**</u>

   Sandia argues that Plaintiffs' claim for disparate impact discrimination must be dismissed

because the challenged practices "are nothing more than a challenge to managerial discretion,"

Mot. at 15, and therefore cannot plausibly support commonality under Rule 23(a)(2).  Yet the

Supreme Court in *Dukes* explicitly foreclosed Sandia's argument.  "In appropriate cases, giving

discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-

impact theory." *Dukes*, 564 U.S. at 355 (citations omitted). *See also Tabor v. Hilti, Inc.*, 703

F.3d 1206, 1222 (10th Cir. 2013) (rejecting argument that employment practice involving

discretion cannot form the basis for a disparate impact claim, and holding the plaintiff had

"identified a specific employment practice that meets the requirements for a disparate impact

claim").  Thus, Plaintiffs' disparate impact class claim cannot be dismissed at the pleading stage

on the ground that, *as a matter of law*, a neutral employment practice that involves discretionary

decision-making cannot satisfy the Rule 23(a) commonality requirement.

   To be sure, should Plaintiffs seek certification as to practices that involve discretion, they

will bear the burden of demonstrating "a common mode of exercising discretion that pervades

the entire company." *Dukes*, 564 U.S. at 356.  Several cases demonstrate that this is readily

achievable where the facts demonstrate that managers "exercise their discretion in a common

way." *Id.  See, e.g.*, *McReynolds v. Merrill Lynch,* 672 F.3d 482, 489-90 (7th Cir. 2012); *Chen-*

*Oster v. Goldman Sachs & Co.*, 325 F.R.D. 55, 73-75 (S.D.N.Y. 2018); *Ellis*, 285 F.R.D. at 518-

19.  In order to meet that burden at the Rule 23 stage, Plaintiffs are entitled to discovery to make

this showing.

   Numerous courts have upheld disparate impact challenges to similar types of

employment practices at the pleading stage. *See, e.g.*, *Chen-Oster*, 877 F. Supp. 2d at 118

- 15 -

(denying motion to strike class allegations challenging performance, pay, and promotion systems involving manager decisions made pursuant to uniform criteria); *Barghout*, 2012 WL 1113973, at *1, 10 (rejecting *Iqbal/Twombly* challenge to disparate impact claim and citing to allegations in the complaint that the defendants had failed to establish or follow procedures to eliminate bias in promotion and compensation decisions, relying instead upon subjective criteria that allowed overwhelmingly male management to discriminate against women in pay, promotions, and performance review); *Scrub*, 2009 WL 3458530, at *1, 2 (holding that pleading requirements were satisfied where "[t]he EEOC identifies Scrub's practice of subjective luring as a facially-neutral practice that has a disparate impact of African Americans").  Here, too, Plaintiffs' claim should survive.

Sandia's cases, most of which arise in the context of class certification, do not suggest otherwise.  In *Dukes*, commonality could not be satisfied because the *class certification* record demonstrated that "[t]he only corporate policy" of Wal-Mart was a "'policy' of *allowing discretion* by local supervisors over employment matters"—*i.e.*, "a policy *against having uniform* employment policies."  564 U.S. at 355.  In *Zuniga v. Bernalillo County*, this Court found commonality lacking at the Rule 23 stage because, unlike as alleged here, "employee selection and compensation decisions" were "within the individual managers' discretion."  319 F.R.D. 640, 690 (D.N.M. 2016) (Browning, J.).  Although the *Zuniga* plaintiffs argued that "managers who made compensation and other employment decisions for the class shared a 'common mode of exercising discretion,'" the Court—on a fully-discovered class certification record—was unpersuaded by the plaintiffs' evidence.  *Zuniga*, No. 11-877, Mot. for Class Cert., ECF No. 136, at 19.

Similarly, Sandia's other authorities are merely examples of a complete failure to identify a policy other than delegated discretion without a common mode of exercising it.  *See Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 895, 898 (7th Cir. 2012) (in a case not involving disparate

