# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LISA A. KENNICOTT, LISA A. GARCIA,
SUE C. PHELPS, and JUDI DOOLITTLE, on
behalf of themselves and a class of those
similarly situated,

      Plaintiffs,

vs.                                    No. CIV 17-0188 JB/GJF

SANDIA CORPORATION d/b/a SANDIA
NATIONAL LABORATORIES,

      Defendant.

## MEMORANDUM OPINION AND ORDER OVERRULING THE DEFENDANT'S OBJECTIONS AND AFFIRMING THE MAGISTRATE JUDGE'S ORDER

**THIS MATTER** comes before the Court on Defendant's Objections to Magistrate Judge's Order Granting Plaintiffs' Motion to Compel Production of Documents, filed May 25, 2018 (Doc. 117)("Objections"). The primary issue is whether the Order Granting Plaintiffs' Motion to Compel, filed May 14, 2018 (Doc. 112)("Order"), issued by the Honorable Gregory J. Fouratt, United States Magistrate Judge, exceeds the scope of discovery that rule 26(b)(1) of the Federal Rules of Civil Procedure established. For the following reasons, the Court overrules the Objections and affirms Magistrate Judge Fouratt's Order.

## PROCEDURAL BACKGROUND

Plaintiffs Lisa A. Kennicott, Lisa A. Garcia, and Sue C. Phelps sued Sandia Corporation ("Sandia Labs") on behalf of themselves and a class of those similarly situated. See Class Action Complaint, filed February 7, 2017 (Doc. 1)("Complaint").[1] Judi Doolittle joined them as a named plaintiff when the Plaintiffs amended their Complaint. See First Amended Class Action

---

[1]The Court dismissed the Plaintiffs' state law claims (Counts III, IV, V, and VII of the Complaint) under the federal enclave doctrine. See Order at 1, filed March 31, 2018 (Doc. 106).

Complaint, filed July 5, 2018 (Doc. 146)("Amended Complaint").  In the Amended Complaint, the Plaintiffs assert the following claims: (i) intentional discrimination under Title VII of the Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241 (codified as amended at 42 U.S.C. §§ 2000e to 2000e-15)("Title VII"); and (ii) disparate impact discrimination under Title VII.  <u>See</u> Amended Complaint ¶¶ 85-99, at 21-23.  Kennicott asserts individual Title VII claims for retaliation and constructive discharge.  <u>See</u> Amended Complaint ¶¶ 100-08, at 23-24.

The Plaintiffs allege that Sandia Labs' Title VII violations are based on a "continuing policy, pattern, and practice of sex discrimination against female employees, with respect to performance evaluations, pay, promotions, and other terms and conditions of employment." Complaint ¶ 1, at 1; Amended Complaint ¶ 1, at 1.  The Plaintiffs also allege that "Sandia's company-wide policies and practices systematically violate female employees' rights and operate in a corporate culture infected with gender bias.  The disadvantage to female employees . . . is the regular and predictable result of Sandia's policies and practices and lack of proper accountability measures to ensure fairness."  Complaint ¶ 3, at 2.  <u>See</u> Amended Complaint ¶¶ 3-4, at 2.  The alleged gender discrimination concerns "(1) performance evaluations; (2) compensation; and (3) promotions."  Complaint ¶ 23, at 5.  <u>See</u> Amended Complaint ¶¶ 26-40, at 6-9.

On May 19, 2017, the Plaintiffs requested several sets of documents from Sandia Labs. <u>See</u> Plaintiffs' First Set of Requests for Production of Documents at 14 (dated May 19, 2017), filed March 5, 2018 (Doc. 94-1)("RFP").  One such set of documents, RFP No. 21, is:

> All DOCUMENTS (including but not limited to investigation files, logs, OR databases) that REFER OR RELATE TO internal requests, inquiries, demands, claims, grievances, concerns, protests, OR complaints, made by DEFENDANT'S applicants, employees, AND/OR managers against DEFENDANT, REFERRING OR RELATING TO unfair treatment against any woman, including gender discrimination, sexual harassment, pregnancy discrimination, hostile work

environment, AND/OR retaliation, including investigations of such requests, inquiries, demands, claims, grievances, concerns, protests, AND/OR complaints. This document request includes but is not limited to internal requests, inquiries, demands, claims, grievances, concerns, protests, OR complaints directed to DEFENDANT'S Human Resources, Ethics, Ethics' hotline, Ombuds, OR Equal Employment Opportunity/Affirmative Action departments. This document request includes all forms of communications—either in writing or orally (where such COMMUNICATIONS have been taped, logged, noted AND/OR investigated and described through records of the investigation), formal or informal, to DEFENDANT or to any other party.

RFP at 14. Sandia Labs objected to producing those documents, stating:

Defendant objects to Request No. 21 on the grounds that it is overbroad and unduly burdensome, not proportional to the needs of the case, and seeks information that is neither relevant to the claims in the Complaint nor reasonably calculated to lead to the discovery of admissible evidence. In that regard, this Request is objectionable in seeking "all documents" as well as information regarding complaints of sexual harassment, pregnancy discrimination, hostile work environment, retaliation, and hiring discrimination as the Complaint does not assert such claims on a class-wide basis. Further, this Request seeks information not limited to the relevant temporal period. Defendant also objects to this Request on the grounds that it is vague and ambiguous, including with respect to the phrase "internal requests, inquiries, demands, claims, grievances, concerns, protests." Defendant further objects to this Request to the extent it seeks information of a personal, proprietary or confidential nature to Defendant and/or Defendant's current, former and prospective employees. Finally, Defendant objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or any other applicable immunity or privilege.

Defendant's Objections and Responses to Plaintiffs' First Set of Requests for Production of

Documents at 20-21 (dated July 10, 2017), filed March 19, 2018 (Doc. 100-1).

The Plaintiffs and Sandia Labs conferred concerning RFP No. 21 for over seven months

until January 31, 2018, when Sandia Labs produced a complaint log summarizing internal

complaints of gender discrimination that contained thirty-one entries. See Motion to Compel

Production of Documents at 2, filed March 5, 2018 (Docs. 92 and 93)("Motion").[2]   The

---

[2]Further citation to Plaintiff's Motion to Compel will be to the redacted document, which is Doc. 92.

complaint log did not contain entries for complaints concerning sexual harassment, hostile work environment, pregnancy discrimination, or retaliation.  See Motion at 2.  After confirming that Sandia Labs was not willing to produce the complaints and full investigation files, the Plaintiffs filed their Motion.  See Motion at 2.

## 1.    **The Motion.**

In the Motion, the Plaintiffs argue that Sandia Labs must "produce employee complaints related to sexual harassment, pregnancy discrimination, hostile work environment, and retaliation," and "the full complaint investigation files" rather than summaries.[3]  Motion at 1. The Plaintiffs contend that the complaints are relevant because "they show a pattern or practice of discrimination."  Motion at 3.  Specifically, the Plaintiffs assert that the rubric of "gender discrimination" includes sexual harassment, pregnancy discrimination, hostile work environment, and retaliation.  Motion at 4.  Further, the Plaintiffs emphasize that the requested discovery is necessary for establishing their class disparate-treatment claim.  See Motion at 6.

## 2.    **The Response.**

Sandia Labs responded.  See Defendant's Opposition to Plaintiffs' Motion to Compel Production of Documents at 1, filed March 19, 2018 (Doc. 99)("Response").  Sandia Labs argues that discovery is limited to the pleadings' claims and defenses.  See Response at 3.  According to Sandia Labs, the internal complaints related to sexual harassment, pregnancy discrimination,

---

[3]On June 8, 2018, Magistrate Judge Fouratt held a hearing on Sandia Labs' Motion for Extension of Time to Produce Documents, filed May 25, 2018 (Doc. 115), and the Defendant's Motion to Stay Magistrate's Order Pending District Court's Ruling on Defendant's Objections, filed May 29, 2018 (Doc. 120).  During that hearing, in response to questioning from Magistrate Judge Fouratt, Sandia Labs stated that there are approximately 45 complaints that exist in the disputed categories of sexual harassment, pregnancy discrimination, hostile work environment, and retaliation, and that the complaints and the full investigation files associated with those complaints total approximately 5,000 pages.  See Clerk's Minutes for Motion Hearing at 3, filed June 8, 2018 (Doc. 131).  The dispute's scope, therefore, is approximately 45 internal complaints.

hostile work environment, and retaliation are irrelevant to the Plaintiffs' claims -- which focus on performance evaluations, compensation, and promotions -- because sexual harassment, pregnancy discrimination, hostile work environment, and retaliation are separate and discrete theories of liability that the Plaintiffs do not plead. See Response at 4. Sandia Labs also argues that proportionality counsels against production of the internal complaints. See Response at 8-9.