- 16 -

impact claims and on a class certification record, conceding there was no common policy where the plaintiffs' hostile work environment challenges "boil[ed] down to the policy [of] affording discretion to each site's superintendent" at 262 different job sites); *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 198 (D.D.C. 2017) (where a motion for settlement approval was filed at the same time as the initial complaint and no discovery or litigation conducted at all, the court rejected a settlement certification class because the plaintiffs "pointed to no evidence of biased decision making of any kind, and certainly not statistical evidence of the type that demonstrates that the discretionary [] decisions led to racially disparate outcomes *in a common way*"); *Jones v. Nat'l Council of YMCA*, 34 F. Supp. 3d 896, 904 (N.D. Ill. 2014) (class certification denied on full record where the employer had no single pay or promotion policy but instead many varying policies that did not constrain discretion across different supervisors); *Dukes v. Wal-Mart Stores, Inc.* (*Dukes II*), 964 F. Supp. 2d 1115, 1127 (N.D. Cal. 2013) (denying a post-*Dukes* motion for class certification of a 150,000-member Wal-Mart class because the plaintiffs failed to address the infirmities identified in *Dukes I* and merely challenged "delegating discretion to local managers"); *Bell v. Lockheed Martin Corp.*, No. 8-6292, 2011 WL 6256978, at *7 (D.N.J. Dec. 14, 2011) (describing "discretionary employment policies [that] are substantially identical in nature to Wal-Mart's discretionary policies"); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 675 (D. Kan. 2004) (describing "[a]llegations of decentralized, individualized decision-making").[5]

### b.    Plaintiffs May Seek Injunctive Relief Under 23(b)(2), While Also Seeking Damages Under 23(b)(3).

Sandia seeks to dismiss Plaintiffs' disparate impact class claim on the ground that, even if certification of a declaratory and injunctive relief class were appropriate under Rule 23(b)(2),

---

[5] Sandia also cites to *Gschwind v. Heidin*, a reversal of summary judgment in a public school teacher's *individual* case against a district for forcing him to resign in retaliation for protected First Amendment speech.  692 F.3d 844 (7th Cir. 2012).  *Gschwind* is not an employment discrimination class action and provides no guidance here.

- 17 -

this Court cannot certify such a class because Plaintiffs also seek damages under Rule 23(b)(3).

Mot. at 16-17.  Sandia's argument, which it asserts in the context of a motion to *dismiss*, puts the

cart before the horse because Plaintiffs have not yet moved for class certification, and therefore

Plaintiffs have not yet moved to certify claims under any particular subsection of Rule 23.  As

per Plaintiffs' FAC, Plaintiffs may—but are not required to—seek certification of their claims

under three subsections of Rule 23: (b)(2), (b)(3), and/or (c)(4).  FAC ¶ 41.  Regardless, Sandia's

argument is plainly wrong under the Federal Rules and precedent.

Rule 23 itself contains no prohibition on certification under both subsections 23(b)(2) and

(b)(3).  In fact, the Federal Rules Advisory Committee specifically contemplates hybrid

certifications under both subsections 23(b)(2) and (b)(3), noting, "If a Rule 23(b)(3) class is

certified *in conjunction* with a (b)(2) class, the (c)(2)(B) notice requirements must be satisfied as

to the (b)(3) class."  Advisory Comm. Notes, Rule 23 (2003) (emphasis added).

A review of the case law also shows that hybrid certification under *both* subsections

(b)(2) and (b)(3) of Rule 23 is not only allowed, but is common in the context of Title VII class

actions.  For example, in *Ellis v. Costco*, in which the plaintiffs challenged the promotion system

at over 350 Costco stores under both disparate impact and disparate treatment theories, the court

certified a class under Rule 23(b)(2) for liability and injunctive relief and under 23(b)(3) for

liability and damages.  285 F.R.D. at 545.  The recent class certification in *Chen-Oster* also

demonstrates that hybrid certifications of Title VII classes under both subsections 23(b)(2) and

(b)(3) are allowed.  There, the court certified a class for liability and damages under Rule

23(b)(3), while deferring ruling on certification of claims for injunctive relief under 23(b)(2)

because they were "being pursued on a separate track."  325 F.R.D. at 67.  Numerous other Title

VII class certifications demonstrate that hybrid certifications Rule 23 subsections (b)(2) and

(b)(3) are appropriate.  *See, e.g.*, *Gulino v. Bd. of Educ.*, 555 F. App'x 37 (2d Cir. 2014)

(affirming certification of *both* Rule 23(b)(2) and (b)(3) classes in challenge to employer's

- 18 -

credentialing requirement); *Scott v. Family Dollar Stores, Inc.*, No. 08-540, 2016 WL 9665158, at *9, (W.D.N.C. June 24, 2016) (ordering that "the case shall proceed . . . as a class action under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3)"); *United States, Vulcan Soc'y v. City of N.Y.*, 276 F.R.D. 22, 53 (E.D.N.Y. 2011) (certifying both disparate impact and pattern-or-practice challenges to employer's hiring policy under Rule 23(b)(2), (b)(3), and (c)(4)); *Easterling v. State Dep't of Corr.*, 278 F.R.D. 41, 43-44 (D. Conn. 2011) (certifying a Rule 23(b)(3) damages class after having previously certified a (b)(2) declaratory and injunctive relief class the year prior).