### 3. **The Reply.**

The Plaintiffs replied. See Plaintiffs' Reply in Support of Motion to Compel Production of Documents, filed April 2, 2018 (Doc. 107)("Reply"). The Plaintiffs argue the documents they request are relevant to their claims. See Reply at 2-3. The Plaintiffs also argue that Sandia Labs did not sufficiently substantiate its objection based on undue burden. See Reply at 10.

### 4. **The Hearing.**

Magistrate Judge Fouratt held a hearing on the Motion on May 2, 2018. He first concluded that the Plaintiffs bore the burden of proving relevance based on this Court's decision in Landry v. Swire Oilfield Servs., L.L.C., 323 F.R.D. 360 (D.N.M. 2018)(Browning, J.). In Landry v. Swire Oilfield Servs., L.L.C., the Court stated that, following the 2015 amendment of Federal Rule of Civil Procedure 26(b)(1), "[t]he burden of demonstrating relevance remains on the party seeking discovery, and the newly revised rule 'does not place on the party seeking discovery the burden of addressing all proportionality considerations.'" Landry v. Swire Oilfield Servs., L.L.C., 323 F.R.D. at 381 (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment).

Magistrate Judge Fouratt also clarified that, while the Plaintiffs do not allege a class claim for retaliation, the Plaintiffs view Sandia Labs' alleged pattern and practice of retaliating against female employees who complain of gender discrimination as a "predicate" to their

"intentional discrimination or pattern and practice class claim[.]" Transcript of Hearing on Motion to Compel at 19:8-20 (Court)(taken May 2, 2018), filed May 18, 2018 (Doc. 114)("Tr."). According to the Plaintiffs, their intentional discrimination claim can be characterized as a disparate treatment claim under Title VII. See Tr. at 20:11-22 (Shaver). Further explaining the Plaintiffs' view that complaints concerning sexual harassment, hostile work environment, pregnancy discrimination, and retaliation are relevant to the Plaintiffs' class claims, the Plaintiffs' counsel stated: "So it's underneath this disparate treatment theory that the evidence of retaliation, and all of the other, frankly, sexual harassment, pregnancy discrimination, hostile work environment, all these types of complaints become relevant, not because retaliation is itself a class claim." Tr. at 21:19-23 (Shaver).

Sandia Labs countered by emphasizing that retaliation is substantively different from "other forms of discrimination," because retaliation has "a completely different burden structure[,]" and that "pattern and practice" is not a claim, but is "a method of proof of a particular type of discrimination claim[.]" Tr. at 22:6-24 (Burkhardt). The Plaintiffs later clarified that, "the reason for us requesting these types of complaints, including sexual harassment, pregnancy discrimination, hostile work environment, and retaliation for complaining about any of the above, is because they are all forms of gender discrimination." Tr. at 23:11-16 (Shaver). Sandia Labs emphasized that gender discrimination in pay, promotions, and evaluations does not constitute "a claim of retaliation," and that Sandia Labs is not on notice that it faces a class claim of retaliation. See Tr. at 24:20-25:11 (Burkhardt).

Following this discussion, Magistrate Judge Fouratt concluded that Plaintiffs satisfied their burden of proving the relevance of complaints relating to retaliation:

> My decision on this is simply limited to whether the Plaintiffs have carried their burden of showing that evidence of retaliation, at least as it relates to the . . .

forms of gender discrimination described in paragraph one [of the Plaintiffs'
Complaint], which, to me, means classic gender discrimination. I think they've
carried their burden. I think they have shown me that it is relevant under the
discovery analysis -- not the Motion to Dismiss analysis, but the discovery
analysis.

Tr. at 27:6-15 (Court).

Magistrate Judge Fouratt then invited the Plaintiffs to explain how "complaints and

investigation files that relate to claims of sexual harassment, hostile work environment,

pregnancy discrimination, and retaliation for complaining about those three varieties of gender

discrimination, are relevant to your lawsuit." Tr. 30:21-25 (Court). The Plaintiffs explained that

"this evidence goes to our ability to meet our prima facie case of significant proof of a

[discriminatory] standard operating procedure." Tr. at 32:1-3 (Shaver). According to the

Plaintiffs, the disputed evidence is particularly relevant to satisfying the commonality

requirement for their class disparate treatment claim. See Tr. at 32:11-13. The Plaintiffs also

argued that the evidence they seek, including the full investigation files for the complaints, is

relevant to Sandia's affirmative defenses. See Tr. at 32:13-33:6 (Shaver). The Plaintiffs

reiterated that "these internal complaints are going to be evidence, class-wide evidence, of

intentional discrimination, and will go to the issue of significant proof." Tr. at 35:16-19

(Shaver).

The Plaintiffs also confirmed their theory that pregnancy discrimination, in Magistrate

Judge Fouratt's words, "manifested itself in [the female employees'] performance evaluation,

pay, and promotion[.]" Tr. at 36:10-15 (Court). Sandia Labs responded that, "[t]here is not a

single allegation in this Complaint that even remotely suggests" that a female employee's

"performance rating was affected" because of their pregnancy. Tr. at 38:7-10 (Burkhardt).

Sandia Labs reiterated that the Plaintiffs' "assertion is that somehow the performance rating

system is flawed, or not validated. That has nothing to do with any assertion related to

pregnancy discrimination." Tr. at 38:15-18 (Burkhardt). Regarding the Plaintiffs' burden of proof for their class disparate treatment claim, Sandia Labs argued:

> There's no such thing as a generic gender discrimination claim. You have to identify a policy or practice to assert a claim. You have to show that "I was treated differently in a promotion, and I can show that a similarly-situated man was promoted over me, and maybe it's because I was pregnant, or I wasn't, and that's the reason."

Tr. at 38:24-39:4 (Burkhardt). Magistrate Judge Fouratt then stated that, "there can be relevant evidence for discovery purposes that -- that we can't tie directly to a paragraph or a sentence in a complaint, and yet, it's still relevant, and that's what I'm -- that's what I'm trying to figure out." Tr. at 39:13-17 (Court).

Regarding sexual harassment, Magistrate Judge Fouratt asked the Plaintiffs what "the modicum of factual support" is that supports their theory that female employees who have complained about sexual harassment are then discriminated against through performance evaluations, pay, and promotions. Tr. at 40:7-19 (Court). The Plaintiffs pointed to Kennicott's case and its facts, and stated that "any complaints about sexual harassment are complaints about gender discrimination," assuming that the victim of that sexual harassment is female. Tr. at 40:1-8 (Shaver). Magistrate Judge Fouratt stated that it concerned him that the Plaintiffs had not alleged a cause of action for sexual harassment, whether individually or on behalf of a class. See Tr. at 41:24-42:4 (Court). The Plaintiffs responded:

> But there is a cause of action for sex discrimination, and sexual harassment is a type of sex discrimination. And so, since our -- our burden of proof here is to prove a -- our intentional discrimination claim is to prove a pattern and practice of sex discrimination. If there are forms of sex discrimination taking place, be it sexual harassment, or pregnancy discrimination, those are relevant.

Tr. at 42:5-12 (Shaver). Sandia Labs objected to this statement, arguing that nothing in the Complaint "suggests that the reason why they're claiming there's discrimination in pay or promotions or performance rating is because of sexual harassment, or the failure to address the

claim of sexual harassment, or a claim of retaliation, for that matter." Tr. at 44:18-24 (Burkhardt).

With respect to "evidence that female employees at Sandia who complain about sexual harassment thereafter have their performance evaluations downgraded, which affects their pay, and their prospects for promotion[,]" Magistrate Judge Fouratt asked Sandia Labs whether that evidence is relevant in this case. Tr. at 45:15-21 (Court). Sandia Labs responded that such evidence is not relevant, because the Plaintiffs did not make that allegation in their Complaint. See Tr. at 45:22-25 (Burkhardt). The Plaintiffs asserted that sexual harassment evidence is relevant, because

> if there's evidence in front of the trier of fact that the company has a -- an ineffective HR complaint system, or that HR retaliates against employees who complain, or that there's rampant sexual harassment, or the absence of any of those things would go to [D]efendant's case, that is absolutely going to be relevant to the question of whether there's intentional discrimination against women in pay, promotions, and performance evaluations. You can't separate those things out.