None of Sandia's authorities, all of which address class certification rather than a motion to dismiss class allegations, indicate that hybrid certification under Rule 23(b)(2) and (b)(3) is inappropriate.  While *Dukes* holds that "individualized monetary claims belong in Rule 23(b)(3)," the opinion in no way suggests that plaintiffs cannot simultaneously seek certification of a damages class under Rule 23(b)(3) and injunctive relief class under 23(b)(2).  564 U.S. at 362.  Instead, *Dukes* holds that Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant."  *Id.* at 360.  Should Plaintiffs move under Rule 23(b)(2), however, they intend to seek a single declaratory judgment and single injunction "end[ing] Sandia's common, uniform, unfair, and discriminatory policies and practices."  FAC ¶ 48.

Sandia's other authorities are similarly unavailing.  In *Casias v. Distribution Management Corp.*, the court declined to certify a Rule 23(b)(2) class, not because the plaintiffs, who alleged they were misclassified as independent contractors, sought damages, but because the evidence presented at class certification did not suggest a "uniform and standardized policy issued by a company with highly centralized management."  No. 11-874, 2014 WL 12710236, at *17 (D.N.M. Mar. 31, 2014) (Vasquez, J.).  Therefore, the court could not fashion injunctive relief that would be "uniform amongst the entire class."  *Id.* at 20.  In *Mothersell v. City of*

- 19 -

*Syracuse*, the court found that the plaintiffs had not satisfied the Rule 23(a)(2) requirement of commonality, which is a prerequisite for certification under both 23(b)(2) and (b)(3).  289 F.R.D. 389, 400 (N.D.N.Y. 2013).  Unsurprisingly, then, the *Mothersell* court noted that "Rule 23(b)(2) requires little discussion."  *Id.* at 401.  Finally, *Lee v. ITT Corp.*, 275 F.R.D. 318, 325 (W.D. Wash. 2011), and *Augustin v. Jablonsky*, No. 99-3126, 2001 WL 770839, at *9 (E.D.N.Y. Mar. 8, 2001), simply stand for the proposition that Rule 23(b)(2) certification may be unavailable where injunctive relief is not one of the plaintiffs' primary goals.  It would be premature for the Court to conclude now—without the benefit of a class certification motion—that "Plaintiffs' damages claims predominate over their claims for declaratory and injunctive relief."  *Jablonsky*, 2001 WL 770839, at *9.  Nonetheless, this is not the case here, as the FAC alleges that Plaintiffs seek to enjoin Sandia's compensation and promotion policies to advance gender equality and effect systemic change.  *See* FAC ¶ 5 ("Plaintiffs . . . bring this action . . . in order to end Sandia's discriminatory policies and practices . . . .").

### c.      Sandia Misstates the Law on Adjudication of Affirmative Defenses Under 23(b)(3) for Disparate Impact Claims.

Sandia also argues that Plaintiffs will be unable to certify a disparate impact damages class under Rule 23(b)(3) because doing so will deny Sandia the ability to "present individualized defenses to each" class member's claims.  Mot. at 19.  At the outset, it is important to note that the core affirmative defense to a disparate impact claim is one that supports class certification because it is common to the entire class: business necessity.  *See, e.g.*, *Easterling*, 278 F.R.D. at 49-50 (holding that the question of whether the disparate impact of an employment practice "was justified by business necessity" was "subject to generalized proof" and supported a finding of predominance under Rule 23(b)(3)); *Chen-Oster*, 325 F.R.D. at 82 (same).  *Dukes*, upon which Sandia relies in support of its argument that Rule 23(b)(3) certification is somehow precluded here, also specifically holds that "individualized monetary claims belong in Rule 23(b)(3)."  564 U.S. at 362.  In essence, Sandia argues prematurely, and

- 20 -

without support, that individual affirmative defenses will predominate over common questions with respect to Plaintiffs' class claim for disparate impact discrimination. At class certification, Plaintiffs will submit a trial plan addressing adjudication of class members' entitlement to relief under a disparate impact theory of liability. While Sandia's arguments are premature, Plaintiffs note at this time that the opinions of numerous courts show that there are viable frameworks for class adjudication of disparate impact claims and their associated affirmative defenses.