Tr. at 47:20-48:3 (Shaver). Sandia Labs responded that,

> it can't be the case that you get to assert a complaint, and all you get to say is -- all you have to say, really, is -- there are women, and there's discrimination. And that's enough. Give us discovery. That would really eliminate relevance as being meaningful in the circumstances where all you say is gender discrimination, and you get anything related to every form of gender discrimination.

Tr. at 49:3-10 (Burkhardt).

Magistrate Judge Fouratt also asked Sandia Labs about the Plaintiffs' argument that the discovery they seek is relevant to several of Sandia Labs' affirmative defenses. See Tr. at 50:3-6 (Court). Sandia Labs responded that those affirmative defenses concerned only the Plaintiffs' claim for punitive damages. See Tr. at 50:8-11 (Burkhardt). Sandia Labs further stated that any evidence it would present at trial regarding the affirmative defenses at issue would not concern

sexual harassment, hostile work environment, retaliation claims, or pregnancy discrimination. See Tr. at 50:15-24 (Burkhardt).

In making his findings, Magistrate Judge Fouratt stated, "I have to be mindful of what parties need in order to have a fair fight in the remainder of this litigation, that is sufficiently relevant and sufficiently proportionate to comply with the discovery rules." See Tr. at 68:10-13 (Court). Magistrate Judge Fouratt concluded that the Plaintiffs "barely carried their burden of proving to me that evidence of complaints related to sexual harassment, pregnancy discrimination, hostile work environment, and retaliation for those things, for complaining about those things, are relevant." Tr. at 68:23-69:2 (Court).

**5.    The Order.**

Magistrate Judge Fouratt issued his Order on May 14, 2018. See Order at 1. The Order, in addition to discussing the scope of discovery under rule 26(b) of the Federal Rule of Civil Procedure, also emphasizes that, in employment discrimination cases, the scope of discovery is extensive. See Order at 3-4. The Order also discusses the requirements for class certification under rule 23(a) of the Federal Rule of Civil Procedure. See Order at 4-6. Magistrate Judge Fouratt identified six findings and conclusions, four of which are relevant to Sandia Labs' Objections. Magistrate Judge Fouratt concludes that,

> there may be relevant evidence in complaints filed by Defendant's female employees asserting pregnancy discrimination, sexual harassment, gender-based hostile work environment, and retaliation for making these categories of complaints, which could inform or support Plaintiffs' claim that there is a culture of gender discrimination at Sandia that is most prominently manifested in pay, promotions, and performance evaluations.

Order at 6-7. Magistrate Judge Fouratt also concludes that the Plaintiffs have carried their burden of showing that complaints by Sandia Labs' female employees asserting pregnancy

discrimination, sexual harassment, gender-based hostile work environment, and retaliation for making those complaints "are relevant to their claims." Order at 7.

Magistrate Judge Fouratt additionally concludes that the Plaintiffs showed that "retaliation complaints filed by female employees who had complained of classic or traditional gender discrimination are also relevant to this lawsuit for the purposes of discovery." Order at 7. Finally, with respect to Sandia Labs' Objections, Magistrate Judge Fouratt concludes that the "disputed discovery is potentially relevant not just to the individual and class claims currently pled in the Complaint but also to the extensive factual showing that Plaintiffs must someday make to convince the presiding judge to certify a class in this case under Rule 23." Order at 7. Magistrate Judge Fouratt emphasizes that his conclusion that the Plaintiffs have proven that the disputed discovery is relevant "in no way affects Defendant's ability to contest its relevance either at the class certification stage or at trial." Order at 7 n.2.

### 6. **Sandia Labs' Objections.**

Sandia Labs asserts that Magistrate Judge Fouratt applies "an overly broad interpretation of the relevance standard set out in Rule 26(b)(1)" because he allows the Plaintiffs to obtain "discovery regarding claims they have not pled and for which they have no factual support." Objections at 5. Sandia Labs cites to the Court's language in <u>Landry v. Swire Oilfield Servs., L.L.C.</u> that discovery "is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." Objections at 5 (quoting <u>Landry v. Swire Oilfield Servs., L.L.C.</u>, 323 F.R.D. at 376). Sandia Labs urges the Court to "confine the scope of discovery to the *actual claims and defenses* asserted in the pleadings." Objections at 6 (emphasis in original). Sandia Labs highlights Magistrate Judge Fouratt's citation of <u>EEOC. v. Outback Steakhouse of Fla., Inc.</u>, 251 F.R.D. 603, 612 (D. Colo. 2008), as additional evidence that he

applied the incorrect legal standard because the 2015 amendment of Rule 26(b) abrogated that case's statement that relevance "'is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.'" Objections at 6 (quoting Outback Steakhouse of Fla., Inc., 251 F.R.D. at 612). Sandia Labs contends that "[t]here is not a single factual assertion in the Complaint that suggests that a 'culture of pregnancy discrimination, sexual harassment, hostile work environment, or retaliation' caused Plaintiffs and the class they purport to represent to be discriminated against in terms of performance evaluations, compensation, and promotions." Objections at 7. For that reason, Sandia Labs believes that Magistrate Judge Fouratt errs by allowing discovery of internal complaints of pregnancy discrimination, sexual harassment, hostile work environment, or retaliation when those complaints do not also allege discrimination in performance evaluations, compensation, and promotions. See Objections at 7-8.

Next, Sandia Labs argues that Magistrate Judge Fouratt errs in accepting the Plaintiffs' assertion that gender discrimination encompasses pregnancy discrimination, sexual harassment, hostile work environment, and retaliation. See Objections at 8. Sandia Labs states that pregnancy discrimination is analyzed separately from gender discrimination claims, in part because pregnancy discrimination "could be premised on an argument that a non-pregnant woman was treated more favorably, demonstrating that this is not a gender claim at all." Objections at 8-9. Sandia Labs also states that a hostile work environment claim is different from a claim "that gender impacted a woman's performance evaluation, compensation, or promotion." Objections at 9. Sandia Labs admits that, with respect to retaliation, protected activity that constituted the "but for" cause of the adverse employment action "could relate to a complaint of gender discrimination," but that "retaliation it not itself a complaint of gender

discrimination." Objections at 9-10. Finally, Sandia Labs asserts, without additional explanation, that Plaintiffs' class claims do "not open the door to irrelevant discovery." Objections at 10.

7. **The Plaintiffs' Response to Objections.**

The Plaintiffs urge the Court to overrule Sandia Labs' Objections. <u>See</u> Response to Defendant's Objections to Magistrate Judge's Order Granting Plaintiffs' Motion to Compel Production of Documents at 1, filed June 8, 2018 (Doc. 127)("Response to Objections"). Plaintiffs emphasize that the standard for reversing a Magistrate Judge with respect to legal conclusions is whether they are contrary to law. <u>See</u> Response to Objections at 3. The Plaintiffs also emphasize that "it is extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the district judge." <u>See</u> Response to Objections at 3.

The Plaintiffs argue that Magistrate Judge Fouratt applied the correct relevance standard from rule 26(b), and note that they "bear the burden at class certification," and that Magistrate Judge Fouratt referred to United States Court of Appeals for the Tenth Circuit case law "recognizing that evidence of intentional discrimination is highly probative in a pattern-and-practice gender discrimination case." Response to Objections at 3-4. The Plaintiffs highlight that their Complaint refers to a general culture of bias towards women at Sandia, and that performance evaluations, promotions, and pay must be evaluated in light of that culture. <u>See</u> Response to Objections at 5. The evidence that the Plaintiffs seek in discovery is, according to them, "critical to establishing whether Sandia fostered an environment of bias – or was aware of such bias, yet failed to correct it." Response to Objections at 5. The sought-after discovery is also, according to the Plaintiffs, "key to proving intent under a Title VII pattern-or-practice theory." Response to Objections at 5. Also according to the Plaintiffs, both before and after rule

26(b) was amended in 2015, "courts have routinely ordered production of *all* complaints of gender discrimination, regardless of whether they pertain to the specific forms of gender discrimination that are alleged on a *class basis*." Response to Objections at 6 (emphasis in the original). The Plaintiffs also argue that, although Magistrate Judge Fouratt's Order did not address the topic, the discovery they seek is relevant to Defendant's affirmative defenses. <u>See</u> Response to Objections at 7.