If Plaintiffs show that a common policy or practice has a disparate impact on protected group, that practice is presumptively "the reason for a particular employment decision," *Dukes*, 564 U.S. at 352, absent a common showing of business necessity, *Chen-Oster*, 325 F.R.D. at 82. After a disparate impact liability finding, individual affirmative defenses are thus relatively limited. It is unsurprising then that in no case upon which Sandia relies is adjudication of affirmative defenses the ultimate reason for denial of class certification. Instead, Sandia's authorities simply stand for the proposition that without unifying common questions, certification under Rule 23(b)(3) is unavailable. *See Monreal v. Potter*, 367 F.3d 1224, 1237 (10th Cir. 2004) ("Plaintiffs do not allege *any* common issues of fact," instead merely raising "myriad discriminatory acts that . . . each require independent legal analysis.") (emphasis added); *Moore v. Publicis Grp. SA*, No. 11-1279, 2014 WL 11199094, at *5-7 (S.D.N.Y. May 15, 2014) (denying class certification where the plaintiffs did not challenge specific company policies but rather challenged concentrated decision-making in a small group of executives, which the court found factually unsupported). Sandia also fails to address the availability of issue certification under Rule 23(c)(4), which could provide another avenue to certifying the issue of disparate impact liability. *See Robinson v. Metro-North Comm. R.R. Co.*, 267 F.3d 147, 167 (2d Cir. 2001) ("District courts should take full advantage of this provision to certify separate issues in order to reduce the range of disputed issues in complex litigation and achieve judicial

- 21 -

efficiencies.") (alterations and quotation marks omitted), *abrogated on other grounds by Dukes*, 564 U.S. 338.

Resolving how to allocate back pay damages awarded by a hypothetical disparate impact liability verdict *after* a trial of common issues to the Court is premature. *See Ellis*, 285 F.R.D. at 546 (approving trial plan wherein "[t]he Court decides . . . [w]hether Costco's employment practices have had an adverse impact on the class"). Regardless, to the extent hearings are needed in the damages phase of adjudication, they may be made more efficient by the "presumption of individualized harm for each class member" afforded by a victory in the first phase of trial. *Scott*, 2016 WL 9665158, at *8. For that reason, individual affirmative defenses may be relatively straightforward to adjudicate. For example, the Court or special master may conclude that any class member who was out on leave during a particular year would not be entitled to damages that year, despite the disparate impact of Sandia's policies. Alternatively, after a finding of disparate impact liability, the Court could calculate a total damages award and allocate a baseline back pay award to class members, while also deciding what specific, non-discriminatory bases may justify denial of claims. *See Gulino v. Bd. of Educ.*, No. 96-8414, 2013 WL 4647190, at *11 (Aug. 29, 2013) (certifying liability and damages in disparate impact case under Rule 23(b)(3) and identifying potential common methods of damages calculations, where "resolving common issues with respect to damages at a classwide proceeding will save substantial time and prevent the relitigation of common claims"). In sum, Plaintiffs' class claim for disparate impact discrimination cannot be dismissed based on Sandia's argument regarding adjudication of affirmative defenses at a *hypothetical* class trial, when Plaintiffs have not yet moved for class certification or submitted a proposed trial plan.

## V.  <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Sandia's motion to dismiss Plaintiffs' class claim for disparate impact discrimination. In the

alternative, should the Court grant Sandia's motion, Plaintiffs respectfully seek leave to amend the class allegation of disparate impact discrimination that accompanies Plaintiffs' *unchallenged* class allegation of disparate treatment discrimination.

Respectfully submitted,

Dated:  August 23, 2018

By:  _____*/s/ Kelly M. Dermody*_____
Kelly M. Dermody (N.M. Fed. Bar No. 17-18)
Anne B. Shaver (N.M. Fed. Bar No. 17-22)
Michael Levin-Gesundheit (N.M. Fed. Bar No. 17-20)
Tiseme Zegeye (N.M. Fed. Bar No. 17-69)
Shira J. Tevah (N.M. Fed. Bar No. 18-32)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: ashaver@lchb.com
E-Mail: mlevin@lchb.com
E-Mail: tzegeye@lchb.com
E-Mail: stevah@lchb.com

Gretchen Elsner (N.M. Fed. Bar No. 07-169)
**ELSNER LAW & POLICY, LLC**
150 Washington Avenue, Suite 201
Santa Fe, NM 87501
Telephone:  (505) 303-0980
E-Mail:  gretchen@elsnerlaw.org

Adam T. Klein*
Cheryl-Lyn Bentley*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005
E-Mail: atk@outtengolden.com
E-Mail: cbentley@outtengolden.com

Rachel Bien*
**OUTTEN & GOLDEN LLP**
601 South Figueroa Street, Suite 4050
Los Angeles, CA 90017
Telephone:  (323) 673-9900
Facsimile:  (646) 509-2058
E-Mail:  rmb@outtengolden.com

*Attorneys for Plaintiffs and the proposed Class*

*attorney associated with member of D.N.M. Federal Bar

- 24 -

1609372.2

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of August, 2018, I filed the foregoing pleading electronically through the CM/ECF system, which caused all counsel to be served by electronic means:

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**

By:____*/s/ Michael Levin-Gesundheit*____

- 25 -