Regarding Sandia Labs' objection that Magistrate Judge Fouratt erred in accepting the Plaintiffs' assertion that gender discrimination encompasses pregnancy discrimination, sexual harassment, hostile work environment, and retaliation, the Plaintiffs clarify that Magistrate Judge Fouratt did not reach such a conclusion. <u>See</u> Response to Objections at 9. Instead, according to the Plaintiffs, Magistrate Judge Fouratt concluded that the discovery which the Plaintiffs seek "'could inform or support Plaintiffs' claim that there is a culture of discrimination at Sandia that is most prominently manifested in pay, promotions, and performance evaluations.'" Response to Objections at 9 (Order at 6-7)(emphases omitted). The Plaintiffs emphasize that they do not "seek relief for pregnancy discrimination, sexual harassment, hostile work environment, or retaliation *on a class basis*," nor did Magistrate Judge Fouratt conclude that they do. Response to Objections at 9 (emphasis in the original). Finally, the Plaintiffs assert that Magistrate Judge Fouratt's Order "reflects the clear language of Title VII and the cases interpreting it holding that gender discrimination *includes* sexual harassment, pregnancy discrimination, hostile work environment based on gender, and retaliation for raising complaints of gender bias." Response to Objections at 10 (emphasis in the original).

8.      **Sandia Labs' Reply in Support of Its Objections.**

Sandia Labs replied to the Plaintiffs' Response to Objection.  See Reply to Plaintiffs' Response to Defendant's Objections to Magistrate Judge's Order Granting Plaintiffs' Motion to Compel Production of Documents at 1, filed June 22, 2018 (Doc. 139)("Reply in support of Objections").  Sandia Labs recapitulates several main points first set forth in its Objections, specifically that the Plaintiffs are not entitled to discovery "regarding claims that they have not pleaded and for which they have no factual support," regardless of whether those claims may be brought under Title VII.  Reply in Support of Objections at 3-10.  Because the Plaintiffs contend "that Sandia uses an invalid and flawed performance evaluation system that allows managers to give women discriminatorily lower performance ratings, which in turn leads to lower compensation and promotions[,]" as opposed to actually asserting claims of pregnancy discrimination, sexual harassment, hostile work environment, or retaliation, the complaints which the Plaintiffs seek are not relevant to either the Plaintiffs' claims or Sandia Labs' defenses, and are therefore not discoverable.  Reply in Support of Objections at 3-5.  Sandia Labs repeats its conclusion that Magistrate Judge Fouratt "erroneously determined that Plaintiffs' claim of gender discrimination in performance evaluations, compensation, and promotions includes unpled claims of pregnancy discrimination, sexual harassment, hostile work environment, and retaliation."  Reply in support of Objections at 8.

9.      **The Amended Complaint.**

Such was the Objections' procedural posture until July 5, 2018, when the Plaintiffs filed their Amended Complaint, which makes several relevant changes.  The Plaintiffs add another individual -- Judi Doolittle -- and a claim for constructive discharge on Kennicott's behalf.  See Amended Complaint ¶ 9, at 3; id. ¶¶ 63-66, at 14-16; id. ¶¶ 79-84, at 20-21.  The Plaintiffs also

provide substantially more detailed information regarding how Sandia Labs conducts its performance evaluations, how Sandia Labs compensates its employees, including when they are eligible for raises, and how Sandia Labs promotes its employees.  See Amended Complaint ¶¶ 26-40, at 6-9.  These additional factual allegations explain how gender allegedly plays a discriminatory role in Sandia Labs' procedures for performance evaluations, compensation, and promotions.  See Amended Complaint ¶¶ 26-40, at 6-9.

Importantly, the Plaintiffs also allege that "Sandia's corporate culture of bias is reflected in the formal complaints of gender discrimination brought by class members -- including sexual harassment, pregnancy discrimination, hostile work environment, retaliation, and unequal treatment in pay and promotions – during the class period."  Amended Complaint ¶ 3, at 2.  With respect to their class action Title VII intentional discrimination claim, the Plaintiffs allege that Sandia Labs engages in intentional discrimination in part by "[f]ailing to reasonably investigate and respond to employee complaints of gender discrimination, including sexual harassment, hostile work environment, pregnancy discrimination, and retaliation for raising complaints of same[.]"  Amended Complaint ¶ 87, at 21.

**10.  <u>The Parties' Supplemental Briefing</u>.**

During a status conference on July 10, 2018, Magistrate Judge Fouratt asked the parties whether they desired to provide additional briefing concerning the Amended Complaint's effect on this discovery dispute.  See Clerk's Minutes at 2, filed July 10, 2018 (Doc. 148).  The parties agreed to provide supplemental briefs limited to two pages no later than July 20, 2018, and both parties complied.  See Clerk's Minutes at 2.

The Plaintiffs' supplemental brief asserts that the allegations in their Amended Complaint "*bolster* Magistrate Judge Fouratt's determination that Plaintiffs are entitled to this discovery." Plaintiffs' Supplemental Brief Regarding the Effect of the First Amended Complaint on Sandia's

Objections to Order Granting Plaintiffs' Motion to Compel Production of Documents at 1, filed July 20, 2018 (Doc. 153)("Pls.' Suppl. Br.")(emphasis in original). The Plaintiffs reiterate that the proportionality requirement of Rule 26(b)(1) "is met because [internal complaints of gender discrimination and associated investigation files are] key to proving intent under a Title VII pattern-or-practice theory of disparate treatment liability[.]" Pls.' Suppl. Br. at 1. The Plaintiffs also note that their Amended Complaint contains "at least a *modicum of factual support*" regarding the Plaintiffs' allegation "that Sandia has failed to take appropriate action to protect women from discrimination[.]" Pls.' Suppl. Br. at 1-2 (emphasis in original). The Plaintiffs also point out again that they do not intend to use the discovery they seek to develop new claims. See Pls.' Suppl. Br. at 2. Indeed, as the Plaintiffs recognize, their Amended Complaint "narrows, rather than broadens, Plaintiffs' class claims." Pls.' Suppl. Br. at 2.

Sandia Labs' supplemental brief argues the opposite, contending that Plaintiffs' Amended Complaint "further demonstrates why the information sought by Plaintiffs is irrelevant to any remaining class claim in this case." Defendant's Supplemental Brief in Support of Defendant's Objections to Magistrate Judge's Order Granting Plaintiffs' Motion to Compel Production of Documents at 1, filed July 20, 2018 (Doc. 152)("Def's Suppl. Br."). Sandia Labs insists that the Amended Complaint still "does not include a single factual allegation to support their conclusory assertion of a culture of pregnancy discrimination, sexual harassment, hostile work environment, and retaliation." Def's Suppl. Br. at 1. Sandia Labs emphasizes that the Plaintiffs now acknowledge that "women perform as well or better than men" at Sandia Labs, which concession "refutes the conclusory allegation of a 'culture of bias' that results in discriminatory outcomes for women, and Plaintiffs should not be permitted discovery on a theory that is rejected on the face of their [Amended] Complaint." Def's Suppl. Br. at 2. Sandia Labs

again characterizes the Plaintiffs' discovery request as an "improper fishing expedition," and urges the Court to sustain its objections to Magistrate Judge Fouratt's Order. Def's Suppl. Br. at 2.

## LAW REGARDING OBJECTIONS TO MAGISTRATE JUDGE DISCOVERY ORDERS

Rule 72(a) of the Federal Rules of Civil Procedure permits a party to file objections to a Magistrate Judge's non-dispositive order within fourteen days after being served with the order. "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). See Hutchinson v. Pfeil, 105 F.3d 562, 566 (10th Cir.), cert. denied, 522 U.S. 914 (1997). To overturn the Magistrate Judge's decision as clearly erroneous under rule 72(a), the district court must have "a definite and firm conviction that a mistake has been committed." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988)(internal quotation omitted).[4] A district court is required to "defer to the magistrate judge's ruling unless it is clearly erroneous or contrary to law." Hutchinson v. Pfeil, 105 F.3d at 566.

Under the "contrary to law" standard, the district court conducts a plenary review of the Magistrate Judge's legal determinations, setting aside the Magistrate Judge's order if it applied an incorrect legal standard. See Charles Alan Wright et al., 12 Federal Practice & Procedure § 3069, at 350 (4th ed. 2018). "In sum, it is extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the district judge." Wright et al., supra, § 3069, at

---

[4]The United States Court of Appeals for the Seventh Circuit has stated that, to be clearly erroneous, "a decision must strike [the court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988). The Court does not believe that this standard uses appropriate language, and will not use or follow the standard. The Court can, in a dignified manner, apply the traditional standards for clearly erroneous review without resorting to garbage or dead animals. 28 U.S.C. § 636(b)(1)(A).

350-51. On the other hand, just "as the district judge should defer to the magistrate judge's decision . . . he or she should not be hamstrung by the clearly erroneous standard. At i[t]s broadest, it is limited to factual findings." Wright et al., supra, § 3069, at 355.

<h2 style="text-align:center"><strong><u>LAW REGARDING DISCOVERY</u></strong></h2>

Discovery's proper scope is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). The factors that bear upon proportionality are: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26 (b)(1).

Discovery's scope under rule 26 is broad. See Gomez v. Martin Marietta Corp., 50 F.3d at 1520; Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information."). The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947). A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." McGee v. Hayes, 43 F. App'x. 214, 217 (10th Cir. 2002)(unpublished).[5] "'Discovery . . . is not intended to be a fishing expedition, but rather is

---

[5] McGee v. Hayes is an unpublished United States Court of Appeals for the Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we

meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, No. 11-1119, 2012 WL 3860744, at *1 (D.N.M. August 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. 00-7697, 2002 WL 1967023, at *2 (S.D.N.Y. 2002)(Knapp, J.)). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

The 2000 amendments to rule 26(b)(1) began narrowing the substantive scope of discovery and injected courts deeper into the discovery process. See Simon v. Taylor, No. 12-0096, 2015 WL 2225653, at *23 (D.N.M. April 30, 2015)(Browning, J.). Before the 2000 amendments, rule 26(b)(1) defined the scope of discovery as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending actions, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1)(1996). The 2000 amendments made the following changes, shown here with the deleted language stricken and the added material underlined:

> Parties may obtain discovery regarding any matter, not privileged, that which is relevant to the subject matter involved in the pending actions, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter

_____

allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that McGee v. Hayes has persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

<u>involved in the action. Relevant</u> ~~The~~ information ~~sought~~ need not be admissible at
the trial if discovery the ~~information sought~~ appears reasonably calculated to lead
to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Putting aside the last sentence's changes -- which the advisory
committee's notes make clear was a housekeeping amendment to clarify that inadmissible
evidence must still be relevant to be discoverable -- the 2000 amendments have two effects:
(i) they narrow the substantive scope of discovery in the first sentence; and (ii) they inject courts
into the process in the entirely new second sentence.

> In 1978, the Committee published for comment a proposed amendment, suggested
> by the Section of Litigation of the American Bar Association, to refine the scope
> of discovery by deleting the "subject matter" language. This proposal was
> withdrawn, and the Committee has since then made other changes in the
> discovery rules to address concerns about overbroad discovery. Concerns about
> costs and delay of discovery have persisted nonetheless, and other bar groups
> have repeatedly renewed similar proposals for amendment to this subdivision to
> delete the "subject matter" language. Nearly one-third of the lawyers surveyed in
> 1997 by the Federal Judicial Center endorsed narrowing the scope of discovery as
> a means of reducing litigation expense without interfering with fair case
> resolutions. [Federal Judicial Center, T. Willging, J. Shapard, D. Stienstra, & D.
> Miletich, Discovery and Disclosure Practice, Problems, and Proposals for
> Change] 44–45 (1997). The Committee has heard that in some instances,
> particularly cases involving large quantities of discovery, parties seek to justify
> discovery requests that sweep far beyond the claims and defenses of the parties on
> the ground that they nevertheless have a bearing on the "subject matter" involved
> in the action.

> The amendments proposed for subdivision (b)(1) include one element of these
> earlier proposals but also differ from these proposals in significant ways. The
> similarity is that the amendments describe the scope of party-controlled discovery
> in terms of matter relevant to the claim or defense of any party. The court,
> however, retains authority to order discovery of any matter relevant to the subject
> matter involved in the action for good cause. The amendment is designed to
> involve the court more actively in regulating the breadth of sweeping or
> contentious discovery. The Committee has been informed repeatedly by lawyers
> that involvement of the court in managing discovery is an important method of
> controlling problems of inappropriately broad discovery. Increasing the
> availability of judicial officers to resolve discovery disputes and increasing court
> management of discovery were both strongly endorsed by the attorneys surveyed
> by the Federal Judicial Center. <u>See</u> <u>Discovery and Disclosure Practice</u>, <u>supra</u>, at
> 44. Under the amended provisions, if there is an objection that discovery goes

beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

**The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.**

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

The amendments also modify the provision regarding discovery of information not admissible in evidence. As added in 1946, this sentence was designed to make clear that otherwise relevant material could not be withheld because it was hearsay or otherwise inadmissible. The Committee was concerned that the "reasonably calculated to lead to the discovery of admissible evidence" standard set forth in this sentence might swallow any other limitation on the scope of discovery. Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence. As used here, "relevant" means within the scope of discovery as defined in this subdivision, and it would include information relevant to the subject matter involved in the action if the court has ordered discovery to that limit based on a showing of good cause.

Finally, a sentence has been added calling attention to the limitations of subdivision (b)(2)(i), (ii), and (iii). These limitations apply to discovery that is otherwise within the scope of subdivision (b)(1). The Committee has been told repeatedly that courts have not implemented these limitations with the vigor that was contemplated. See 8 Federal Practice & Procedure § 2008.1 at 121. This otherwise redundant cross-reference has been added to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery. Cf. Crawford–El v. Britton, [523 U.S. 574] (1998)(quoting Rule 26(b)(2)(iii) and stating that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly").

Fed. R. Civ. P. 26 advisory committee's notes (emphasis added).

One gets the impression from reading the advisory committee's notes that the amendment was not intended to exclude a delineable swath of material so much as it is intended to send a signal to district judges to become more hands-on in the process of regulating -- mostly limiting -- discovery on relevance grounds alone. The "two effects" of the 2000 amendments might, thus, be only one effect: directing district judges to roll up their sleeves and manage discovery, and to do so on a relevance basis. The change in substantive scope from "subject matter," to "claim or defense," would, therefore, seem to "add teeth" to the relevance standard instead of narrowing that standard. It is not surprising that the Supreme Court of the United States of America and Congress would want to increase judicial presence: "relevance" is a liberal concept in the context of trial. Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Of course, regardless of the Court's musings about the rules, courts should also seek to give substantive content to amendments. Read literally, the rule does not permit parties to discover information relevant only to the claim or defense of another party; they must use discovery only to investigate their own claims and defenses. More problematically, however, the

rule may prevent using the Federal Rules' compulsory discovery process to obtain "background" information not specifically relevant to any one claim or defense -- e.g., a plaintiff naming a pharmaceutical company as a defendant and then using discovery to educate itself generally about medicine, biochemistry, and the drug industry by using the defendant's expertise.

In In re Cooper Tire & Rubber Co., 568 F.3d 1180 (10th Cir. 2009), the United States Court of Appeals for the Tenth Circuit clarified that the 2000 Amendments to rule 26 "implemented a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action." 568 F.3d at 1188. The Tenth Circuit further stated that,

> when a party objects that discovery goes beyond that relevant to the claims or defenses, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action." This good-cause standard is intended to be flexible. When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be. "[T]he actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested."

568 F.3d at 1188–89 (quoting the advisory committee's notes to the 2000 amendments to Fed. R. Civ. P. 26(b)(1))(citations and footnote omitted)(alteration in original).

The 2015 amendments to rule 26(b)(1) continued this process of narrowing discovery's substantive scope and injecting courts further into the discovery process. The 2015 amendment made notable deletions and additions, both of which emphasized the need to make discovery proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1), provides[6]:

---

[6]The deletions are stricken and the additions are underlined.

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ~~including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)~~ <u>and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.</u>

Fed. R. Civ. P. 26(b)(1)(alterations added).

The Committee Notes state that the first deletion does not make a substantive change. Rather, the deletion was made because "[d]iscovery of such matters is so deeply entrenched" in standard discovery that including it would be "clutter." Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.[7]

Regarding the second deletion, the Committee Notes explain that the former provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to

---

[7]The Court regrets this deletion. Moving things out of the statute's text often creates mischief, especially for courts that rely heavily on the text's plain language. The drafters might be astonished how often the Court sees objections to interrogatories and requests that seek basic information about documents. The rule is well-established because the deleted language was in the rule; now that the language is not in the rule, the rule may be eroded or, more likely, ignored or overlooked by those who do not spend time in advisory notes' thicket. What the advisory comments describe as "clutter" is a simple instruction to practitioners who do not practice in federal court every day for every case. This deletion might incrementally increase unnecessary litigation rather than shorten it. Some of the amendments seem more designed to help the nation's large corporations, represented by some of the nation's most expensive law firms, cut down expenses than they are to help courts and practitioners in more routine cases.

the discovery of admissible evidence" is also deleted.[8]  Fed. R. Civ. P. 26(b) advisory

committee's note to 2015 amendment.

> The phrase has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the "reasonably calculated" phrase to define the scope of discovery "might swallow any other limitation on the scope of discovery."  The 2000 amendments sought to prevent such misuse by adding the word "Relevant" at the beginning of the sentence, making clear that "'relevant' means within the scope of discovery as defined in this subdivision. . . ."  The "reasonably calculated" phrase has continued to create problems, however, and is removed by these amendments.  It is replaced by the direct statement that "Information within this scope of discovery need not be admissible in evidence to be discoverable."  Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery.

Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.  The deletion, therefore, did

not necessarily change discovery's scope, but clarified it.  Accordingly, "[r]elevance is still to be

'construed broadly to encompass any matter that bears on, or that reasonably could lead to other

matter that could bear on' any party's claim or defense."  State Farm Mutual Auto. Ins. Co. v.

Fayda, No. 14-9792, 2015 WL 7871037, at *2 (S.D.N.Y. 2015)(Francis IV, M.J.)(internal

quotation marks omitted)(quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351

(1978)).

The most notable addition to rule 26(b) is the proportionality concept. Rule

26(b)(2)(C)(iii) has always limited overly burdensome discovery and required proportionality.

See Fed. R. Civ. P. 26(b)(2)(C)(iii) (pre-2015 version).  The proportionality requirement was

relocated to 26(b)(1) to address the "explosion" of information that "has been exacerbated by the

---

[8]Arguably, older lawyers will have to learn a new vocabulary and ignore the one they have used for decades.  If the changes were not made to change the scope of discovery, it is unclear what the benefit of all this re-arrangement really is.

advent of e-discovery."[9]  Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.

Describing how e-discovery is the driving factor in the 2015 amendment, the Committee Notes

state:

> The burden or expense of proposed discovery should be determined in a realistic way. This includes the burden or expense of producing electronically stored information. Computer-based methods of searching such information continue to develop, particularly for cases involving large volumes of electronically stored information. Courts and parties should be willing to consider the opportunities for reducing the burden or expense of discovery as reliable means of searching electronically stored information become available.

Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.

Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the

addition of proportionality to rule 26(b) "crystalizes the concept of reasonable limits on

discovery through increased reliance on the common-sense concept of proportionality."[10]  Chief

---

[9]This relocation -- rather than substantive change -- is one reason that the Court is skeptical that the 2015 amendments will make a considerable difference in limiting discovery or cutting discovery costs.  Courts have been bringing common sense and proportionality to their discovery decisions long before the 2015 amendments.  See Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d 1225, 1275 (D.N.M. 2014)(Browning, J.)("[T]he Court expects that discovery and motion practice bear some proportionality to the case's worth."); Cabot v. Wal-Mart Stores, Inc., No. 11-0260, 2012 WL 592874, at *11–12 (D.N.M. 2012)(Browning, J.)(limiting the scope of discovery because it was unduly burdensome in relation to the relevance and need).  The real import of the rule is that it will likely lead to more "proportionality" objections and more disputes that the district courts will have to resolve, which is what the drafters apparently intend. It is unclear how more judicial involvement in discovery can be squared with a federal court docket that is at a breaking point already.  It is also unclear what was wrong with the old goal of discovery being largely self-executing.  The new rules also require attorneys to learn the new vocabulary of "proportionality," delete their old stock legal sections from their briefs, and rewrite these new sections to use the correct language.  Older lawyers must be particularly alert to read and learn the new rules, read the comments, and understand the thrust of the drafting. Finally, given that "proportionality" is a very subjective standard, it will be hard for any court to sanction any attorney for raising this objection. In sum, the rules are just as likely to increase the costs of discovery as to decrease it.

[10]The Rules Enabling Act, 28 U.S.C. §§ 2071-2077, empowers the federal courts to prescribe rules for the conduct of their business. See 28 U.S.C. § 2071.  The Judicial Conference -- the policy making body of the federal judiciary -- has overall responsibility for formulating those rules.  See Chief Justice John Roberts, 2015 Year-End Report on the Federal

Justice John Roberts, 2015 Year–End Report on the Federal Judiciary at 6, Supreme Court of the United States, available at http://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx ("2015 Year-End Report"). He states that the proportionality concept seeks to "eliminate unnecessary or wasteful discovery," and to impose "careful and realistic assessment of actual need." 2015 Year-End Report at 7. This assessment may, as a practical matter, require "judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." State

---

Judiciary at 6, Supreme Court of the United States, available at http://www.supremecourt.gov/ publicinfo/yearend/year-endreports.aspx ("2015 Year–End Report"). The Chief Justice leads the Judicial Conference. The Judicial Conference's Committee on Rules of Practice and Procedure, known as the Standing Committee, solicits guidance from advisory committees and conferences to draft proposed rules and amendments for the Judicial Conference's consideration. See 2015 Year-End Report. Chief Justice Roberts, a former clerk for Chief Justice William Rehnquist, appointed the Honorable David Campbell, United States District Judge for the District of Arizona, also a former Rehnquist clerk and President George W. Bush appointee, to chair the Civil Rules Advisory Committee. Campbell and David Levi, Dean of the Duke University School of Law, a former clerk to Justice Lewis Powell, and former chief judge of the United States District Court for the Eastern District of California, appointed as United States Attorney by President Ronald Reagan and appointed to the Eastern District of California by President George W. Bush, led the effort to increase proportionality and hands-on judicial case management in the 2015 amendments. See Report to the Standing Committee at 4, Advisory Committee on Civil Rules (May 8, 2013), available at http://www.uscourts.gov/rules-policies/archives/committeereports/advisory-committee-rules-civil-procedure-may-2013. After the Judicial Conference concurred on the 2015 amendments, it sent the proposed rules and amendments to the Supreme Court, which approved them. Chief Justice Roberts submitted the proposed rules to Congress for its examination. See 2015 Year-End Report at 6. Because Congress did not intervene by December 1, the new rules took effect. Some scholars have noted that the rules reflect the conservative nature of those who have participated in drafting the amendments. See Edward A. Purcell, Jr., From the Particular to the General: Three Federal Rules and the Jurisprudence of the Rehnquist and Roberts Courts, 162 U. Pa. L. Rev. 1731, 1742 (2014)(stating that the conservative "Rehnquist and Roberts Courts" issued decisions that "regularly burdened plaintiffs while protecting corporate" defendants). In particular, the New Mexico Trial Lawyer published an article asserting that the amendments favored corporate defendants, which was partially the result of Chief Justice Roberts' appointment of "corporate-minded judges to the Rules Advisory Committee that drafted the amendments." Ned Miltenberg & Stuart Ollanik, The Chief Umpire is Changing the Strike Zone, at 1, The New Mexico Trial Lawyer (Jan. /Feb. 2016). The Court shares some of the concerns with the new amendments being pro-business and giving corporations new tools to limit plaintiffs' discovery.

Farm Mutual Auto. Ins. Co. v. Fayda, 2015 WL 7871037, at *2 (internal quotation marks omitted). The burden of demonstrating relevance remains on the party seeking discovery, and the newly revised rule "does not place on the party seeking discovery the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment. See Dao v. Liberty Life Assurance Co. of Boston, No. 14-4749, 2016 WL 796095, at *3 (N.D. Cal. February 23, 2016)(LaPorte, M.J.)(observing that the 2015 amendment "reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses or objections"); Williams v. U.S. Envt'l Servs., LLC, No. 15-0168, 2016 WL 617447, at *1 n.2 (M.D. La. February 16, 2016)(Bourgeois, M.J.). In general, "the parties' responsibilities [] remain the same" as they were under the rule's earlier iteration so that the party resisting discovery has the burden of showing undue burden or expense. Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment. See Dao v. Liberty Life Assurance Co. of Boston, 2016 WL 796095, at *3 (noting that, "while the language of the Rule has changed, the amended rule does not actually place a greater burden on the parties with respect to their discovery obligations").

Like with the 2000 amendments, it is unsurprising that the drafters are unable to articulate precise language narrowing the discovery's substantive scope. Instead of being Aristotelian and trying to draft rules, the drafters largely opt to make federal judges Plato's enlightened guardians. They have decided that no single general rule can adequately take into account the infinite number of possible permutations of different claims, defenses, parties, attorneys, resources of parties and attorneys, information asymmetries, amounts in controversy, availabilities of information by other means, and other factors. They have dropped all discovery disputes into judges' laps. The drafters have decided that this determination requires the

individualized judgment of someone on the scene, and that presence is what the rulemakers want when they: (i) encourage district judges to take a firmer grasp on the discovery's scope; and (ii) put their thumbs on the scale in favor of narrower discovery in the rule's definition of the scope of discovery.

**ANALYSIS**

The Court concludes that Magistrate Judge Fouratt's Order is not contrary to law, because he reasonably applied rule 26(b) to this case. Magistrate Judge Fouratt reasonably concludes that the Plaintiffs seek discovery that is relevant to their claims and Sandia Labs' affirmative defenses. Accordingly, the Court overrules Sandia Labs' Objections, and affirms Magistrate Judge Fouratt's Order.

## I.      **THE ORDER IS NOT CONTRARY TO LAW.**

Sandia Labs' understands rule 26(b) to mean that the Plaintiffs are not permitted discovery on any topic outside of the narrow confines of the actual claims they plead in the Amended Complaint. See Objections at 5-8. Sandia Labs asserts that this principle is especially the case following the 2015 amendment of rule 26(b). Even after the 2015 amendments to the rule, Sandia Labs' interpretation of relevance is too restrictive. Although disputed discovery may not be directly tied to a claim or defense in the case, that discovery may still be relevant to issues that are likely to arise in the case. Following the 2015 amendment of rule 26(b), "[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." State Farm Mutual Auto. Ins. Co. v. Fayda, 2015 WL 7871037, at *2 (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. at 351). Magistrate Judge Fouratt applies that standard when he concludes that,

[f]or discovery purposes, there may be relevant evidence in complaints filed by Defendant's female employees asserting pregnancy discrimination, sexual harassment, gender-based hostile work environment, and retaliation for making these categories of complaints, which could inform or support Plaintiffs' claim that there is a culture of gender discrimination at Sandia that is most prominently manifested in pay, promotions, and performance evaluations.

Order at 6-7. Magistrate Judge Fouratt's conclusion is even more apt in light of the Plaintiffs' Amended Complaint, which specifically alleges that Sandia Labs failed to "reasonably investigate and respond to employee complaints of gender discrimination, including sexual harassment, hostile work environment, pregnancy discrimination, and retaliation for raising complaints of same." Amended Complaint ¶ 87(c), at 21.

The scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b). Magistrate Judge Fouratt concluded that complaints by Sandia Labs' female employees regarding pregnancy discrimination, sexual harassment, hostile work environment, and retaliation were relevant to Plaintiffs' claim of gender discrimination, which discrimination according to Plaintiffs is most prominently manifested in pay, promotions, and performance evaluations. See Order at 6-7. In other words, Magistrate Judge Fouratt concluded that the discovery which the Plaintiffs seek is relevant to their claims, which is the scope of discovery that rule 26(b) delimits. The relevance standard that Judge Fouratt applies is, therefore, not contrary to law.

Sandia Labs argues that Magistrate Judge Fouratt applies the pre-2015 rule 26(b) scope of discovery because his order cited EEOC v. Outback Steakhouse of Fla., Inc.[11] But Magistrate

---

[11]The Plaintiffs stretch too far in saying that, "both before and after the 2015 amendment to Rule 26, courts have routinely ordered production of *all* complaints of gender discrimination, regardless of whether they pertain to the specific forms of gender discrimination that are alleged on a *class basis*." See Response to Objections at 6 (emphasis in original). The lone case that the Plaintiffs cite from after the 2015 amendment of rule 26(b) is Moussouris v. Microsoft Corp., No. Civ. 15-1483 (W.D. Wash. Aug. 3, 2016), in which the Honorable James L. Robart, United States District Judge for the Western District of Washington, ordered the defendant to produce

Judge Fouratt cited that case in the portion of his Order which emphasizes that, in employment discrimination cases, relevance is construed broadly.  <u>See</u> Order at 3-4.  Sandia Labs does not cite to any cases concluding that the 2015 amendment of rule 26(b) changed the established principle that discovery in employment discrimination cases is broad.  <u>See</u> <u>EEOC v. Shell Oil Co.</u>, 466 U.S. 54, 68–69 (1984); <u>Weahkee v. Norton</u>, 621 F.2d 1080, 1082 (10th Cir. 1980); <u>Rich v. Martin Marietta Corp.</u>, 522 F.2d 333, 344 (10th Cir. 1975); <u>Chen-Oster v. Godman, Sachs & Co.</u>, 293 F.R.D. 557, 562 (S.D.N.Y. 2013).  Sandia Labs argues that <u>Rich v. Martin Marietta Corp.</u> "does not support discovery of the complaints at issue here" because the plaintiffs in that case sought discovery that was related to the allegations pled.  <u>See</u> Objections at 10 n.2.  Again, Magistrate Judge Fouratt cited <u>Rich v. Martin Marietta Corp.</u> to show only that the Tenth Circuit does not "narrowly circumscribe discovery in EEOC cases."  522 F.2d at 344.  Magistrate Judge Fouratt is not the first judge to accurately reason from the post-2015 rule 26(b) standard for the scope of discovery and conclude that discovery in employment discrimination cases is still broad.  <u>See</u> <u>Scott v. Eglin Fed. Credit Union</u>, No. CIV 16-0719, 2017 WL 1364600, at *2 (N.D. Fla. Apr. 13, 2017)("The scope of discovery in employment discrimination cases, although broad, is not limitless.").

Sandia Labs also broadly asserts that Magistrate Judge Fouratt's Order permits the Plaintiffs to obtain "discovery regarding claims they have not pled and for which they have no factual support."  Objections at 5.  The Plaintiffs are correct, however, that Magistrate Judge

---

internal investigation files concerning gender discrimination, pregnancy discrimination, and sexual harassment, but excluded complaints concerning retaliation and "unfair treatment," except "to the extent that the unfair treatment was based on gender, pregnancy, or sexual harassment[.]" <u>Moussouris v. Microsoft Corp.</u>, No. Civ. 15-1483, slip op. at 1.  Without more support than a single district court case, the Court is unwilling to ratify or endorse the Plaintiffs' assertion about the state of the law generally on such a contentious point.  Instead, the Court limits its reasoning to this case's facts and history.

Fouratt did not conclude that the Plaintiffs assert class claims for pregnancy discrimination, sexual harassment, hostile work environment, or retaliation. See Response to Objections at 9; Order at 6-7. Instead, Magistrate Judge Fouratt's Order is premised on the Plaintiffs' theory that there is a culture of bias, specifically gender discrimination, at Sandia Labs, that manifests itself in pay, promotions, and performance evaluations. See Tr. at 21:19-23 (Shaver). The Plaintiffs' claims concern pay, promotions, and performance evaluations. See Complaint at ¶ 1, at 1; id. ¶ 23, at 5; Amended Complaint ¶¶ 26-40, at 6-9. Additionally, the Plaintiffs clarify in their Amended Complaint that part of their intentional discrimination claim is their allegation that Sandia Labs fails "to reasonably investigate and respond to employee complaints of gender discrimination, including sexual harassment, hostile work environment, pregnancy discrimination, and retaliation for raising complaints of same." Amended Complaint, ¶ 87(c), at 21. There is now an even stronger link between the Plaintiffs' claims, their factual support, and the discovery they seek.

According to the Plaintiffs, although they do not assert class claims of pregnancy discrimination, sexual harassment, hostile work environment, or retaliation, that type of discrimination falls within their "intentional discrimination" and "disparate treatment" claims, which is most prominently manifested in pay, promotions, and performance evaluations. See Tr. at 42:5-12 (Shaver). Sandia Labs' arguments that pregnancy discrimination, hostile work environment, and retaliation are substantively different claims than a Title VII gender discrimination claim are irrelevant to the Order, because the Plaintiffs do not assert those claims apart from their gender discrimination claim. See Objections at 8-10.

Additionally, Sandia Labs argues that Magistrate Judge Fouratt erred by including pregnancy discrimination, sexual harassment, hostile work environment, and retaliation under

the umbrella of gender discrimination. Again, Magistrate Judge Fouratt did not find or otherwise conclude that Plaintiffs' claim of intentional discrimination through disparate treatment under Title VII also includes class claims for pregnancy discrimination, sexual harassment, hostile work environment, or retaliation. Indeed, Magistrate Judge Fouratt stated during the hearing on the Plaintiffs' Motion to Compel that it was not clear whether the Plaintiffs had actually pled a class claim of retaliation, as they claimed more than once in their briefing on the Motion to Compel. See Tr. at 19:8-20 (Court). The Plaintiffs confirm in their Response to Defendant's Objections that discovery produced in response to RFP No. 21 "will not be used to support stand-alone sexual harassment, hostile work environment, or retaliation claims[.]" See Response to Objections at 8. Sandia Labs' allegation of error on this front does not demonstrate that Judge Fouratt's Order is contrary to law.

The Plaintiffs also argue that the discovery they seek, specifically the full investigation files for the internal complaints, is relevant to Sandia Labs' affirmative defenses fourteen, fifteen, and sixteen. See Tr. at 32:13-33:6 (Shaver); Reply in Support of Motion to Compel at 4. Sandia Labs' affirmative defense fourteen is that the "Defendant at all material times acted in good faith, without evil motive or intent and without reckless or callous indifference to the rights of others." Defendant's Answer to Plaintiffs' Class Action Complain ¶ 14, at 14, filed March 17, 2017 (Doc. 15)("Answer"). Sandia Labs' affirmative defense fifteen is that the "Defendant made a good faith effort to comply with the law and prevent unlawful discrimination or retaliation." Answer ¶ 15, at 14. Sandia Labs' affirmative defense sixteen is that the "Defendant's decisions regarding Plaintiffs' employment were legitimate, non-discriminatory, and non-retaliatory." Answer ¶ 16, at 15. The Plaintiffs argue in their Reply that Sandia Labs "has put at issue whether it acted in good faith to prevent discrimination and harassment," and

the Plaintiffs therefore require "access to the complaints and investigation files regarding sexual harassment, pregnancy discrimination, hostile work environment based on gender, and retaliation" to evaluate affirmative defenses fourteen, fifteen, and sixteen. Reply at 4.

During the hearing, Sandia Labs attempted to dispense with the Plaintiffs' argument by asserting that those affirmative defenses concerned only Plaintiffs' claim for punitive damages. See Tr. at 50:8-11 (Burkhardt). Sandia Labs further stated that any evidence it would present at trial regarding the three affirmative defenses at issue would not concern sexual harassment, hostile work environment, retaliation, or pregnancy discrimination. See Tr. at 50:15-24 (Burkhardt). It does not matter whether Sandia Labs' affirmative defenses concern only the Plaintiffs' claim for punitive damages, because if the Plaintiffs show that the discovery they seek is relevant to rebutting those affirmative defenses, then they are entitled to that discovery under rule 26(b). It is similarly irrelevant that Sandia Labs will not present evidence at trial concerning sexual harassment, hostile work environment, retaliation, or pregnancy discrimination to prove its own affirmative defenses; what matters is whether the requested discovery would assist the Plaintiffs in rebutting those affirmative defenses. Although Magistrate Judge Fouratt's Order did not address this argument, the Court concludes that the Plaintiffs have shown that the discovery they seek is sufficiently relevant to their preparation for rebutting Sandia Labs' affirmative defenses fourteen, fifteen, and sixteen.[12]  Accordingly, under rule 26(b), the discovery that the Plaintiffs seek is within the scope of permissible discovery.

---

[12]It is worth remembering that there will be other opportunities as this case progresses at which the parties can contest the admissibility of evidence, such as motions in limine and the pretrial conference. At this relatively early stage, the Court is not so much concerned with forecasting the future admissibility of disputed evidence as it is with granting or denying access to that information so that the parties may fairly contest it down the road.

Finally, Sandia Labs argues that the presence of class claims "does not open the door to irrelevant discovery." <u>See</u> Objections at 10. That point is well-taken as far as it goes, but the Court does not read Magistrate Judge Fouratt's order as doing what Sandia Labs contends it does. The Plaintiffs articulate why internal complaints about pregnancy discrimination, hostile work environment, sexual harassment, and retaliation are relevant to their class claim of intentional discrimination based on gender. <u>See</u> Tr. at 21:19-23, 32:1-3, 36:10-15, 42:5-12 (Shaver). Because the Plaintiffs allege class claims under Title VII, Plaintiffs must eventually prove commonality, among other requirements for class certification, under rule 23(a). Because the Plaintiffs already explain why the discovery they seek is relevant to gender discrimination in performance evaluations, pay, and promotions, that Plaintiffs must clear a high rule 23(a) hurdle is also relevant to whether the Plaintiffs are entitled to this discovery under rule 26(b).[13]

Given the allegations in the Amended Complaint, the Court concludes that Magistrate Judge Fouratt's conclusions are on firm ground. This case is -- in a very general but very real way -- about how Sandia Labs treats its female employees on a wide array of topics: discrimination, pregnancy, pay, performance review, and retaliation. Problems in one area may indicate that there are problems in other areas. Just because a document is about pregnancy discrimination does not mean that the information it contains would not be helpful to the Plaintiffs in proving pay discrimination. The Plaintiffs are entitled to see what is in all the

---

[13]The Court pauses to observe that Sandia Labs has never raised disproportionate burden as an objection to RFP No. 21. Indeed, as this dispute has ripened and evolved, Sandia Labs has advised that it has isolated the disputed discovery to approximately 45 complaints, the full investigative files for which total approximately 5,000 pages. In the context of this case, the importance of the issues raised in it, and the far-reaching consequences of the relief that the Plaintiffs seek, the Court concludes that the disputed discovery is proportionate under rule 26.

documents related to Sandia Labs' problems with its female employees.[14]  Accordingly, the Court does not have "a definite and firm conviction that a mistake has been committed" by Magistrate Judge Fouratt in his Order.  Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d at 1464. There are no sound grounds to reverse or modify Magistrate Judge Fouratt's Order, and the Court therefore overrules Sandia Labs' Objections.

**IT IS ORDERED** that: (i) the Defendant's Objections to Magistrate Judge's Order Granting Plaintiffs' Motion to Compel Production of Documents, filed May 25, 2018 (Doc. 117), are overruled; and (ii) Defendant Sandia Labs shall comply with Magistrate Judge Fouratt's Order Granting Plaintiffs' Motion to Compel, filed May 14, 2018 (Doc. 112) by no later than two weeks after the entry of this order.

_____
UNITED STATES DISTRICT JUDGE

---

[14]The 2015 amendment to rule 26 "deletes the former provision authorizing the court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26 advisory committee notes to 2015 amendments.  The advisory committee reasoned that "this language is rarely invoked," and "[p]roportional discovery relevant to any party's claim or defense suffices, given a proper understanding of what is relevant to a claim or defense."  Fed. R. Civ. P. 26 advisory committee notes to 2015 amendments.  The committee added that, "[d]iscovery that is relevant to the parties' claims or defenses may also support amendment of the pleadings to add a new claim or defense that affects the scope of discovery."  Fed. R. Civ. P. 26 advisory committee notes to 2015 amendments.  The reasons the Court articulates to buttress Magistrate Judge Fouratt's relevancy determination also indicate that -- even if that determination were incorrect -- expanding the scope of discovery to permit the discovery the Plaintiffs seek would be appropriate.  The Court acknowledges, however, that the 2015 amendments removed its discretion to expand the scope of discovery.

*Counsel*:

Rachel Bien
Outten & Golden LLP
San Francisco, California

-- and --

Adam T. Klein
Cheryl-Lyn Bentley
Elizabeth Stork
Outten & Golden LLP
New York, New York

-- and --

David Lopez
Outten & Golden LLP
Washington, D.C.

-- and --

Anne Brackett Shaver
Kelly Maureen Dermody
Lin Yee Chan
Michael Ian Levin-Gesundeheit
Shira J. Tevah
Tiseme Gabrielle Zegeye
Lieff Cabraser Heimann & Bernstein, LLP
San Francisco, California

*Attorneys for the Plaintiffs*

Michael S. Burkhardt
Grace E. Speights
Krissy A. Katzenstein
Morgan, Lewis & Bockius LLP
Washington, D.C.

-- and --

Scott D. Gordon
Jeffrey L. Lowry
Paola Viviana Jaime
Stephanie Latimer
Theresa W. Parrish
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

*Attorneys for the Defendant*